1  Fredric F. Kay
   Federal Public Defender
2  Dale A. Baich (Ohio Bar No. 0025070)
   Paula K. Harms (Missouri Bar No.  50331)
3  Assistant Federal Public Defenders
   850 West Adams Street, Suite 201
4  Phoenix, Arizona 85007
   602.382.2816
5  602.889.3960 (facsimile)

6

                IN THE UNITED STATES DISTRICT COURT
7                 FOR THE DISTRICT OF ARIZONA

8  David Martinez Ramirez,

9          Petitioner,

10     vs.                                    No. CIV 97-1331-PHX-JAT

11  Dora Schriro, *et al.*,

12          Respondents.

13

14

15

16

17

18          PETITIONER'S      SUPPLEMENTAL
            TRAVERSE
19

20

21

22

23

24

25

26

27

28

Table of Contents

I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Proceedings in state court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Fundamental error review by the Arizona Supreme Court . . . . . . . . . . 2

    B.  Independent review by the Arizona Supreme Court . . . . . . . . . . . . . . 8

III. The claims are properly before the Court . . . . . . . . . . . . . . . . . . . . . 16

    A. Exhaustion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    B.  Fair presentment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    C.  Procedural default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    D.  Cause for any allegedly defaulted ineffective assistance of counsel
        claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        1.   In Arizona, post-conviction review of ineffective
        assistance of counsel claims is an extension of direct
        appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        2. If competent counsel is not provided in post-conviction
        proceedings, appellate review of the competence of capital
        attorneys will become a "meaningless ritual" and
        defendants will be denied one "full and fair" opportunity to
        present their Sixth Amendment claims . . . . . . . . . . . . . . . . . . . . . 30

        3.  Because the Eighth Amendment requires meaningful
        appellate review in death penalty cases, Ramirez must be
        provided with competent counsel in the only forum which
        allows him to enforce his Sixth  Amendment right to
        counsel  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

        4.  If a state statute entitles a defendant to the appointment
        of counsel, the due process clause requires counsel to be
        effective . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

i

5. Title 28 U.S.C. § 2254(i) and 28 U.S.C. § 2261(e) are unconstitutional as applied. In this limited circumstance, the statute violates due process and equal protection under the Fifth and Fourteenth Amendments, the Eighth Amendment, and constitutes a suspension of the writ of habeas corpus . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    a.   Because post-conviction review of the effectiveness of Ramirez's trial counsel was a "first appeal as of right."   Ramirez was entitled to the effective assistance of counsel in these proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    b.   Because Arizona statute conferred upon Ramirez an entitlement to counsel, Ramirez has a Fourteenth Amendment liberty interest in reasonably competent post-conviction representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

    c.   The statute impermissibly suspends the writ of habeas corpus by failing to recognize as a cognizable claim Ramirez's due process right to the effective assistance of counsel on his "first appeal as of right" or his due process right in the state-created liberty interest in competent post-conviction counsel . . . . . . . . . . . . . . . . . . . . 42

E. Comity does not preclude review by this Court . . . . . . . . . . . . . . . . . . 43

IV.  The claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

A. Third claim for relief.
    Arizona Supreme Court failure to weigh all mitigating evidence together to determine if mitigating circumstances (sic) sufficiently substantial to call for leniency violates state and federal constitutional rights. (sic) As a result, Ramirez's rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution were violated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

    1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

    2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

    3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

    a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

    b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

    4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

B.  Fourth claim for relief

Arizona Supreme Court's rejection of mitigating evidence because it did not excuse criminal conduct violates Petitioner's constitutional rights.  As a result, Ramirez's rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution were violated ......................................................... 51

1 .......................................................... 51

2 .......................................................... 51

3 .......................................................... 52

a ...................................................... 52

b ...................................................... 52

4 .......................................................... 53

C.  Fifth claim for relief

Arizona (sic) death penalty statute imposes improper burden and standard of proof at sentencing.  As a result, Ramirez's rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution were violated ......................................................... 53

1 .......................................................... 53

2 .......................................................... 55

3 .......................................................... 55

4 .......................................................... 56

D.  Sixth claim for relief

Arizona (sic) death penalty statute fails to provide guidance to sentencing court thereby permitting judge to arbitrarily and capriciously impose the death penalty in violation of the Fifth, Eighth and Fourteenth Amendments to the constitution (sic).  As a result, Ramirez's rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution were violated ............... 57

1 .......................................................... 57

2 .......................................................... 58

3 .......................................................... 58

4 .......................................................... 59

iii

E.  Seventh claim for relief
  Trial court certification of transcripts relating to capital case clearly erroneous where side bar conferences relating to state witness and her identification of petitioner's blood and semen on key pieces of evidence were not reported. (sic) As a result, Ramirez's rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendment to the Constitution were violated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

   1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

   2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

   3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

F.  Eighth claim for relief
  Petitioner was denied effective assistance of counsel by failing to conduct proper mental investigation and failure to note court reporter did not report key side bar proceedings.  As a result, Ramirez's rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution were violated . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

   1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

   2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

   3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

   4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

   5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

G.  Ninth claim for relief
  Imposition of death penalty on persons who have not been found guilty of intentional murder violates due process of law and results in cruel and unusual punishment.  As a result, Ramirez's rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution were violated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

   1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

   2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

   3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

   4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

iv

H.  Tenth claim for relief

Trial court erred when instructing jury on first degree murder regarding definition of "premeditation" and the "successive thoughts of the mind" language where instruction does not permit juries to properly distinguish between first degree murder and second degree murder. As a result, Ramirez's rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution were violated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

I.  Eleventh claim for relief

Imposition of death penalty improper where there are no findings by trial court that crime was above norm of first degree murders (sic).   As a result, Ramirez's rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendment to the Constitution were violated . . . . . . . . . . . . . . . . . 76

1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

J.  Twelfth claim for relief

Petitioner denied due process of law where trial court denied funds to hire expert witnesses to assist in trial preparation.  As a result, Ramirez's rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendment to the Constitution were violated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

1   Fredric F. Kay
    Federal Public Defender
2   Dale A. Baich (Ohio Bar No. 0025070)
    Paula K. Harms (Missouri Bar No. 50331)
3   Assistant Federal Public Defenders
    850 West Adams Street, Suite 201
4   Phoenix, Arizona 85007
    602.382.2816
5   602.889.3960 facsimile

6
                IN THE UNITED STATES DISTRICT COURT
7                   FOR THE DISTRICT OF ARIZONA

8   David Martinez Ramirez,

9              Petitioner,              No.  CIV 97-1331-PHX-JAT

10      vs.                            Death Penalty Case

11  Dora Schriro, et al.,
                                       Supplemental Traverse
12             Respondents.

13

14          Petitioner David Martinez Ramirez ("Ramirez") submits the following

15  Supplemental Traverse to the procedural defenses raised in Respondents' Answer to

16  Petition for Writ of Habeas Corpus ("Answer").[1]  The Answer is limited to issues

17  regarding the procedural status of the claims raised by Ramirez in the Amended

18  Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State

19  Custody ("Amended Petition").[2]

20                              **I.**

21          The Court previously found that part of the first and second claims raised by

22

23

24

25  _____

26      [1]Through a separate pleading, Ramirez seeks leave to file the Supplemental
    Traverse.  District Court Docket Entry Number ("Doc. No.") ___.

27      [2]Doc. No. 18

28                          Page 1 of  89

1  Ramirez would be reviewed on the merits.[3]  Ramirez addressed those claims.[4]

2         Before addressing the affirmative defenses of fair presentment, exhaustion and

3  procedural default as to the remaining claims, Ramirez will outline procedures

4  followed by the Arizona courts on appellate and collateral review.

## II. Proceedings in state court.

6         After Ramirez was convicted and sentenced to death, the Arizona Supreme

7  Court reviewed the conviction and sentence on automatic direct appeal as a matter of

8  right pursuant to Rule 31.2(b) of the Arizona Rules of Criminal Procedure.  During

9  the direct review, the Arizona Supreme Court not only reviewed the issues presented

10  by Ramirez in his briefs and motions, but also conducted a fundamental error review

11  and a thorough independent review of the trial record.  *State v. Ramirez*, 178 Ariz.

12  116, 129-132, 871 P.2d 237, 250-253 (Ariz. 1994).

13         Following his direct appeal to the Arizona Supreme Court, Ramirez was

14  entitled to post-conviction review of his conviction and sentence pursuant to Rules

15  32.1 and 32.4 of the Arizona Rules of Criminal Procedure.  Ramirez also had the right

16  to appointed counsel in his collateral proceedings.  Finally, Ramirez had the right to

17  an evidentiary hearing in the state collateral proceedings, which he never received.[5]

### A.    Fundamental error review by the Arizona Supreme Court.

19         In Ramirez's case, the Arizona Supreme Court conducted a thorough

20  fundamental error review.[6]  *Ramirez*, 178 Ariz. at 132, 871 P.2d at 253.

---

[3]Doc. No. 26 at 17.

[4]Doc. No. 29; Doc. No. 32.

[5]Maricopa County Superior Court Minute Entry ("M.E.") at 3.  State Superior Court Index Entry ("Index") at 192.

[6]This Court previously indicated its view that Ninth Circuit precedent clearly holds that fundamental error review does not exhaust claims for habeas review. Order, Feb. 16, 2001 at 8, n.6, (citing *Poland v. Stewart*, 117 F.3d 1094, 1105 (9th Cir. 1997)). (Doc. No. 40.).  However, as explained below, Petitioner asserts that

1      This review was conducted pursuant to Ariz. Rev. Stat. § 13-4035 (1994). The

2  statute provided:

        A.     Upon appeal from a final judgment of conviction, the supreme court shall review all rulings affecting the judgment, even though a motion for a new trial was not made. If a motion for a new trial was made and denied, the court shall, on appeal from the judgment, review the action of the court below in denying a new trial. Upon appeal from an order denying a motion for a new trial or for arrest of judgment the court shall review all orders and rulings made at or before the trial, or which affect the order appealed from.

        B.     Upon an appeal taken by a defendant from the judgment, the supreme court shall review the entire record.

11  Ariz. Rev. Stat. § 13-4035.

12      As a result of a search of the record for fundamental error, review of the issues

13  considered during this review and the finding of no error after this review, there are

14  "findings" made by the Arizona Supreme Court that are now subject to habeas review

15  by this Court.

16      Certain claims of error are held to a higher standard of review.  If a potential

17  error is considered a "fundamental error," it requires *sua sponte* review by the state

18  supreme court.  This means that although a petitioner may not have raised the claim

19  on appeal directly, the court has an obligation, on its own, to review for fundamental

20  error.  In Arizona, issues such as inadequate voir dire, prosecutorial misconduct,

21  ineffective assistance of counsel, constitutional errors concerning the aggravating and

22  mitigating factors, the imposition of the death sentence, and jury instructions are

23  granted fundamental error review.  The Arizona courts have a long history and

24

25  *Falcone v. Stewart*, 120 F.3d 1082, 1084, n.2 (9th Cir. 1997), *vacated on other grounds by Stewart v. Falcone*, 524 U.S. 947 (1998), indicates that there still exists a basis to argue that Arizona fundamental error does exhaust claims for habeas review. This assertion is borne-out by a post-*Poland* opinion, *Ameen v. Rhode*, 176 F.3d 481 (Table) (9th Cir. (Ariz.) 1999), which notes that Arizona's fundamental error review may still be sufficient in certain procedural circumstances.

28                   Page 3 of 89

1    tradition of finding that when an error is fundamental, the failure to object is not

2    harmful to a criminal defendant. *See Salt River Project Agric. Improvement & Power*

3    *Dist. v. Westinghouse Elec. Corp.*, 176 Ariz. 383, 387, 861 P.2d 668, 672 (Ariz. Ct.

4    App. 1993) ("Fundamental error is not waived even in the absence of an objection.");

5    *State v. Flowers*, 159 Ariz. 469, 472, 768 P.2d 201, 204 (Ariz. Ct. App. 1989)

6    ("Where a defendant has been denied an essential component of due process, such

7    denial constitutes fundamental error. . . fundamental error is not waived.")

8         Furthermore, fundamental error review occurs on direct appeal even where no

9    mention of the alleged error is made in the appellate briefs. *See, e.g., State v.*

10    *Moorman,* 154 Ariz. 578, 583, 744 P.2d 679, 684 (Ariz. 1987) (pursuant to "duty to

11    search the record for fundamental error," court considers arguments "not clearly

12    repeated" on appeal); *State v. Smith*, 136 Ariz. 273, 279, 665 P.2d 995, 1001 (Ariz.

13    1983) (pursuant to fundamental error review in a capital case, court considers claim

14    of ineffective assistance of counsel not raised on appeal); *State v. Adams*, 145 Ariz.

15    566, 570, 703 P.2d 510, 514 (Ariz. Ct. App. 1985) (pursuant to fundamental error

16    review, court considers claim not raised on appeal that confession was involuntary).

17         Fundamental error review is recognized by the federal courts to depend on

18    federal law and therefore is not considered an adequate and independent state law

19    ground for procedural default. *See, e.g., Ake v. Oklahoma,* 470 U.S. 68, 75 (1985)

20    (mandated fundamental error review preserved constitutional errors for federal review

21    despite failure to raise them in state direct appeal); *Hoffman v. Arave,* 236 F.3d 523,

22    536 (9th Cir. 2001) (because Idaho law requires mandatory review for sentencing

23    errors, it was proper to reach merits of claim not raised in state court); *Beam v.*

24    *Paskett*, 3 F.3d 1301, 1306 (9th Cir. 1993) (required appellate review to determine

25    if sentence infected by "passion, prejudice, or any other arbitrary factor" implicitly

26    required review of constitutionality of aggravating factor notwithstanding failure to

27    raise claim on direct appeal), *overruled on other grounds by Lambright v. Stewart,*

28

Page 4 of  89

1    191 F.3d 1181 (9th Cir. 1999).

2        By conducting fundamental error review, the Arizona Supreme Court implicitly

3    ruled on the merits of every federal constitutional error within the scope of its review.

4    *See Ake v. Oklahoma*, 470 U.S. at 75.   Even if that ruling is characterized as

5    procedural, it is not independent of federal law because it depends on the antecedent

6    rejection of the federal claim.  *Id.*; *Beam*, 3 F.3d at 1306-1307.

7        The Arizona Supreme Court is obligated to search the record for constitutional

8    error and cannot waive this duty.  *State v. Mauro*, 159 Ariz. 186, 193, 766 P.2d 59,

9    66 (Ariz. 1988) (Arizona Supreme Court "has a duty to search the record for

10    fundamental error, whether defendant specifies exactly where it is located or not").

11    The Arizona Supreme Court is required, in its search for fundamental error, to review

12    issues affecting both judgment and sentencing.  *State v. Brewer*, 170 Ariz. 486, 493,

13    826 P.2d 783, 790 (Ariz. 1992).

14        Arizona's "fundamental error review" gave the Arizona Supreme Court a fair

15    opportunity to pass on obvious constitutional questions within its ambit.  Until 1995,

16    the Arizona criminal code required the Arizona Supreme Court to "review the entire

17    record" upon "an appeal taken by a defendant from the judgement."  Ariz. Rev. Stat.

18    §13-4035 (1994).   The Arizona Supreme Court has interpreted that statutory duty

19    broadly.  *Brewer*, 170 Ariz. at 493, 826 P.2d at 790 (interprets Ariz. Rev. Stat. §13-

20    4035 as requiring search of entire record for fundamental error); *State v. Dawson*, 164

21    Ariz. 278, 282, 792 P.2d 741, 746 (Ariz. 1990); *State v. Yslas*, 139 Ariz. 60, 63, 676

22    P.2d 1118, 1121 (Ariz. 1984).  In the capital case context, the Arizona Supreme Court

23    has read that provision to mandate review of the entire record for fundamental error

24    even when the defendant waives his right to appeal altogether.  *Brewer*, 170 Ariz. at

25    493, 826 P.2d at 790.

26        Arizona jurisprudence has defined fundamental error as error that "goes to the

27    foundation of the case, takes from a defendant a right essential to the defense, or is

28

1    of such magnitude that it cannot be said it is possible for the defendant to have had
2    a fair trial." *State v. Cornell*, 179 Ariz. 314, 329, 878 P.2d 1352, 1367 (Ariz. 1994).
3    This review includes federal constitutional aspects of potential error pursuant to that
4    review. *See, e.g., State v. Corrales*, 138 Ariz. 583, 594, 676 P.2d 615, 626 (Ariz.
5    1983); *State v. Thomas*, 130 Ariz. 432, 435, 636 P.2d 1214, 1217 (Ariz. 1981). Any
6    error that "deprives the defendant of a right to a fair trial" necessarily violates the
7    Fourteenth Amendment right to a fair trial. *Estelle v. Williams*, 425 U.S. 501, 503
8    (1976)("The right to a fair trial is a fundamental liberty secured by the Fourteenth
9    Amendment"); *State v. Bible*, 175 Ariz. 549, 567, 858 P.2d 1152, 1170 (Ariz. 1993).
10           In *Falcone v. Stewart*, 120 F.3d 1082, 1084, n.2 (9th Cir. 1997), *vacated on*
11   *other grounds by Stewart v. Falcone*, 524 U.S. 947 (1998), the Ninth Circuit
12   reaffirmed a prior ruling in an unpublished decision that Arizona courts implicitly
13   reviewed the petitioner's due process and double jeopardy claims in fundamental
14   error review. Also, in *Falcone*, the Ninth Circuit rejected the Respondents' claim that
15   the decision conflicted with *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir.
16   1996). In *Martinez-Villareal*, the claimed errors involving ineffective assistance of
17   counsel were not readily apparent from the record, as they were in *Falcone*, and as
18   they are in Ramirez's case. *See Falcone*, 120 F.3d at 1084, n.2. Fundamental error
19   review will not include issues that need factual development, but must include
20   constitutional errors, apparent on the record, that negatively affect a petitioner's right
21   to a fair trial, as they have for Ramirez.
22           Ramirez will demonstrate that fundamental errors prevented him from
23   receiving a fair trial, at both the guilt and sentencing phases. A review of these errors
24   was included in the state supreme court fundamental error review process.
25   Consequently, the procedural default defense should not apply.
26           The concept of fundamental error review in Arizona can be summed up by the
27   following observation:
28
                                    Page 6 of 89

In *State v. White*, Arizona Supreme Court Chief Justice Stanley Feldman sadly acknowledged that capital sentences have been and may possibly still be "arbitrarily, wantonly, and freakishly imposed, often on grounds of race, religion, or minority status." Furthermore, Chief Justice Feldman said it is "obvious the rich man is much more likely to evade the death penalty than the poor man, . . . and variations in prosecutors, judges, juries, community emotions and the type of victim all play some part in the result." *Jeffers v. Lewis* affirmed Chief Justice Feldman's assumptions about the inconsistencies that plague capital punishment in Arizona. *Jeffers* stated that since 1973, Arizona trial courts have erroneously sentenced more than one-third of their 164 capital defendants to death. Aware of the problems in Arizona trial courts, and the inconsistencies that arise out of poor representation, the Arizona Supreme Court has consistently held itself to a high standard in reviewing capital cases. The Arizona Supreme Court explicitly stated that when presented with a capital appeal, the court reviews issues that the defendants did not raise at trial or in the appellant's brief.

Those in favor of limiting federal habeas corpus review might argue that Arizona's heightened standard of review for capital appeals obviates the need to give state defendants the additional safeguard of federal review. However, the Arizona Supreme Court itself acknowledged the importance of federal habeas review of death penalty cases in *Smith v. Lewis*. In *Smith*, the court held that "the condemned person and society require effective representation in federal habeas corpus proceedings, because they usually constitute the final stage of judicial review before the state takes a person's life. We must ensure that all legitimate constitutional issues are properly resolved there, because there will be no second chance." The Arizona court's recognition of the importance of meaningful representation on federal habeas review of death penalty cases would ring hollow if the state procedurally barred federal habeas attorneys from raising claims that the state courts and attorneys may have failed to recognize.

Patrik M. Griego, Note, *The "Great Writ" May Once Again Deliver Justice to the Most Deserving Prisoners: An Analysis of Arizona Criminal Rule of Procedure 31.2(b) in Light of Beam v. Paskett*, 39 ARIZ. L. REV. 311, 339-40 (1997) (citations omitted).

**B.    Independent review by the Arizona Supreme Court.**

In addition to fundamental error review, the Arizona Supreme Court has a duty to consider, *sua sponte,* all constitutional errors concerning the imposition of a death sentence. This review cannot be waived by the defendant. *Brewer*, 170 Ariz. at 493, 826 P.2d at 790 ("[T]he propriety of the death penalty is not for the defendant or the trial court alone to decide. That decision also rests with this court upon automatic appeal . . . regardless of the defendant's own death wish"). It is required even where no issues as to the appropriateness of the death sentence are raised in the direct appeal. *See State v. Rogovich*, 188 Ariz. 38, 43, 932 P.2d 794, 799-800 (Ariz. 1997); *State v. Wood,* 180 Ariz. 53, 69, 881 P.2d 1158, 1174 (Ariz. 1994); *see also State v. Stuard*, 176 Ariz. 589, 605, 863 P.2d 881, 897 (Ariz. 1993) (sentence reduced where trial court failed to properly find and weigh mitigation although issue not raised on appeal); *Smith,* 136 Ariz. at 279, 665 P.2d at 1001 (sentence vacated for ineffective counsel at sentencing although issue not raised on appeal). In this case, the state supreme court conducted the required independent review. *Ramirez*, 178 Ariz. at 132, 871 P.2d at 253.

The Arizona Supreme Court has acknowledged its consistent practice with regard to independent review of a death sentence. In *State v. Nash*, the court held, "[a]s in all death penalty cases, this Court *independently* reviews the record to determine the presence or absence of aggravating and mitigating circumstances, and the weight to be given to each. We must also *determine the propriety* of the sentence." 143 Ariz. 392, 404, 694 P.2d 222, 234 (Ariz. 1985) (emphasis added) (citations omitted).

The scope of the Arizona Supreme Court's independent duty to review the record and determine the presence or absence of aggravating circumstances is broad and deep and judicially, legislatively and constitutionally imposed on the Arizona

1    Court.  It is so broad, in fact, that the Court examines and independently determines

2    from the record the propriety of sentences of death even when appellate counsel does

3    not raise a particular claim regarding a particular aggravating factor or mitigating

4    circumstance.

5         Two cases demonstrate this point.  In both *State v. McKinney*, 185 Ariz. 567,

6    917 P.2d 1214 (Ariz. 1996) and *Rogovich*, 188 Ariz. 38, 932 P.2d 794,  appellate

7    counsel failed to raise a claim regarding the proper finding of an aggravating factor,

8    nevertheless, on its own, as part of its constitutional duty, the Arizona Supreme Court

9    examined the factor to determine whether it was properly found by the trial court.

10        In *McKinney*, appellate counsel *did not raise* the issue that the defendant's

11   conviction for second degree murder did *not* constitute a prior conviction involving

12   the use or threat of violence.   185 Ariz. at 587, 917 P.2d at 1234 (Martone, J.,

13   dissenting).   There is no dispute that appellate counsel failed to raise this issue.  In

14   fact, Justice Martone, writing in dissent, noted vigorously that the Court's review of

15   the issue, not raised on appeal, was not proper.  He chastised the Court for going

16   "outside the briefs" to find this issue:

17              To begin with, not even the defendant argues that second
                degree murder is not a crime of violence.  He only argues
18              that his second degree murder conviction was not a
                "previous" conviction within the meaning of 13-703(F)(2).
19              After concluding that Hedlund was previously convicted
                within the meaning of the statute, the majority *sua sponte*
20              imposes upon itself the duty to decide whether that
                conviction involved the use or threat of violence on
21              another person.

22   *Id.*[7]

23        Nevertheless, the Arizona Supreme Court, as part of its duty to independently

24   review the trial court's findings, did its own examination of the record.  185 Ariz. at

25   581-83, 917 P.2d at 1228-1230.   The court concluded that, although the prior

26   _____

27   [7]James McKinney and Charles Michael Hedlund were co-defendants whose
     appeals were consolidated.

28                                  Page 9 of 89

1    conviction was for second degree murder, it did *not* qualify as an aggravating factor

2    under Ariz. Rev. Stat. § 13-703(F)(2) because an examination of the *statutory*

3    *elements* of the offense recognized that the murder could have been committed

4    recklessly, not necessarily knowingly or intentionally. *Id.* As such, it did not qualify

5    as a proper aggravating circumstance. *Id.*

6            The *McKinney* Court pointed out that its analysis was required by Ariz. Rev.

7    Stat. § 13-703.01(A), which was passed by the legislature to fulfill the

8    constitutionally mandated task of narrowing the class of death eligible defendants

9    under the Eighth Amendment. 185 Ariz. at 581, 917 P.2d at 1228. The *McKinney*

10   Court stated:

11                   The legislature intended that the aggravating circumstances
                     contained in 13-703 be used to narrow the class of death-
12                   eligible defendants.   Thus, the statutory factors are
                     interpreted and applied in a manner that narrows the class
13                   of those who are most deserving of that ultimate sanction.
                     We further that purpose by defining the crimes of violence
14                   that qualify as an aggravating circumstance under 13-
                     703(F)(2) to exclude those committed with a mental state
15                   that was merely reckless or negligent.

16   *Id.* (citations omitted).

17           In *Rogovich*, the situation on appeal was even more glaring, from appellant's

18   perspective, as appellate counsel raised no sentencing issues.  The Court stated:

19                   Rogovich presents no sentencing issues for review.
                     Furthermore, at oral argument defense counsel, as an
20                   officer of the court, avowed that a careful study of the
                     record produced no arguable issues.  *Nevertheless, we*
21                   *conduct an independent review of the aggravating and*
                     *mitigating factors in all capital cases to determine whether*
22                   *the death penalty is warranted.*

23   188 Ariz. at 43-44, 932 P.2d at 799-800 (emphasis added) (*citing State v. Wood*, 180

24   Ariz. 53, 68, 881 P.2d 1158, 1173 (1994)).

25           The *Wood* decision makes clear that the Arizona Supreme Court's independent

26   review of the existence of each aggravating factor is based on fundamental Eighth

27   Amendment jurisprudence.  In *Wood*, the court described its duty to independently

28

Page 10 of 89

review the record this way:

> In all capital cases we independently review the aggravating and mitigating circumstances to determine whether the former outweigh the latter and warrant imposition of the death penalty. *State v. Johnson*, 147 Ariz. 395, 400, 710 P.2d 1050, 1055 (1985). Our duty is to ensure that Arizona's capital sentencing scheme "genuinely narrows the class of persons eligible for the death penalty." *Arave v. Creech*, 113 S.Ct. 1534, 1542 (1993).

180 Ariz. at 68-69, 881 P.2d at 1173-74.

*Rogovich* and *McKinney* stand for the rule that the Arizona Supreme Court, as a matter of its own jurisprudence and based on a respect for conforming its decisions to the dictates of the Eighth Amendment, conducts an independent review of *each* aggravating factor, even in those cases in which the appellant or his counsel fails to raise the precise issue, or presents *no sentencing issues whatsoever*.

Further support for this conclusion is found in *State v. Brewer*. 170 Ariz. at 492, 826 P.2d at 789.   In that case a capital defendant sought to abandon his direct appeal.  The Arizona Supreme Court denied the request, finding that Rule 31.2(b) does not permit the waiver of a mandatory appeal.  *Id*.  The state then argued that even if the appeal could not be voluntarily dismissed, the scope of the review was limited by defendant's waiver.  The Arizona Supreme Court disagreed:

> The State's argument, however, minimizes our statutorily prescribed powers of review and, if accepted, would defeat the obvious purpose of requiring mandatory appeals in capital cases, which is to insure that the death sentence is properly and constitutionally applied. As we read the statutes and the cases interpreting them, this court has a duty, wholly apart from our obligation to review the judgment for errors, to review the validity and propriety of all death sentences. . . .

> If anything, we believe, as we did in *State v. Richmond*, 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976), that "[t]he legislature charged this court with the duty to correct [death] sentences which are illegal and sentences where we find that the punishment imposed is greater than the circumstances of the case warrant." In *Richmond*, this view was premised on language from former A.R.S. § 13-1717, now codified at § 13-4037(A), which instructs in

part,

> Upon an appeal by the defendant either from a judgment of conviction or from sentence, if an illegal sentence has been imposed upon a lawful verdict or finding of guilty by the trial court, the supreme court shall correct the sentence to correspond to the verdict or finding.

Thus, once a defendant files an appeal, which is automatic in capital cases, we are expressly required by statute to review issues affecting both judgment and sentencing in our search for fundamental error.

Appellate review of sentencing is, of course, even more necessary in the context of a capital case. The penalty of death differs from all other forms of criminal punishment in terms of severity and irrevocability, and may not be exacted in the absence of certain *constitutional safeguards. That is, the eighth and fourteenth amendments prohibit all sentencing procedures creating a substantial risk that the death penalty is inflicted in an arbitrary and capricious manner.*

We have long held, therefore, that we are bound by the gravity of the death penalty to insure proper compliance with Arizona's death penalty statute. We cannot fulfill this duty by simply inspecting defendant's first-degree murder conviction for fundamental error. We must also conduct a de novo review of the trial court's rulings concerning aggravation and mitigation, and then decide independently whether the death sentence should be imposed.

The automatic appeal mechanism guarantees this court both the opportunity and the vehicle to assess the legality of the sentence in each capital case. If the record reveals that the trial court, for whatever reason, improperly sentenced a defendant to death, we must overturn that sentence.

170 Ariz. at 493-94, 826 P.2d 790-91. (emphasis added) (citations omitted.)

Affirmance by the Arizona Supreme Court of a defendant's capital sentence "constitutes at least an implicit rejection of claims of error that fall within its obligatory review even if the defendant has not raised those claims with specificity[.]" *Beam*, 3 F.3d at 1306. The constitutional scope of the state court's sentencing review is guided by the Arizona Supreme Court's decision in *Brewer*:

> In short, the State's attempt to curtail the scope of our review must be rejected for the very reason we denied defendant's motion to dismiss this appeal - the propriety of the death penalty is not for the defendant or the trial court alone to decide. That decision rests also with this court upon automatic appeal and is guided, above all, by the state's narrowly construed statutes specifying the limited circumstances for which a defendant may be deemed death-eligible, *see* A.R.S. § 13-703 . . .

170 Ariz. at 494, 826 P.2d at 791.

The Ninth Circuit has recognized precisely the practice discussed above, *i.e.*, Arizona, among six Western states, has adopted a mandatory review of the propriety of a death sentence as part of its state capital jurisprudence. *Beam*, 3 F.3d at 1306. Therefore, claims based on the existence or non-existence of aggravating factors or mitigating circumstances, and the propriety of the imposition of the death sentence in a particular case are exhausted by virtue of the mandatory review, even in situations in which the defendant or his counsel fails to appeal at all. *Id.* The Arizona Supreme Court's independent review of the propriety of the imposition of the death penalty in all capital cases results in exhaustion of all sentencing issues in each capital case.[8]

_____

[8]The Idaho statute referred to in *Beam* requires the Idaho Supreme Court to determine: 1) whether the sentence of death has been imposed arbitrarily or under the influence of passion; 2) whether the evidence supports the aggravating circumstances found by the court; and 3) whether the sentence is "excessive." Idaho Code Section 19-2827(C)(1)-(3).

Arizona's death penalty review similarly requires the Arizona Supreme Court to 'painstakingly' review the record for: 1) whether the death penalty has been imposed "in an arbitrary and capricious manner," *State v. Watson*, 129 Ariz. 60, 63, 628 P.2d 943, 946 (Ariz. 1981), or whether the death penalty was imposed under the influence of passion or prejudice, *State v. Woratzeck*, 134 Ariz. 452, 458, 657 P.2d 865, 871 (Ariz. 1982); 2) whether each aggravating factor is properly supported by the evidence, *State v. Stokley*, 182 Ariz. 505, 516, 898 P.2d 454, 465 (Ariz. 1995); *State v. Lopez*, 174 Ariz. 131, 143, 847 P.2d 1078, 1090 (Ariz. 1992); and 3) whether the death penalty is excessive (whether it has been reserved for truly exceptional cases which set the defendant apart from the norm), *Bible*, 175 Ariz. 549, 608, 858 P.2d at 1211.

Thus in the exhaustion context, there is no principled basis for distinguishing the type of review addressed in *Beam* from Arizona's independent death penalty review. The content of Idaho's automatic review statute was adequately specific to

1    The Arizona Supreme Court 'painstakingly examines' the sentencing record

2    in each capital case to determine if the death penalty has been erroneously imposed.

3    *Stuard*, 176 Ariz. at 605, 863 P.2d at 897; *State v. Richmond*, 114 Ariz. 186, 196, 560

4    P.2d 41, 51 (Ariz. 1976).   Generally, it reviews the sentencing record to evaluate

5    whether the death sentence has been imposed "in an arbitrary and capricious manner,"

6    *Watson*, 129 Ariz. at 63, 628 P.2d at 946, and to determine whether the death penalty

7    was imposed under the influence of passion or prejudice. *Woratzeck*, 134 Ariz. at

8    458, 657 P.2d at 871.   Further, it evaluates the sentencing record to assure that the

9    death penalty will be reserved for truly exceptional cases which set the defendant

10   apart from the norm. *Bible*, 175 Ariz. at 606, 858 P.2d at 1211; *State v. Gonzales*,

11   181 Ariz. 502, 513, 892 P.2d 838, 849 (Ariz. 1995) (independent review conducted

12   to ensure that application of Arizona death penalty meaningfully narrows the class of

13   persons eligible for the death penalty.)

14    The state supreme court reviews the record to determine the presence or

15   absence of mitigating or aggravating circumstances. *State v. Bolton*, 182 Ariz. 290,

16   312, 896 P.2d 830, 852 (Ariz. 1995).   Pursuant to this analysis, the court

17   independently scrutinizes the record to determine whether such aggravating factors

18   have been proven beyond a reasonable doubt. *State v. Stokley*, 182 Ariz. 505, 516,

19   898 P.2d 454, 465 (Ariz. 1995).   Likewise, it determines whether the aggravating

20   factors are constitutional and whether the mental state required for them exists.

21   *Wood*, 180 Ariz. at 69, 881 P.2d at 1174, (*quoting Arave v. Creech*, 507 U.S. 463,

22   474-75 (1993)); *Rogovich*, 188 Ariz at 44, n.3, 932 P.2d at 800, n.3. (evaluation of

23   mental state under independent review).

24

25   conclude that claims within its scope had been exhausted.

       Arizona's independent death penalty review is more exacting than the

26   automatic review required in Idaho.  As seen above, the Arizona Supreme Court

     reviews capital cases for several kinds of error which need not be evaluated under the

27   Idaho law.  Therefore, Arizona's independent death penalty review should likewise

     cause exhaustion of claims within its scope.

28

1    The state supreme court evaluates whether all of the mitigating circumstances

2  have been properly considered. *State v. Fierro*, 166 Ariz. 539, 551, 804 P.2d 72, 84

3  (Ariz. 1990); *see also, State v. Murray*, 184 Ariz. 9, 44-45, 906 P.2d 542, 577-78

4  (Ariz. 1995).  It independently determines the weight to be given to each of the

5  aggravating and mitigating factors and weighs them against each other.  *State v.*

6  *Lavers*, 168 Ariz. 376, 391, 814 P.2d 333, 348 (Ariz. 1991).

7    Arizona's death penalty review is careful and comprehensive as to the

8  sentencing process. Given the Arizona Supreme Court's painstaking focus on these

9  specific aspects of a specific portion of the record, one can hardly argue that the court

10  has not grappled with the merits of constitutional deprivations encountered within the

11  ambit of that review.

12    The Arizona Supreme Court has indicated that its review includes a federal

13  constitutional aspect. The court has explicitly recognized that its review includes the

14  appraisal of federal constitutional claims. *State v. Cruz*, 175 Ariz. 395, 401, 857 P.2d

15  1249, 1255 (Ariz. 1993) (As to federal constitutional claims, "we are quite aware of

16  our responsibilities . . . in capital litigation").  Further, the Arizona Supreme Court

17  has described its independent review in  terms of the basic federal constitutional

18  principle which defines post-*Furman* capital jurisprudence - as a safeguard to

19  determine whether the death sentence has been imposed "in an arbitrary and

20  capricious manner," *Watson*, 129 Ariz. at 63, 628 P.2d at 946; *see also Gregg v.*

21  *Georgia*, 428 U.S. 153, 188 (1976) (the prohibition against the arbitrary and

22  capricious imposition of the death penalty was the primary concern of *Furman*).

23    Arizona's independent review of the propriety of the death penalty is so

24  exacting that one can confidently assert that Arizona has reached the merits of all

25  constitutional claims within the scope of that review.  The Arizona Supreme Court

26  has maintained that it conducts this careful review as to a particular set of issues, and

27  within that review, it covers almost every federal constitutional question as to

28

Page 15 of 89

1   sentencing. In determining which issues have been exhausted, a federal court implies

2   no disrespect -- and violates no principle of comity or federalism -- by trusting that

3   the Arizona Supreme Court has done what it claimed to do.

4       Relying on *Beam* and a series of decisions by the Arizona Supreme Court, the

5   United States District Court for the District of Arizona held "that a finding by the

6   Arizona Supreme Court that the death penalty has been properly imposed in a given

7   case rests on both state and federal grounds." *Spencer v. Stewart*, No. CV 98-0068-

8   PHX-SRB, slip op. at 12, (D. Ariz. May 31, 2001), (Doc. No. 129) (citing *Nash v.*

9   *Stewart*, No. CV 97-1104-PHX-RGS, slip op. at 17-23, (D. Ariz. Jul. 17, 2000) (Doc.

10  No. 74). The district court further found that the independent sentencing review in

11  Arizona is functionally indistinguishable from Idaho's and concluded that

12  "affirmance by the Arizona Supreme Court of a defendant's capital sentence

13  'constitutes at least an implicit rejection of claims of error that fall within its

14  obligatory review even if the defendant has not raised those claims with

15  specificity[.]'" *Spencer*, No. CV 98-0068 at 14 (citing *Beam*, 3 F.3d at 1306).

16  Accordingly, the district court must review claims raised by a petitioner to determine

17  whether they fall within the parameters of *Beam. Id*.

18      The history and tradition of decisions by the Arizona courts, Ninth Circuit

19  precedent, as well as the search for fundamental error by the Arizona Supreme Court

20  in this case, make it clear that the state courts searched the record far and wide in

21  Ramirez's case. Through the fundamental error review and independent review

22  process, the Arizona Supreme Court has considered claims that may not have been

23  raised by Ramirez in the state courts. Accordingly, all of the claims raised by

24  Ramirez in his Amended Petition are properly before this Court for consideration.

25                  **III. The claims are properly before the Court.**

26      Respondents raise three affirmative defenses. Respondents say Ramirez failed

27  to properly exhaust some of his federal constitutional claims in the state courts.

28

1    Answer at 4-6.  The respondents also say that some claims were not fairly presented

2    to the state courts.  *Id*. at 5-6.  Finally, respondents claim that some of the allegations

3    are procedurally barred from review by this Court.  *Id*. at 6-7.  Ramirez's reply to the

4    legal arguments advanced by the respondents follow.  Ramirez will address the

5    application of the affirmative defenses to a particular claim when he discusses the

6    specific claims *infra* at Part IV.

7                        **A. Exhaustion.**

8          The burden is on the respondents to demonstrate that Ramirez failed to exhaust

9    a particular claim.  *See, e.g., Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Esslinger*

10   *v. Davis*, 44 F.3d 1515, 1528 (11th Cir. 1995); *Herbst v. Scott*, 42 F.3d 902, 905 (5th

11   Cir. 1995);  *English v. United States*, 42 F.3d 473, 477 (9th Cir. 1994); *Brown v.*

12   *Maass*, 11 F.3d 914 (9th Cir. 1993).

13         All of the claims before this Court as outlined in the Amended Petition have

14   been exhausted in the state courts for the reasons previously stated at Part II (A) and

15   (B) *supra*, and the reasons stated below.  In the event the Court determines the claims

16   remain unexhausted, Ramirez requests that the Court stay these proceedings and hold

17   them in abeyance so that Ramirez may withdraw the claims and present them to the

18   state courts pursuant to Ariz. R. Crim. P. 32.

19                            **1.**

20         The exhaustion doctrine requires only that the state courts be given a fair

21   opportunity to address the claim.  That doctrine does not require that the state courts

22   actually rule on the claim.  *Castille v. Peoples*, 489 U.S. 346, 350-51 (1989).  As

23   explained previously, Arizona's fundamental error review required the appellate court

24   to search the record for certain identified errors, whether or not raised in the appellate

25   briefs.  In conducting that search, the state appellate court must determine whether

26   federal constitutional error has occurred.  This determination requires the state court

27   to "rule, either explicitly or implicitly, on the merits of the constitutional question."

28                        Page 17 of 89

1  *Ake v. Oklahoma*, 470 U.S. at 75.  The federal issues raised in these proceedings were

2  previously identified by the Arizona Supreme Court as issues in that court's decision

3  on direct appeal, its thorough search for fundamental error or its decision denying

4  Ramirez's petition for review in the collateral proceedings.  All of the claims, unless

5  otherwise noted, have been exhausted for purposes of federal review.  *Ake v.*

6  *Oklahoma*, 470 U.S. at 75.

7        Ramirez responds below to each claim that respondents allege is not properly

8  exhausted.  However, he disagrees with respondents' statement that this Court may

9  not grant a writ of habeas corpus unless Ramirez "has exhausted the remedies

10  available in state court."  Answer at 4.  That is not what the law requires.  Rather, the

11  law requires that where there is a *possibility* that state remedies remain available to

12  exhaust constitutional claims, this Court should *stay* these proceedings pending

13  exhaustion, or dismiss the petition without prejudice to allow the petitioner to pursue

14  those remedies.  *See Johnson v. Lewis*, 929 F.2d 460, 464 (9th Cir. 1991) (petition

15  dismissed without prejudice where no Arizona court had "concluded that [petitioner]

16  . . . is procedurally barred from raising his unexhausted . . . claim"); *Sloan v. Delo*,

17  54 F.3d 1371, 1381 (8th Cir. 1995) ("If a federal court is unsure whether a claim

18  would be rejected by the state courts, the habeas proceedings should be dismissed

19  without prejudice or stayed while the claim is fairly presented to them"); *Burgin v.*

20  *Broglin*, 900 F.2d 990, 995 (7th Cir. 1990) (when district court is uncertain state

21  remedies are available and further exhaustion is required, better course is to require

22  petitioner to explore possibility that state remedies exist).

23                                          **2.**

24        In order to protect the state court's role in the enforcement of federal law, the

25  exhaustion doctrine was designed to afford state courts the first opportunity to correct

26  a constitutional violation.  *Rose v. Lundy*, 455 U.S. 509, 518 (1982).  In *Rose*, the

27  Court articulated the rationale for that doctrine as follows:

28                              Page 18 of 89

> Because 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an *opportunity* for the state courts to correct a constitutional violation', federal courts apply the doctrine of comity, which 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an *opportunity* to pass upon the matter.'

*Id.*   (emphasis added).   Under this rule, a state prisoner may not present a constitutional claim in federal court until the highest state court has *declined its opportunity* to grant relief on the federal claim. *Id.*

In most cases state courts have not received this opportunity unless the accused has alerted the state court to the existence of the claim in question through briefing. *See Picard v. Connor*, 404 U.S. 270, 277-78 (1971).  Indeed, if an issue has been fairly presented through briefing, that issue will be deemed exhausted even if the state court foregoes the opportunity to address that issue on the merits. *Smith v. Digmon*, 434 U.S. 332, 333 (1978).

Conversely, a claim may be exhausted, notwithstanding a petitioner's failure to present that claim, if the highest state court has actually addressed the claim in question *sua sponte. Horsley v. Alabama*, 45 F.3d 1486, 1489-90 (11th Cir. 1995); *Cooper v. Wainwright*, 807 F.2d 881, 886-87 (11th Cir. 1986); *Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir. 1990) (*citing* J. Liebman, *Federal Habeas Corpus Practice and Procedure* (1988)); *Turner v. Williams*, 812 F. Supp. 1400, 1423 (E.D. Va. 1993).  This circuit has accurately observed:

> [The] policy of providing an opportunity for state courts to correct constitutional errors before a petitioner may seek relief in federal court permits us to review for error *where the state court has in fact undertaken such review.* No disrespect of a state court conviction may be implied from a review that a state appellate court itself has undertaken.

*Walker v. Endell*, 850 F.2d 470, 474 (9th Cir. 1987)(emphasis added).  In short, once the state's highest court has reached the merits of a federal constitutional claim, this

1    court may do the same -- regardless of whether the claim was actually presented by

2    Ramirez at any stage in the state proceedings.

3        A state court may itself exhaust a claim (in the absence of presentation) in two

4    different ways.  First, the state court may exhaust a claim by actually addressing it

5    within its written opinion.  *See Horsley,* 45 F.3d at 1489-90; *Cooper,* 807 F.2d at

6    887; *Walton,* 916 F.2d at 1356-57; *Sandstrom v. Butterworth,* 738 F.2d 1200, 1206

7    (11th Cir. 1984).

8        Second, a state court may reach the merits of a claim by stating that it has

9    conducted a review which necessarily requires it to assess a particular group of

10   claims. *Beam,* 3 F.3d at 1306; *Falcone,* 120 F.3d at 1084 n.2; *Rickman v. Dutton,* 864

11   F.Supp. 686, 707 (M.D. Tenn. 1994); *see also Gerlaugh v. Stewart,* 129 F.3d 1027,

12   1045 (9th Cir. 1997) (appellate counsel entitled to rely on Arizona's mandatory

13   review of the death sentence in omitting claims from brief).

14       As previously demonstrated, the Arizona Supreme Court conducts an

15   independent review of the propriety of each death sentence which -- by that court's

16   own description - requires it to review all claims addressing the constitutionality of

17   the sentencing proceeding. In conducting this review of the sentence, Arizona courts

18   have been explicit as to the content and scope of that review.

19       All claims that relate to the defendant's capital sentencing should be deemed

20   exhausted by Arizona's independent death penalty review if they are readily apparent

21   in the record of the sentencing proceedings or they address one of the specific issue

22   areas that the Arizona Supreme Court claims to reach through that process. This is

23   consistent with the underlying rationale of the exhaustion doctrine: Arizona has

24   certainly received a fair opportunity to address all claims within the scope of its

25   painstaking review.

26       Based on the above, Ramirez asserts that all the sentencing issues are

27   exhausted and ripe for on the merits habeas review.

28                                Page 20 of 89

**3.**

In the event the Court differs with this analysis, the Court should stay these proceedings to allow Ramirez to exhaust the claims in state court.

**a.**

A district court has discretion to stay a petition which it may validly consider on the merits. *Greenawalt v. Stewart*, 105 F.3d 1268, 1273 (9th Cir. 1997). Citing *Fetterly v. Paskett*, 997 F.2d 1295 (9th Cir. 1993), the Ninth Circuit expressly acknowledged that the equities favor the stay and abeyance procedure in conjunction with the filing of a first federal habeas corpus petition. *Greenawalt*, 105 F.3d at 1274.[9]

Following *Greenawalt*, district courts in the Ninth Circuit have recognized that "the goal of judicial efficiency weigh[s] heavily in favor of holding [the] petition in abeyance." *Ashmus v. Calderon*, 977 F. Supp. 987, 995 (N.D. Cal. 1997). In *Ashmus*, the district court held that:

> . . . [*Calderon v. United States District Court* (*Gordon*), 107 F.3d 756 (9th Cir.1997)] and *Greenawalt* recognize that a court may, in its discretion, hold a fully exhausted petition in abeyance. Citing *Fetterly v. Paskett*, 997 F.2d 1295 (9th Cir.1993), the cases make it clear that a district court may hold a first habeas petition containing only exhausted claims in abeyance while the petitioner exhausts newly discovered, unexhausted claims in state court. *Greenawalt*, 105 F.3d at 1274 (noting that "a district court has discretion to stay a petition which it may validly consider on the merits," and that the equities favoring a stay are greater for first petitions); *Gordon*, 107 F.3d at 761, n. 10; *Greenawalt*, 105 F.3d at 1274 (*citing Lonchar v. Thomas*, 517 U.S. 314, 324, 116 S.Ct. 1293, 1299, 134 L.Ed.2d 440 (1996))[.]

The Court finds, therefore, that a district court may

---

[9]In *Greenawalt*, petitioner could not amend the petition to delete the "unexhausted claims" since an unexhausted claim was the only allegation before the district court. 105 F.3d at 1275. Greenawalt could not, therefore, comply with the dictate of *Rose*. Moreover, withdrawal of the unexhausted claim in Greenawalt's petition would have left nothing for the district court to hold in abeyance pending exhaustion of the claim.

1    exercise its discretion to hold an exhausted petition in
2    abeyance and that neither the principles undergirding
     exhaustion nor *Gordon* and *Greenawalt* present any
3    grounds weighing in favor of denying such abeyance
     requests.

4    977 F. Supp at 992.[10]

5                                    **b.**

6         A petitioner with a mixed petition, containing both exhausted and unexhausted

7    claims, must be afforded the opportunity to amend the petition and delete the

8    unexhausted claims before being subjected to dismissal. *James v. Giles*, 221 F.3d

9    1074, 1077 (9th Cir. 2000).

10        [I]n our post-AEDPA world *there is no reason* why a
          district court should not retain jurisdiction over a
11        meritorious claim and stay further proceedings pending the
          complete exhaustion of state remedies. *Indeed, there is*
12        *every reason to do so* when AEDPA gives a district court
          the alternative of simply denying a petition containing
13        unexhausted but nonmeritorious claims, *see* 28 U.S.C. §
          2254(b)(2) (1994 ed., Supp. V), and when the failure to
14        retain jurisdiction would foreclose federal review of a
          meritorious claim because of the lapse of AEDPA's 1-year
15        limitations period.

16   *Duncan v. Walker*, 533 U.S. 167, 182-83, (2001) (Stevens, J., concurring, joined by

17   J. Souter) (emphasis added). "Our precedent unequivocally authorizes district courts

18   to stay fully exhausted federal petitions pending exhaustion of other claims."

19   *Anthony v. Cambra*, 236 F.3d 568, 575 (9th Cir. 2000) (*referencing Calderon v.*

20   *United States Dist. Ct. (Taylor)*, 134 F.3d 981, 986-88 (9th Cir. 1998); *Fetterly*, 997

21   F.2d at 1301).

22        Under the circumstances of this case, if the Court finds that the claims are not

23

24        [10]In finding that it had authority to hold the proceedings in abeyance, the
     district court in *Ashmus* cited to "[o]ther courts in this district [that] have come to the
25   same conclusion and have held exhausted petitions in abeyance. *See, e.g., Rodrigues*
     *v. Calderon*, C-96-1831 CW (N.D.Cal. August 4, 1997); *Clark v. Calderon*, C 94-
26   2809 EFL (N.D.Cal.1997); *Taylor v. Calderon*, C 92-1627 MHP (N.D. Cal. April 1,
     1997); *Sully v. Calderon*, C 92-0829 CAL (N.D.Cal. March 27, 1997)." 977 F. Supp.
27   at 992, n. 10.

28                              Page 22 of 89

exhausted, the stay and abeyance procedure would "enable all constitutional claims to be settled in one federal habeas proceeding," *Thompson v. Wainwright*, 714 F.2d 1495, 1499 (11th Cir. 1983), thereby advancing the goals of judicial economy and reducing piecemeal litigation, while implementing Ramirez's access to federal court for a determination of his substantial constitutional claims on their merits. It strikes an appropriate balance between the state's interest in prompt adjudication of claims and petitioner's interest in having his claims adjudicated promptly and on their merits in a single first petition, rather than be dismissed as successive. Any claim that is found not to be exhausted is not necessarily precluded from further review in collateral proceedings in the state courts.

### B. Fair presentment.

Respondents assert that claims Ramirez presented to the state courts were not "fairly presented." The respondents argue this Court is precluded from considering these claims on habeas corpus review. All of the claims before this Court, unless otherwise noted, have been fairly presented in the state courts.

The exhaustion doctrine does *not* require a mechanical recital of the federal constitutional claim in the state court. Federal courts have consistently held that a state prisoner cannot be denied access to the federal courts solely because he failed to cite "book and verse on the federal constitution." *Connor*, 404 U.S. at 278. Therefore, when a prisoner presents a broad assertion to the state court, the federal court must look to the underlying factual allegations to determine whether the constitutional claim was fairly presented so as to satisfy the exhaustion requirement.

"[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citations omitted). In order to satisfy the exhaustion requirement, a petitioner must "fairly present" the legal and factual

1    substance of every claim to the state's highest court. *Connor*, 404 U.S. at 275. Fair

2    presentation requires that each claim be presented to the state's highest court in a

3    manner allowing the court to address the claim on the merits. *See James v. Borg*, 24

4    F.3d 20, 24 (9th Cir.1994).

5        Although a claim is not "clearly differentiate[d] between" different aspects, and

6    "relative emphasis" on aspects "has over time changed," the claim is adequately

7    preserved because state court was put on notice of claim. *Wells v. Maass*, 28 F.3d

8    1005, 1008-09 & n.1 (9th Cir. 1994). The state court is also put on notice when the

9    petitioner explicitly raises federal claims before a lower court and that court addresses

10   the questions in a manner sufficient to put a reviewing court on notice of the specific

11   federal claims. *Kelly v. Small*, 315 F.3d 1063, 1067 (9th Cir. 2003). The state court

12   can be presumed to have read both the brief presented and the opinion of appellate

13   court. *Id*.

14       Fair presentation also occurs when the petitioner cites to state cases which

15   analyze federal claims. *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).

16   A claim may also be properly exhausted if it is sufficiently related and intertwined

17   with another exhausted claim. *See Lounsbury v. Thompson*, 340 F.3d 998, 1002 (9th

18   Cir. 2003). In applying the fair presentment doctrine, the federal courts should "avoid

19   hyper technicality." *Williams v. Washington*, 59 F.3d 673, 677-78 (7th Cir. 1995).

20       If a lower court makes an explicit ruling on the federal constitutional issue and

21   there is no indication that an appellate court did not, the presumption is that the

22   subsequent mute affirmance or rejection by the appellate court rests on the same

23   federal constitutional grounds as the decision it was affirming or rejecting.

24   *Sandgathe v. Maass*, 314 F.3d 371, 378 (9th Cir. 2002). Absent strong evidence

25   refuting this presumption, one must look through appellate decisions without an

26   opinion to the reasoned decision that rests on federal constitutional grounds. *Id*. at

27   377.

28

1    "It is too obvious to merit extended discussion that whether the exhaustion

2    requirement … has been satisfied cannot turn upon whether a state appellate court

3    chooses to ignore in its opinion a federal constitutional claim squarely raised in

4    petitioner's brief in the state court, and, indeed, in this case, vigorously opposed in

5    the State's brief." *Digmon*, 434 U.S. at 333. "The reason that point was 'too obvious

6    to merit extended discussion' was that by then it was well settled that 'once [a]

7    federal claim has been fairly presented to the state courts, the exhaustion requirement

8    is satisfied.'" *Castille*, 489 U.S. at 351 (*quoting  Connor*, 404 U.S. at 275).

9    The entirely distinct concern here is whether facts supplementing and clarifying

10   the federal constitutional claim were fairly presented to the state court.  Because those

11   facts were contained in the state court record on appeal, the Arizona Supreme Court

12   was on notice of those facts.  As such, they were fairly presented to the state court.

### C. Procedural default.

14   The doctrine of procedural default is an affirmative defense. *Trest v. Cain*, 522

15   U.S. 87, 89 (1997) ("[P]rocedural default is normally a 'defense' that the State is

16   'obligated to raise' and 'preserve' if it is not to 'lose the right to assert the defense

17   thereafter.'") (*quoting  Gray v. Netherland*, 518 U.S. 152, 165-166 (1996)).

18   Accordingly, a respondent in a habeas corpus proceeding has the burden to *raise* and

19   *prove* the defense of procedural default. *Johnson v. Zerbst*, 304 U.S. at 464.  When

20   a respondent asserts a procedural default defense, the reviewing court must undertake

21   a complex analysis to verify that the respondent has truly established the particular

22   defense of procedural default.

23   Thus, to establish a procedural default in this case, Respondents must prove

24   that a procedural rule applicable to the claim exists *and* that Ramirez failed to comply

25   with the procedural rule.  Next, Respondents must establish that the courts have

26   actually enforced the procedural sanction.  A valid procedural bar must be established

27   in advance and strictly and regularly applied. *Ford v. Georgia*, 498 U.S. 411, 424

1   (1991); *Dugger v. Adams*, 489 U.S. 401, 410-11, n.6 (1989). *Johnson v. Mississippi*,

2   486 U.S. 578, 587-589 (1988); *Siripongs v. Calderon*, 35 F.3d 1308 (9th Cir. 1994).

3   Absent such a finding, there can be no valid procedural bar to federal relief. Finally,

4   respondents must demonstrate that the state procedural rule is an adequate *and*

5   independent ground justifying foreclosure of federal review of the federal

6   constitutional claim. In order for a state procedural forfeiture to constitute an

7   "independent" ground, the state court decision must not appear to rest primarily upon

8   federal law or to be interwoven with federal law. *See, e.g., Coleman v. Thompson*,

9   501 U.S. 722, 730-31 (1991). A respondent must prove that *all of the* components

10  of a procedural default have occurred in order to establish the existence of the bar.

11  Respondents, in this case, have failed to meet their burden.

12      Even if Respondents successfully satisfy these strict requirements and establish

13  a procedural default, the Court may then excuse the default if Ramirez has

14  demonstrated cause for violating the state procedural rule and prejudice resulting

15  from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 492 (1986);

16  *Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977); *Magby v. Wawrzaszek*, 741 F.2d 240

17  (9th Cir. 1984). Finally, even if cause and prejudice is not demonstrated, a federal

18  court may still address the merits of a procedurally defaulted claim to avoid a

19  miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 328 (1995); *Kyles v. Whitley*,

20  514 U.S. 419 (1995); *Sykes*, 433 U.S. at 90-91.

21      Although Ramirez is attempting to address cause and prejudice in the claims

22  below, Ramirez's arguments concerning cause and prejudice, as well as fundamental

23  miscarriage of justice,  depend largely on how this Court rules on the procedural

24  status of each of the claims. For instance, if the Court determines that the basis of a

25  claim was available but not raised, Ramirez may attempt to show cause and the

26  resulting prejudice by demonstrating that counsel was ineffective. *See, e.g., Murray*

27  *v. Carrier*, 477 U.S. at 492; *Baylor v. Estelle*, 94 F.3d 1321, 1324-25 (9th Cir. 1996).

28

1    In the event the Court determines that numerous claims were available, Ramirez may

2    demonstrate ineffective assistance of counsel based on a cumulative prejudice test.

3    *See, e.g., Harris By and Through Ramseyer v. Wood*, 64 F.3d 1432, 1438 (9th Cir.

4    1995). If the Court determines Ramirez failed to adequately present these facts to the

5    Arizona Supreme Court, Ramirez may respond by arguing that the conclusion

6    involves mixed questions of fact and law and cannot be reached without an

7    evidentiary hearing. *Buffalo v. Sunn*, 854 F.2d 1158, 1165-66 (9th Cir. 1988);

8    *Williams v. Turpin*, 87 F.3d 1204, 1211 (11th Cir. 1996). If the claims are found to

9    be procedurally defaulted, Ramirez has been prejudiced. This prejudice cannot be

10   viewed globally, however. The Court must consider the context of each claim, and

11   the prejudice resulting from that claim.

12        Similarly, the standard of proof for the miscarriage of justice exception is less

13   stringent than the standard of proof governing claims of constitutional insufficiency

14   of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979). *Schlup*, 513 U.S. at

15   330. Ramirez's arguments relating to a miscarriage of justice will be dependent on

16   the Court's rulings as well.

17        "Cause" is a factual question which this Court must independently determine.

18   *Johnson v. Mississippi*, 486 U.S. at 587. Accordingly, Ramirez is requesting

19   discovery and a hearing on the "cause" for the failure to raise any unexhausted claims

20   on direct appeal and post-conviction. *Jenkins v. Anderson*, 447 U.S. 231, 234-35, n.1

21   (1980) ("application of the 'cause' and 'prejudice' standard may turn on factual

22   findings that should be made by a district court"). *See also Buffalo*, 854 F.2d at 1165-

23   66 (district court should conduct hearing where disputed facts concerning cause);

24   *Williams*, 87 F.3d at 1211 (district court erred in refusing to hold evidentiary hearing

25   to assess sufficiency of petitioner's allegation of cause and prejudice for default).

26

27

28

**D.     Cause for any allegedly defaulted ineffective
assistance of counsel claims.**

In the event this Court holds that any of Ramirez's ineffective assistance of counsel claims are defaulted, Ramirez contends that the Arizona post-conviction process is inadequate and ineffective to protect his constitutional right to counsel and that his post-conviction counsel performed deficiently, to the prejudice of Ramirez.

**1.  In Arizona, post-conviction review of ineffective
assistance of counsel claims is an extension of direct
appeal.**

In Arizona, claims of ineffective assistance of counsel must be raised in a Rule 32 petition for post-conviction relief, not on direct appeal. *See State v. Apelt*, 176 Ariz. 369, 374, 861 P.2d 654, 659 (1993).   Since post-conviction proceedings afforded Ramirez his only opportunity to pursue a claim of ineffective assistance of counsel, the post-conviction proceedings were a "first appeal as of right" on these claims and Ramirez possessed a constitutional right to effective assistance of counsel in these proceedings. *See Evitts v. Lucey*, 469 U.S. 387, 396, (1985) ("A first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney").   In addition, Ramirez also possessed a statutory right to counsel because Arizona law required that the court appoint counsel for the indigent on their first petition for post-conviction relief. *See* Ariz. R. Crim. P. 32.4(c), 32.5, 6.1(a), (b) (1995); *Galaz v. Carruth*, 129 Ariz. 368, 370, 631 P.2d 523, 525 (Ariz. 1981).

In *State v. Pruett*, 185 Ariz. 128, 131, 912 P.2d 1357, 1360 (1995), the defendant pled guilty and thus, under Arizona law, waived his rights to direct appeal. He then sought post-conviction relief pursuant to Rule 32, counsel was appointed, and the petition was summarily dismissed. *Id.* at 129-30, 912 P.2d. at 1358-59. Pruett subsequently filed a second Rule 32 petition alleging that his first Rule 32 counsel was incompetent. *Id.*

1    Because a Rule 32 petition was Pruett's only means for appellate review, he

2 was entitled to effective assistance of counsel in post-conviction proceedings because

3 in his case, Rule 32 was the counterpart to direct review. 185 Ariz. at 131, 912 P.2d

4 at 1360. Likewise, for capital defendants pursuing ineffective assistance of counsel

5 claims, Rule 32 proceedings are their only chance for appellate review. *See Apelt,*

6 176 Ariz. at 374, 861 P.2d at 659.

7    For capital defendants in Arizona, post-conviction proceedings are not a

8 "sword" used by the petitioner to upset a determination of guilt.  Instead, they are a

9 part of an established, mandatory appellate process, initiated not by the defendant, but

10 by the Arizona Supreme Court. *See* Ariz. R. Crim. P. 32.4(a) (1995) (upon the

11 issuance of a mandate affirming a conviction and death sentence on direct appeal, the

12 clerk of the Arizona Supreme court files an automatic notice for post-conviction

13 relief); *State v. Bolton,* 182 Ariz. 290, 299, 896 P.2d 830, 839 (1995) (a Rule 32

14 proceeding is mandatory upon the affirmance of a death sentence).

15    On first appeals as of right, due process requires that defendants receive the

16 effective assistance of an attorney. *Evitts,* 469 U.S. at 396. Because the initiation of

17 post-conviction proceedings is automatic upon the affirmance of a death sentence and

18 it is a defendant's only chance to present constitutional claims regarding ineffective

19 assistance of counsel, Rule 32 proceedings are appeals "as of right" for these claims

20 and therefore, the state must provide effective assistance of counsel. *See Jackson v.*

21 *State,* 732 So.2d 187, 190 (Miss. 1999) ("The reality is that post-conviction efforts,

22 though collateral, have become an appendage, or part, of the death penalty appeal

23 process at the state level.").

24    When Arizona created Rule 32 proceedings as an integral part of appellate

25 review in capital cases, the procedures used in determining these claims are required

26 to meet the demands of due process. *See Evitts,* 469 U.S. at 393 (citations omitted)

27 ("if a State has created appellate courts as 'an integral part of the . . . system for

28

finally adjudicating the guilt or innocence of a defendant', the procedures used in deciding appeals must comport with the demands of the Due Process"). Due process requires that they be provided competent counsel in these proceedings. *Id.* at 396.

> **2.  If competent counsel is not provided in post-conviction proceedings, appellate review of the competence of capital attorneys will become a "meaningless ritual" and defendants will be denied one "full and fair" opportunity to present their Sixth Amendment claims.**

In Arizona, the state must provide a petitioner with an adequate collateral review process. *See Poland v. Stewart*, 117 F.3d 1094, 1105-06 (9th Cir. 1997).  If competent counsel is not provided to pursue ineffective assistance of counsel claims, valid constitutional claims regarding the deficiencies of counsel will go unremedied, an untenable proposition for a system of justice founded upon effective adversarial testing of the facts:

> "A system of appeal as of right is established precisely to assure that only those who are validly convicted have their freedom drastically curtailed.  A State may not extinguish this right because another right of the appellant -- the right to effective assistance of counsel -- has been violated."

*Id.* at 838.  By not assuring competent counsel for these claims, post-conviction review of the competence of capital attorneys becomes a "meaningless ritual." *Id.* at 394.

If inexperienced, incompetent attorneys are allowed to investigate, examine, and critique the performance of capital trial attorneys, any deficiencies in the trial attorney's abilities will go unchecked, putting the fairness of the entire proceedings in jeopardy. *See Jackson v. Weber*, 637 N.W.2d 19, 24 (S.D. 2001) ("If the defense attorney was ineffective in the original criminal proceeding and habeas counsel was thereafter ineffective in ferreting out the invalidity of the conviction, we may never know if the convicted person had a fair trial or, God forbid, was actually innocent"). This is devastating to our system of justice, especially considering the widespread

1   recognition that incompetence among capital defense attorneys is a common problem.

2   *See* Randall Coyne & Lyn Entzeroth, *Report Regarding Implementation of the*

3   *American Bar Association's Recommendations and Resolutions Concerning the*

4   *Death Penalty and Calling for a Moratorium on Executions*, 4 GEO. J. ON FIGHTING

5   POVERTY 3, 28-30 (1996). Providing only marginal representation on these important

6   issues does not satisfy due process:

7   > "nominal representation on an appeal as of right -- like
>   nominal representation at trial -- does not suffice to render
8   > the proceedings constitutionally adequate; a party whose
>   counsel is unable to provide effective representation is no
9   > better position that one who has no counsel at all."

10   *Evitts*, 469 U.S. at 396.

11   One of the rationales for insisting upon the competence of direct appellate

12   counsel is to ensure that the defendant will have one forum in which he has a full and

13   fair opportunity to effectively present his claims. *See Douglas v. People of State of*

14   *Cal.*, 372 U.S. 353, 357 (1963) ("where the merits of the one and only appeal an

15   indigent has as of right are decided without benefit of counsel, we think an

16   unconstitutional line has been drawn"). For capital defendants who are incompetently

17   represented at trial, the Rule 32 proceeding is their "one and only appeal." If we

18   claim that defendants facing the death penalty have the right to effective assistance

19   of counsel, but then deny them a fair chance to enforce this right in any forum, we are

20   leaving them "with a right that is without a remedy." *Ex parte Graves*, 70 S.W.3d

21   103, 128, n. 5 (Tex. Crim. App. 2002) (Johnson, J., dissenting).

22   ### 3. Because the Eighth Amendment requires meaningful appellate review in death penalty cases, Ramirez must
23   ### be provided with competent counsel in the only forum
24   ### which allows him to enforce his Sixth Amendment right to counsel.

25   The Supreme Court has recognized that "meaningful appellate review" is

26   necessary in capital cases because it "serves as a check against the random or

27   arbitrary imposition of the death penalty." *Gregg v. Georgia*, 428 U.S. 153, 195, 206,

28

1    (1976). Given the amount of error that is discovered in capital cases on appeal and

2    given the grave consequences if the error remains undetected, a thorough and

3    searching review on appeal must be a priority. *See, e.g.*, James S. Liebman et al., *A*

4    *Broken System: Error Rates in Capital Cases*, 1973-1995, at p. 2 (2000) ("Liebman")

5    (finding serious, reversible error in 68 percent of capital cases reviewed between

6    1 9 7 3  a n d  1 9 9 5 ) ,  a v a i l a b l e  a t

7    <http://www2.law.columbia.edu/instructionalservices/liebman/liebman1.pdf>,

8    accessed on November 24, 2003).

9    But how can appellate review be meaningful when a defendant is not afforded

10   competent counsel in the only forum in which he is allowed to challenge his trial

11   counsel's conduct? The Sixth Amendment right to effective assistance of counsel is

12   so fundamental to our system of justice, that it is considered absolutely necessary in

13   order for any trial to be fair. *See Gideon v. Wainwright*, 372 U.S. 335, 344 (1963)

14   ("any person haled into court, . . . cannot be assured a fair trial unless counsel is

15   provided for him").

16   However, the frequency with which capital defendants are ill-represented at

17   trial is a well-known fact. *See* Lane, *O'Connor Expresses Death Penalty Doubt;*

18   *Justice Says Innocent May Be Killed*, WASHINGTON POST, July 4, 2001, p. A1

19   (reporting Justice O'Connor's comment that "Perhaps it's time to look at minimum

20   standards for appointed counsel in death cases" and Justice Ginsburg's comment that

21   "I have yet to see a death case, among the dozens coming to the Supreme Court on

22   the eve of execution petitions, in which the defendant was well represented at trial").

23   Given what we know about the lack of quality representation for capital defendants,

24   allowing Arizona to inflict the ultimate penalty without a meaningful review of trial

25   counsel's performance is a violation of the Eighth amendment: "we have emphasized

26   repeatedly the crucial role of meaningful appellate review in ensuring that the death

27   penalty is not imposed arbitrarily or irrationally." *Parker v. Dugger*, 498 U.S. 308,

28

321 (1991).

### 4.   If a state statute entitles a defendant to the appointment of counsel, the due process clause requires counsel to be effective.

Arizona has provided a statutory right to post-conviction counsel for capital defendants.  Implementation of this right must comport with due process: "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution -- and, in particular, in accord with the Due Process Clause." *Evitts*, 469 U.S. at 401.  Due process demands that when a statutory right to counsel is established, the concomitant right to *effective* assistance of counsel must also be recognized; otherwise, the statutory right would be meaningless.  *See Evitts*, 469 U.S. at 396 ("a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all").  By supplying Ramirez with incompetent post-conviction counsel, the post-conviction proceedings become a "'meaningless ritual.'" *Id.* at 394, *quoting Douglas*, 372 U.S. at 358.

Numerous state courts have recognized that because their state statutes provide for counsel in post-conviction proceedings, due process demands that counsel perform effectively: "we will not presume that our legislature has mandated some 'useless formality' requiring the mere physical presence of counsel as opposed to effective and competent counsel." *Jackson*, 637 N.W.2d at 24. (S.D. 2001).  Their reasoning has been based on the well-established principle that the right to counsel means the right to effective assistance of counsel.  *Evitts*, 469 U.S. at 395-397; *Iovieno v. Comm'r of Correction*, 699 A.2d 1003, 1010 (1997); *Dunbar v. State*, 515 N.W.2d 12, 14-15 (Iowa 1994); *Com. v. Albert*, 561 A.2d 736, 738 (Pa. 1989); *Stovall v. State*, 800 A.2d 31, 38 (Md.App. 2002).

The due process clause of the United States Constitution ensures fundamental fairness; if Arizona appoints incompetent counsel, "fundamental fairness opens the

1   door for relief by habeas corpus when the state, in discharging its statutory duty,

2   appoints incompetent counsel." *Lozada v. Warden, State Prison*, 613 A.2d 818, 822

3   (Conn. 1992).

4        The Arizona Constitution specifically guarantees the right to appeal. Ariz.

5   Const. Art. II, § 24 ("In all criminal prosecutions, the accused shall have . . . the right

6   to appeal in all cases"). As discussed above, in capital cases, post-conviction review

7   is automatically initiated by the Arizona Supreme Court and it is a part of established

8   appellate review.

9        By establishing the entitlement to counsel, Arizona has created a Fourteenth

10  Amendment liberty interest in reasonably competent post-conviction representation.

11  *See Hernandez v. State*, 992 P.2d 789 (Idaho App. 1999) (an allegation that initial

12  post-conviction counsel was ineffective may require the court to allow a second

13  petition since failing to provide an "applicant with a meaningful opportunity to have

14  his or her claims presented may be violative of due process"); *see also* 39 Am. Crim.

15  L. Rev. 1, 59, Winter 2002, *Diabolical Federalism: A Functional Critique and*

16  *Proposed Reconstruction of Death Penalty Federal Habeas*, Andrew Hammel

17  ("Hammel") at 60 (federal courts can certify ineffective assistance of post-conviction

18  counsel as a constitutional violation and therefore, cause, when the state guarantees

19  competent appointed post-conviction counsel to all death row inmates and thus

20  creates a "Fourteenth Amendment liberty interest in reasonably competent post-

21  conviction counsel").

22        The basic purpose of procedural due process is to ensure that before the

23  government can deprive individuals of their liberty, they are given "the opportunity

24  to be heard 'at a  meaningful time and in a meaningful manner.'" *Mathews v.*

25  *Eldridge*, 424 U.S. 319, 334 (1976). Because due process is a flexible concept, in

26  previous examinations of the right to counsel, the Supreme Court has employed the

27  due process balancing test of *Mathews* to guide them. *See Lassiter v. Dept. of Social*

28

*Services of Durham County, N.C.*, 452 U.S. 18 (1981) (examining the right to counsel in a proceeding involving the termination of parental rights). The test examines three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

The private interest involved in Ramirez's case is of the highest possible order: life. The accuracy of post-conviction proceedings is of utmost importance because of the irrevocable nature of punishment by death. If errors are not caught or preserved for federal review at the state post-conviction stage, his execution will preclude any subsequent vindication of errors. *See Jackson v. Weber*, 637 N.W.2d at 24-25 (if capital trial counsel was ineffective and so was post-conviction counsel, "we may never know if the convicted person had a fair trial, or God forbid, was actually innocent. . . . Successive incompetence can create disaster"); *Ramirez v. Stewart*, No. 97-CV-1331, (D. Ariz. Feb. 16, 2001) (order appointing counsel for limited purpose) (Doc. No. 40) (expressing doubts as to the adequacy of federal habeas counsel's performance and appointing new counsel on federal habeas review in a death penalty case, in recognition of the federal statute's entitlement to counsel due to the complex, demanding nature of death penalty proceedings).

Given the complexity of capital post-conviction proceedings and the fact that the Rule 32 proceeding was Ramirez's one and only opportunity to have a full and fair hearing on his claims of ineffective assistance of counsel, the appointment of inexperienced attorneys is simply unacceptable:

> The law, therefore, places an overwhelming premium on quality state post-conviction representation. State habeas

> counsel -- or the prisoner himself, if the state does not provide counsel -- must investigate and litigate every possible claim in the first post-conviction petition. The inmate is litigating without a net. If he or his counsel omits a legal theory or limits investigation, any claim that does not establish his likely innocence is generally gone forever. Further, this thorough job must be done within the state's statute of limitations period, and within the new one-year federal limitations period, which begins running when the inmate's conviction becomes final and which is not tolled during the preparation of the state writ. Inmates with lawyers (virtually all death-sentenced inmates) are totally dependent on their post-conviction counsel to do a thorough job.

Hammel at 27.

The value of ensuring adequate post-conviction counsel is obvious, especially given the statistical evidence of the reoccurring presence of serious error in capital trials. *See* Liebman, at p. 2. The appointment of competent post-conviction counsel not only benefits Ramirez, it also benefits the state of Arizona by increasing the likelihood that an accurate conviction and sentence. Given that Arizona already provides for the appointment of counsel in capital post-conviction proceedings, merely ensuring that counsel is competent will not burden the system already in place.

**5. Title 28 U.S.C. § 2254(i) and 28 U.S.C. § 2261(e) are unconstitutional as applied. In this limited circumstance, the statute violates due process and equal protection under the Fifth and Fourteenth Amendments, the Eighth Amendment, and constitutes a suspension of the writ of habeas corpus.**

**a. Because post-conviction review of the effectiveness of Ramirez's trial counsel was a "first appeal as of right." Ramirez was entitled to the effective assistance of counsel in these proceedings.**

As set forth above, for an Arizona capital prisoner challenging the effectiveness of his trial counsel, the post-conviction proceeding is his "first appeal as of right." Under *Evitts* and *Coleman v. Thompson*, 501 U.S. 722 (1991), this entitles them to the effective assistance of counsel in post-conviction proceedings on

1    the issue of trial counsel's effectiveness. *See Evitts*, 469 U.S. at 396 ("A first appeal

2    as of right therefore is not adjudicated in accord with due process of law if the

3    appellant does not have the effective assistance of an attorney"); *Coleman*, 501 U.S.

4    at 755 (there could be a constitutional right to the effective assistance of counsel on

5    state collateral review where the forum is the first place a challenge can be made).

6    It is undisputed that ineffective assistance of direct appellate counsel is cognizable

7    in a habeas corpus proceeding. *See, e.g., Hayes v. Woodford*, 301 F.3d 1054 (9th Cir.

8    2002).

9        For Ramirez, his post-conviction attorney was his direct appellate counsel on

10   the issue of ineffective assistance of trial counsel.  However, under the terms of 28

11   U.S.C. § 2254(i) and 28 U.S.C. § 2261(e), Ramirez is not permitted to raise this valid

12   constitutional claim.

13       The Sixth Amendment right to counsel holds a cherished place in the Bill of

14   Rights and ensuring the effectiveness of trial counsel is fundamental to our system

15   of justice. *See Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993).  By allowing

16   incompetent post-conviction counsel to litigate these claims, valid claims are lost

17   forever because under the terms of the habeas statute, no federal court would ever be

18   able to review them. *See Hammel*, at 27 (describing how because of strict successor

19   bars, an inmate will be unable to exhaust the claim in state court and because post-

20   conviction counsel's ineffectiveness is not cause, the claim will never be heard in

21   federal court).

22       Ramirez is being unconstitutionally confined because his Sixth Amendment

23   right to counsel at trial was violated.  However, because his post-conviction counsel

24   was incompetent, he never had an opportunity for one full and fair hearing on this

25   issue.  The statute violates due process because it precludes ineffectiveness of direct

26   appeal counsel -- what post-conviction counsel is functioning as on claims of

27   ineffectiveness -- as a claim for relief, therefore ensuring that his valid Sixth

28

1   Amendment claims will go unaddressed by any court. *See Miller v. French*, 530 U.S.
2   327, 350 (2000) (due process "serves to protect the personal rights of litigants to a
3   full and fair hearing").

4       Ramirez was failed twice by the system: once by his trial counsel and again by
5   his post-conviction counsel. If this Court refuses to hear this claim, Ramirez will
6   once again be failed by the system. The Constitution simply does not permit someone
7   to be confined and executed who never received a fair trial due to his counsel's
8   incompetence. However, by precluding these claims, the federal habeas corpus
9   statute does precisely that. This is a violation of due process because it arbitrarily
10  denies Ramirez an opportunity to present a constitutional claim that is recognized as
11  valid. *See Mathews*, 424 U.S. at 332, n.11 ("statutorily created finality requirements
12  should, if possible, be construed so as not to cause crucial collateral claims to be lost
13  and potentially irreparable injuries to be suffered").

14      A federal statute violates equal protection principles under the Fifth
15  Amendment due process clause if the classification fails to advance legitimate
16  legislative goals in a rational fashion. *Schweiker v. Wilson*, 450 U.S. 221, 234 (1981).
17  The statutes at issue here violate equal protection because they allow habeas corpus
18  challenges to the competency of direct appellate counsel in presenting other
19  constitutional issues, but arbitrarily and irrationally preclude them on the issue of trial
20  counsel's effectiveness.

21      If Ramirez were unconstitutionally confined because he was improperly
22  shackled in the presence of the jury, he would be entitled to the effective assistance
23  of appellate counsel to litigate this issue. However, because he was
24  unconstitutionally confined due to the incompetence of his trial counsel, he is not
25  entitled to any assistance to litigate this claim. There is no valid reason to distinguish
26  between the relative validity of these two claims and in fact, because the right to
27  counsel is considered of utmost importance in ensuring the fundamental fairness of

28                          Page 38 of 89

1   any trial, the right to effective assistance to litigate this claim is arguably of even

2   greater importance.

3       The statute also violates the Eighth Amendment because "meaningful appellate

4   review" is necessary in capital cases to "[serve] as a check against the random or

5   arbitrary imposition of the death penalty." *Gregg*, 428 U.S. at 195, 206.   No

6   meaningful appellate review can occur when a defendant has absolutely no right to

7   have anyone assist him in challenging his trial counsel's actions. *See Evitts*, 469 U.S.

8   at 396 (if counsel is ineffective, the defendant is in the same position as one with no

9   counsel at all).

10      In order to be entitled to federal review of these claims, Ramirez must present

11  them in state court.  *See* 28 U.S.C. § 2254(b); *Jackson v. State*, 732 So.2d at 190

12  ("[t]he importance of state post-conviction remedies is heightened by the requirement

13  that, with few exceptions, state remedies must be exhausted before relief can be

14  sought through federal habeas corpus").   In Arizona, Ramirez is precluded from

15  raising them on direct review, although he is constitutionally entitled to the effective

16  assistance of appellate counsel.  *See Apelt*, 861 P.2d at 659.   Therefore, his only

17  opportunity to raise them is on post-conviction review but because he has no right to

18  the effective assistance of post-conviction counsel, it is inevitable that valid claims

19  will be lost.  The statute ensures that there is no "meaningful appellate review" at

20  either the state or federal level.

21      Once again, given what we know about the widespread problem of dismal

22  performance by trial attorneys in capital trial, it is inevitable that people will be

23  executed because they were not well-represented at trial and because this claim was

24  never properly presented.  It is cruel and unusual punishment to fail to give Ramirez

25  one full and fair opportunity to present his constitutional claim simply because of a

26  vicious circle of procedural rules. Ramirez has never been given the opportunity to

27  prove how ineffective his counsel was and he will die for lack of "meaningful

28

1  appellate review."

2  **b. Because Arizona statute conferred upon**
3  **Ramirez an entitlement to counsel,**
   **Ramirez has a Fourteenth Amendment**
   **liberty interest in reasonably competent**
4  **post-conviction representation.**

5      A state creates a liberty interest which is protected under the Fourteenth

6  Amendment when a statute places substantive limits on official discretion. *Olim v.*

7  *Wakinekona*, 461 U.S. 238, 249 (1983).  By providing death row inmates with post-

8  conviction counsel to litigate their claims of ineffectiveness, the state of Arizona has

9  created a liberty interest in the effectiveness of post-conviction counsel. *See Lozada*,

10  613 A.2d at 821-22 (the statutory right to post-conviction counsel "would become an

11  empty shell if it did not embrace the right to have the assistance of a competent

12  attorney").

13      Refusing to recognize this liberty interest in habeas corpus proceedings is a

14  violation of due process.[11]  If Arizona has recognized that "death is different" for

15

16      [11]The constitutionality of 28 U.S.C. § 2254(i) has been raised in *dicta* by at
    least one federal court:
17

18          If there is a statutory right to the assistance of counsel,
            does that statutory right not confer a right to the
19          appointment of effective counsel? If, per § 2254(i), it does
            not, then, arguably, the failure of the state court to appoint
20          counsel regarding the state habeas proceeding, in clear
            violation of the Texas statute, would appear unreviewable
21          in a federal habeas action. Further, while the federal
            appellate court, by mandamus, could compel an inferior
22          federal court to appoint counsel on the federal habeas
            action, if that appointed counsel then failed to file a
23          petition or filed a totally meritless and ineffectual federal
            habeas petition, such would also be unreviewable. Such a
24          scenario arguably raises issues of the constitutionality of §
            2254(i), as regards capital cases, in that if the law confers
25          a statutory right to appointment of counsel, should there
            not be, under the 6th Amendment, a right to the
26          appointment of competent counsel.

    *Dickens v. Johnson*, 2001 WL 257977, at 6, n. 8 (N.D. Tex. March 13, 2001), report
27  and recommendation adopted by *Dickens v. Johnson*, 2001 WL 327736 (N.D. Tex.

28

1   post-conviction purposes by choosing to provide counsel, a federal court cannot turn
2   a blind eye and allow some inmates to be ineffectively represented and thereby lose
3   their right to federal review.  *See* Hammel, at 61 ("If a substantial number of death
4   penalty states have effectively recognized that "death is different" for post-
5   conviction purposes without eliciting a peep of dissent . . .[federal courts] would be
6   well-advised to let these states' experience and practical judgment inform their
7   decision").   However, this is what the statute does, it ensures that valid claims of
8   ineffective assistance of trial counsel will never be heard by any court.   It is
9   fundamental to due process that Ramirez be given at least one full and fair
10  opportunity to prove that his trial was unfair because of the actions of trial counsel.

11          Furthermore, the Eighth Amendment demands searching appellate review
12  before an execution can take place.  *See Gregg*, 428 U.S. at 195.  In this case, the
13  actions of Ramirez's trial counsel have effectively escaped review.  What is the point
14  of providing several steps in the appellate process for review of a death sentence if
15  one misstep by counsel at the beginning stages will ensure that a valid claim must be
16  procedurally ignored by all subsequent courts?  For people sitting on death row who
17  were incompetently represented by trial and post-conviction counsel, the habeas
18  corpus statute allows for review in name only.

19          By ignoring the importance the state has placed upon post-conviction review
20  by mandating the appointment of counsel, the federal statute allows defendants to go
21  their deaths without any effective check upon trial counsel's performance.   This
22  violates the Eighth Amendment requirement of meaningful appellate review in death
23  penalty cases.

24
25
26
27  Mar. 30, 2001).
28
                                Page 41 of 89

**c. The statute impermissibly suspends the writ of habeas corpus by failing to recognize as a cognizable claim Ramirez's due process right to the effective assistance of counsel on his "first appeal as of right" or his due process right in the state-created liberty interest in competent post-conviction counsel.**

The Constitution recognizes the vital importance of the writ of habeas corpus and forbids its suspension, with narrow exceptions: "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it. U.S. Const., Art. I, § 9, cl. 2. The meaning of this clause is to be informed by the modern usage of the writ, and in modern times, it has become "an instrument that now demands . . . application of basic constitutional doctrines of fairness." *Lonchar v. Thomas*, 517 U.S. 314, 322 (1996); *see Felker v. Turpin*, 518 U.S. 651, 664 (1996).

Although over time the federal courts have developed complex procedural rules which "regularize and thereby narrow the discretion" of individual judges, these rules still seek to "maintain the courts' freedom to issue the writ, aptly described as the 'highest safeguard of liberty.'" *Lonchar*, 517 U.S. at 322. Therefore, the procedural rules must operate within constitutional restraints. *Id.* The dismissal of a first federal habeas petition risks serious injury to human liberty because it completely "denies the petitioner the protections of the Great Writ entirely." *Id.* at 324.

In *Martinez-Villareal v. Stewart*, the Ninth Circuit recognized that a suspension of the writ may occur when the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") entirely foreclose one type of constitutional claim. 118 F.3d 628, 631 (1997), *aff'd. sub nom. Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998) (determining whether an unconstitutional suspension of the writ occurred depended upon whether any federal court was authorized to hear petitioner's competency claim). Claim preclusion, when it is not based upon any valid historical

1   restraint such as abuse of the writ, "poses a serious constitutional problem." 118 F.3d

2   at 632.

3       Title 28 U.S.C. §§ 2254(i) and 2261(e) are unconstitutional suspensions of the

4   writ because they completely preclude the presentation of two valid constitutional

5   claims:  1) ineffective assistance of counsel on a "first appeal as of right," and 2)

6   deprivation of a state-created liberty interest in competent post-conviction counsel.

7   In addition, by precluding the existence of these grounds for relief, the statute

8   effectively precludes any opportunity for a claim of ineffective assistance of trial

9   counsel because by permitting the incompetence of post-conviction counsel at the

10   state level, valid claims regarding trial counsel's ineffectiveness will be lost forever.

11      For these reasons, and in violation of the guarantees of the Fifth, Sixth Eighth

12   and Fourteenth Amendments, Ramirez was denied the effective assistance of counsel

13   during his state collateral proceedings on his claim of ineffective assistance of

14   counsel at trial.

15      **E.  Comity does not preclude review by this Court.**

16      The preclusion doctrine, applied appropriately, serves the legitimate ends of

17   encouraging contemporaneous objections at trial and on direct appeal, as well as

18   promoting the finality of judgments. The results in Ramirez's case, however, go far

19   beyond these legitimate interests.

20      Comity requires federal courts to respect legitimate state procedural bars.  As

21   the United States Supreme Court explained in *Coleman v. Thompson*, 501 U.S. at

22   730-731:

23          [T]he application of the independent and adequate state
            ground doctrine is grounded in concerns of comity and
24          federalism. Without the rule, a federal district court would
            be able to do in habeas what this Court could not do on
25          direct review; habeas would offer state prisoners whose
            custody was supported by independent and adequate state
26          grounds an end run around the limits of this Court's
            jurisdiction and a means to undermine the State's interest
27          in enforcing its laws.

28                      Page 43 of 89

1    However, what the Arizona courts did in Ramirez's case turns the notion of comity

2    on its head.

3        Ramirez pursued state post-conviction remedies precisely because he was *not*

4    interested in making an "end run" around the state courts.  He repeatedly sought a

5    meaningful opportunity to present his claims for relief to the state courts.  Yet no

6    matter how he raised his claims, the state of Arizona objected and the state courts

7    summarily dismissed Ramirez's claims, erecting one procedural bar after another.

8        In Ramirez's case, the state courts chose to avoid opportunities to address

9    constitutional claims.

### IV.  The claims.

### A.  Third claim for relief.

**Arizona Supreme Court failure to weigh all mitigating evidence together to determine if mitigating circumstances (sic) sufficiently substantial to call for leniency violates state and federal constitutional rights. (sic)  As a result, Ramirez's rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution were violated.**

Through the third claim for relief, Ramirez alleged that the trial court and the state supreme court on direct review, failed to consider and give effect to evidence of mitigation offered at trial.  This claim is properly before the Court for review and consideration on the merits.[12]

---

[12]The Court previously determined this claim was procedurally barred, Order, July 24, 2000 at 11-12, but then went ahead and stated the claim "meritless." *Id.* at 12.  This statement was premature.

Ramirez did not have notice that the Court was considering the merits of the constitutional claims. The Court indicated throughout these proceedings that it would first consider the procedural status of the claims, and later consider the claims that survived on the merits. *See* Order of Appointment and General Procedures, Aug. 12, 1997 at 2-4. [Doc. No. 2.]  At a minimum, the Court should have advised Ramirez that it decided to change course.

By not giving Ramirez notice, the Court only had the bare record before it when considering the issue. Ramirez was not even permitted the opportunity to fully present the issue through briefing and argument.  If the Court was going to consider