1  Jon M. Sands
   Federal Public Defender
2
   Paula K. Harms (Arizona Bar No. 022486)
3  William S. Lazarow (Ohio Bar No. 0014625)
   Assistant Federal Public Defender
4  850 West Adams Street, Suite 201
   Phoenix, Arizona 85007
5  602.382.2816
   602.889.3960 facsimile
6

```
┌─────────────────────────────────┐
│ __FILED      ___ LODGED          │
│ __ RECEIVED  ___ COPY            │
│                                  │
│      MAY 1 0 2005                │
│                                  │
│   CLERK U S DISTRICT COURT       │
│     DISTRICT OF ARIZONA          │
│ BY____ lcrg_____ B DEPUTY       │
└─────────────────────────────────┘
```

7              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF ARIZONA
8

9   David Martinez Ramirez,                No.  CIV 97-1331-PHX-JAT

10              Petitioner,                 <u>Death Penalty Case</u>

11      vs.                                 Petitioner's Motion for Record
                                            Expansion and Evidentiary
12  Dora Schriro, et al.,                   Development of Facts on Claims
                                            2, 13, and 14
13              Respondents.

14

15          Pursuant to 28 U.S.C. §2254(e), and this Court's March 9, 2005 Order[1], and

16  Rules 6, 7 and 8 of the Rules Governing Section 2254 Cases in the United States

17  District Courts (hereinafter "Habeas Rules" or "Habeas Rule __"), Petitioner David

18  Martinez Ramirez requests that, pursuant to Habeas Rule 6, the Court grant him leave

19  to pursue discovery as specified herein. Further, Mr. Ramirez requests that, pursuant

20  to Habeas Rule 7, the record in this manner be expanded as specified herein. *See*

21  Appendix, Exhibits 1-11. Finally, Mr. Ramirez requests that, pursuant to Habeas

22  Rule 8, the Court schedule an evidentiary hearing to allow further development of

23  essential facts in this case. Specifically, Mr. Ramirez seeks discovery, expansion of

24

25

26

27  _____

28      [1]Dist. Ct. Doc. No. 71.

1   the record and an evidentiary hearing to develop facts to support his Second,

2   Thirteenth, and Fourteenth Claims for Relief.[2]

3          The reasons for this motion are set forth in the attached Memorandum in

4   Support.

5          Respectfully submitted this 10th day of May, 2005.

6                                    Jon M. Sands
                                     Federal Public Defender
7                                    Paula K. Harms
                                     Williams S. Lazarow
8

9

10                                   By
                                              Counsel for Petitioner
11
    A copy of the foregoing was mailed
12  this 10th day of May, 2005, to:

13  John Pressley Todd
    Assistant Attorney General
14  1275 West Washington Street
    Phoenix, Arizona 85007-2997
15
    David Martinez Ramirez, #39656
16  ASPC - Eyman - SMU II
    P.O. Box 3400
17  Florence, Arizona 85232

18

19  Regina Montoya

20

21          [2]The Court's March 9, 2005 Order specifically limits Mr. Ramirez to seeking

22  evidentiary development to these enumerated guilt phase claims.  By filing this

23  motion, Mr. Ramirez is not waiving his right to seek evidentiary development on

    cause and prejudice for procedural default, and any unexhausted claims for which

24  limited development is warranted.  Further, Claim 12 encompasses both guilt and

25  sentencing phase claims, but was not included in the Court's March 9, 2005 Order as

    a guilt phase claim on which the Court ordered evidentiary development briefing.

26  Evidence of Mr. Ramirez's mental retardation is highly probative to this guilt phase

27  claim.  Mr. Ramirez is currently exhausting his mental retardation claim in state court

    and he specifically reserves the right to request evidentiary development on Claim 12

28  should he need to return to federal court.

1  Jon M. Sands
   Federal Public Defender
2
   Paula K. Harms (Arizona Bar No. 022486)
3  William S. Lazarow (Ohio Bar No. 0014625)
   Assistant Federal Public Defender
4  850 West Adams Street, Suite 201
   Phoenix, Arizona 85007
5  602.382.2816
   602.889.3960 facsimile
6
7              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF ARIZONA
8
9
10  David Martinez Ramirez,                No.  CIV 97-1331-PHX-JAT

11              Petitioner,                 Death Penalty Case

12      vs.

13  Dora Schriro, et al.,                   Memorandum in Support of
                                            Petitioner's Motion for Record
14              Respondents.                Expansion and Evidentiary
                                            Development of Facts on Claims 2,
15                                          13, and 14

16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Contents

I.   Discovery, expansion of the record and evidentiary hearings in habeas
     corpus proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.   Expansion of the Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     B.   Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     C.   Evidentiary Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     D.   Procedural Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

II.  Specific Discovery and Evidentiary Hearing Requests . . . . . . . . . . . . . . 19

     A.   Second Claim for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

          1.   Request to expand the record . . . . . . . . . . . . . . . . . . . . . 19

          2.   Request for discovery . . . . . . . . . . . . . . . . . . . . . . . . . . 24

          3.   Request for evidentiary hearing . . . . . . . . . . . . . . . . . . . . 25

     B.   Thirteenth Claim for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

          1.   Request to expand the record . . . . . . . . . . . . . . . . . . . . . 26

          2.   Request for discovery . . . . . . . . . . . . . . . . . . . . . . . . . . 28

          3.   Request for evidentiary hearing . . . . . . . . . . . . . . . . . . . . 29

     C.   Fourteenth Claim for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . 30

          1.   Request for discovery . . . . . . . . . . . . . . . . . . . . . . . . . . 31

          2.   Request for evidentiary hearing . . . . . . . . . . . . . . . . . . . . 32

III. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

i

1   Jon M. Sands
    Federal Public Defender
2
    Paula K. Harms (Arizona Bar No. 022486)
3   William S. Lazarow (Ohio Bar No. 0014625)
    Assistant Federal Public Defender
4   850 West Adams Street, Suite 201
    Phoenix, Arizona 85007
5   602.382.2816
    602.889.3960 facsimile
6

7

8                   IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF ARIZONA
9

10  David Martinez Ramirez,                      No.  CIV 97-1331-PHX-JAT

11              Petitioner,                       Death Penalty Case

12        vs.
                                                  Memorandum   in   Support   of
13  Dora Schriro, et al.,                         Petitioner's  Motion  for  Record
                                                  Expansion   and   Evidentiary
14              Respondents.                      Development of Facts on Claims 2,
                                                  13, and 14
15

16          Pursuant to 28 U.S.C. §2254(e) and Habeas Rule 6, Petitioner David Martinez
17
    Ramirez requests this Court grant him leave to pursue discovery as specified herein
18
    to develop facts to support his Claims 2, 13, and 14, as ordered by this Court on
19
    March 9, 2005.[3]  Mr. Ramirez further requests, pursuant to 28 U.S.C. §2254(e) and
20

21  _____

22          [3]Dist. Ct. Doc. No. 71.  There are four separate dockets from the state court
    proceedings.  The Maricopa County Superior Court docket is referenced as "Td."
23  The docket entry begins with 1 and ends with 201.  The first entry is dated June 5,
    1989 and the last entry is dated June 5, 1996.  State court proceedings after June 5,
24  1996 are referenced by date of filing.  The direct appeal docket is referred to as
    "AzSCt.DA. Dkt."  The docket entry review proceedings are listed on the trial court
25  docket, they are also referenced as "Td."  The petition for review by the Arizona
26  Supreme Court is referred to as "AzSCt. Review Dkt."  The docket entry number
    begins with 1 and ends with 3.  The first entry is dated August 12, 1996, and the last
27  entry is dated May 20, 1997.  The transcripts of the state court proceedings are
28

Habeas Rule 7, and for the reasons set forth herein, that the record in this matter be expanded to include the documents attached hereto as Appendix, Exhibits 1-11.[4] Finally, Mr. Ramirez requests an evidentiary hearing on his Claims for Relief.

## I. DISCOVERY, EXPANSION OF THE RECORD AND EVIDENTIARY HEARINGS IN HABEAS CORPUS PROCEEDINGS.

The United States Constitution enshrines the privilege, through the writ of habeas corpus, to seek the aid of the federal courts whenever a person is held in jail or prison in violation of the Constitution. U.S. Const., Art. I, Section 9. Congress expressly provided that persons wrongfully held in state custody may resort to the writ of habeas corpus to secure their release. 28 U.S.C. § 2254. The writ of habeas corpus is the primary—and in many cases the only—recourse to redress miscarriages of justice. Reasonable discovery, expansion of the evidence with relevant evidence and an appropriate evidentiary hearing are crucial elements of a meaningful habeas corpus proceeding.

Despite the limitations imposed by Congress in the 1996 amendments to 28 U.S.C. § 2254, this Court retains the authority to expand the record, to permit discovery and to conduct an evidentiary hearing.

When President Clinton signed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), he believed certain sections of the legislation warranted comment.

> Some have expressed the concern that two provisions of this important bill could be interpreted in a manner that would undercut meaningful Federal habeas corpus review. I have signed this bill because I am confident that the Federal courts will interpret these provisions to preserve independent review of Federal legal claims and the bedrock constitutional principle of an independent judiciary.

referred to as ("TR"), followed by the date of the proceeding and the transcript page number.

[4]Mr. Ramirez will request, at the appropriate time, that additional expansion of the record be ordered to include relevant evidence obtained through discovery, if leave to pursue discovery is granted.

1  President's Statement on Signing Anti-terrorism and Effective Death Penalty Act of

2  1996, 32 WEEKLY COMP. PRES. DOC. 719 (Apr. 29, 1996) ("President's Statement").

3  The president specifically addressed the legislation's effect upon a petitioner's ability

4  to prove facts to support his federal claims.

5   Section 104(4) limits evidentiary hearings in Federal habeas corpus
    cases when "the applicant has failed to develop the factual basis of a
6   claim in State court proceedings." If this provision were read to deny
    litigants a meaningful opportunity to prove the facts necessary to
7   vindicate Federal rights, it would raise serious constitutional questions.
    I do not read it that way. The provision applies to situations in which
8   "the applicant has failed to develop the factual basis" of his or her claim.
    Therefore, section 104(4) is not triggered when some factor that is not
9   fairly attributable to the applicant prevented evidence from being
    developed in State court.
10
    Preserving the Federal courts' authority to bear evidence and decide
11  questions of law has implications that go far beyond the issue of
    prisoners' rights. Our constitutional ideal of a limited government that
12  must respect individual freedom has been a practical reality because
    independent Federal courts have the power "to say what the law is" and
13  to apply the law to the cases before them. I have signed this bill on the
    understanding that the courts can and will interpret these provisions of
14  section 104 in accordance with this ideal.

15 *Id.*   What was important to the president upon signing the legislation was that

16 petitioners would have an opportunity to develop the factual support for claims unless

17 the failure to do so "is fairly attributable to the applicant." *Id.*[5]

18        It is important to note that federal habeas corpus is not simply a "super appeal"

19 or mere paper review of the state court decision. While it is true that the system is

20 designed to give the states the first opportunity to correct federal constitutional errors,

21

22  _____

23      [5]In *Michael Williams v. Taylor*, 529 U.S. 420, 432 (2000), the Supreme Court
    determined "a person is not at fault when his diligent efforts to perform an act are
24  thwarted, for example, by the conduct of another or by happenstance. Fault lies, in
    those circumstances, either with the person who interfered with the accomplishment
25  of the act or with no one at all." The Court held, "[u]nder the opening clause of §
    2254(e)(2), a failure to develop the factual basis of a claim is not established unless
26  there is lack of diligence, or some greater fault, attributable to the prisoner or the
    prisoner's counsel." *Id.* Interference by the state in developing the facts in state
27  court, does not bar a petitioner from developing the facts in federal court. *Id.* at 443.
28

1    and even provides a presumption of correctness for properly made state court factual

2    findings, that does not mean that factual development in the district courts through

3    discovery, expansion of the record and evidentiary hearings should be avoided. To

4    the contrary, the habeas rules allowing for factual development are valuable tools for

5    making appropriate and reliable decisions regarding the constitutionality of the

6    challenged convictions and sentences.

7       *Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004) has provided the framework for

8    determining whether a state court fact-finding is even eligible for the AEDPA

9    presumption of correctness. Under *Taylor*, the federal court must first undertake an

10    initial intrinsic review of the state court's fact-finding process. *Id.* at 994-1000; *see*

11    *also, Buckley v. Terhune*, 397 F.3d 1149, 1154 (9th Cir. 2005) (*Taylor* established a

12    two-part analysis, the first of which requires an examination of the process, only if

13    the state court process survives this review can the AEDPA presumption of

14    correctness apply).

15       If the process is defective, the factual findings cannot be presumed correct and

16    they are vulnerable to challenges based upon evidence presented for the first time in

17    federal court. *See Buckley*, 397 F.3d at 1155. Federal development of the facts may

18    the be necessary in order to make a reliable finding under the AEDPA. *Id.* To guide

19    the federal courts in their intrinsic review, *Taylor* outlined several respects in which

20    the state court fact-finding process can be defective.

21       One obvious way in which the state court process can be defective is when they

22    court "should have made a finding of fact but neglected to do so." *Id.*; *see also,*

23    *Channer v. Brooks*, 320 F.3d 188, 195 (2nd Cir. 2003) ("where a state court does not

24    resolve a question of fact, no presumption of correctness can possibly attach with

25    respect to that issue."). This is "perforce unreasonable and there is nothing to which

26    the presumption of correctness can attach." *Id.* at 1001. In such a circumstance, it

27    will be up to the federal court to find the facts, and in accordance with this duty, the

28    use of Rules 6, 7, and 8 will become especially appropriate.

1    The federal court must also conduct its own review of the facts, because the
2    state process is defective, when the state court found the facts "under a
3    misapprehension as to the correct legal standard." *Id.* at 1001. The legal error infects
4    the fact-finding process, and again, no presumption of correctness can attach. *Id.* at
5    1001; *see also, Davis v. Lambert*, 388 F.3d 1052, 1066-67 (7th Cir. 2004) (federal
6    evidentiary hearing required where state court required petitioner to satisfy a higher
7    showing of prejudice than required by *Strickland*; without development of the record,
8    state court review was not "full and fair").

9    The state court process is also defective if evidentiary findings are made
10   without having a hearing and giving the petitioner a chance to present evidence.
11   *Taylor*, 366 F.3d at 1001; *see also, Parrish v. Small*, 315 F.3d 1131, 1134 (9th Cir.
12   2003) (in order to be entitled to the AEDPA presumption, the state court must first
13   have based its decision on material facts that were adequately developed); *Gonzalez
14   v. Pliler*, 341 F.3d 897, 903 (9th Cir. 2003) (when facts are based upon an
15   unreasonable evidentiary foundation, such as when prejudice is unknown because no
16   hearing was held at trial or on post-conviction, there is no presumption of
17   correctness). Findings made without adequate development "clearly result in an
18   'unreasonable determination' of the facts." *Id.*

19   A common error in Arizona, which often occurs when the post-conviction
20   courts undergo a preliminary analysis to determine whether the defendant has stated
21   a colorable claim, is that the state courts dismiss claims out of hand, without any
22   evidentiary development. However, in such a situation, the state court is required to
23   accept the facts alleged as true, and the petitioner cannot be required to affirmatively
24   prove prejudice at this point, without the benefit of an evidentiary hearing. *Nunes v.
25   Mueller*, 350 F.3d 1045, 1054 (9th Cir. 2003). Without a hearing, no "facts" are truly
26   found, and no AEDPA deference is owed. *Id.* at 1055. Findings made in the absence
27   of a hearing are only entitled to deference if the "allegations are entirely without
28   credibility or that the allegations would not justify relief even if proved." *Id.* Unless

1   this is the case, the state court has acted unreasonably in denying the petitioner an
2   opportunity for a full and fair hearing." *Id.*; *See also, Parrish*, 315 F.3d at 1134
3   (vague and tentative state court factual findings, made without the benefit of an
4   evidentiary hearing, are not entitled to the AEDPA presumption of correctness); *See*
5   *also, Dyas v. Poole*, 317 F.3d 934, 936-37 (9th Cir. 2002) (state court determinations
6   are unreasonable, and a federal evidentiary hearing is required, when there is an
7   absence of any inquiry to establish the facts that make up the basis of petitioner's
8   claim in state court). Similarly, when funding for discovery to develop evidence is
9   denied in state court, no deference is owed because the factual determinations were
10  by necessity, based upon incomplete evidence.

11      Because these type of factual findings cannot be presumed correct, a federal
12  evidentiary hearing is required if the alleged facts, if proven, would entitle the
13  petitioner to relief. *Gonzalez v. Pliler*, 341 F.3d 897, 903 (9th Cir. 2003); *see also,*
14  *Parrish*, 315 F.3d at 1135 (petitioner was not permitted an opportunity to develop the
15  state court record on the issue of a trial error's prejudice to his defense, so the federal
16  district court should permit that development, through a hearing, in federal court).

17      Another presumption erasing defect in the state court process is when the "state
18  courts plainly misapprehend or misstate the record in making their findings, and the
19  misapprehension goes to a material factual issue that is central to petitioner's claim."
20  *Taylor*, 366 F.3d at 1001. A mistake of this type will "fatally undermine the fact-
21  finding process, rendering the resulting factual finding unreasonable." *Id.*

22      The final example of a fatal defect in the state court process is when the "state
23  court has before it, yet apparently ignores, evidence that supports petitioner's claims."
24  *Id.* at 1001, (citing *Miller-El v. Cockrell*, 537 U.S. 322, 346 (2003)). For instance, in
25  *Taylor*, the state court failed to take proper account of the testimony of a witness who
26  supplied highly probative details for Taylor's voluntariness claim. *Id.* at 1005-06.
27  When the defendant offers highly probative evidence in state court, "[a] rational fact-
28

finder might discount it or conceivably, find it incredible, but no rational fact-finder would simply ignore it." *Id.* at 1006-07.

Deference is only owed to state court factual findings if they were made in accordance with certain tenets vital to the integrity of any court system.   Cursory state court review does not qualify as a full and fair hearing. *Davis v. Lambert*, 388 F.3d 1052, 1066 (7th Cir. 2004) (review cursory, and hearing required where the state court "dispensed with his claim [ineffective assistance of counsel for failure to investigate witnesses] in a mere three sentences, saying only that 'the conduct of counsel did not rise to the level of ineffective assistance of counsel that denied Mr. David his constitutional rights,' and 'his allegations, even if this type of evidence was admitted in, would not change the results.'").

*Taylor* explains at length the traditional fact-finding duties that must first be completed before state courts can be entitled to deference under the AEDPA:

> In instructing jurors about their fact-finding function, we normally advise them to consider the entire record, not individual pieces of evidence standing alone.   This reflects the philosophy of our common-law fact-finding process, namely, that the various pieces of evidence and testimony in the record must be considered in light of all the others. Testimony may seem implausible standing alone, yet gain considerable force when confirmed in a material respect by an independent source or by an objectively verifiable fact.  Similarly, testimony may seem highly plausible, yet be discredited when it is shown to be irreconcilably in conflict with other evidence.  Fact-finding is thus a dynamic, holistic process that presuppposes for its legitimacy that the trier of fact will take into account the entire record before it." Id. at 1007.

> What goes for juries goes no less for judges.  In making findings, a judge must acknowledge significant portions of the record, particularly where they are inconsistent with the judge's findings.  The process of explaining and reconciling seemingly inconsistent parts of the record lays bare the judicial thinking process, enabling a reviewing court to judge the rationality of the fact-finder's reasoning.  On occasion, an effort to explain what turns out to be unexplainable will cause the finder of fact to change his mind. By contrast, failure to take into account and reconcile key parts of the record casts doubt on the process by which the finding was reached, and hence on the correctness of the finding.

*Id.* at 1007-08 (internal citations omitted).

1    If the appellate court cannot discern the reasoning behind the fact-finding

2    process in state court, because no effort is made to explain or reconcile

3    inconsistencies, the state court factual findings must be set aside and the federal court

4    may then have to make new findings. *Id.* at 1007-08, 1014. In order to avoid the

5    same defects that clouded the state court's factual findings, the federal court will need

6    to turn to Rules 6, 7, and 8 to fulfill its judicial duty to find the facts that state court

7    either neglected to find, or found in a nonreasonable manner. *See, e.g, Jones v.*

8    *Wood*, 114 F.3d 1002, 1013 (9th Cir. 1997) (where the facts were not developed at a

9    hearing in state court, a federal evidentiary hearing should be held, in order to

10   determine whether the petitioner qualifies for habeas relief under the AEDPA).

11   **A. EXPANSION OF THE RECORD.**

12   If this Court is to make reliable determinations regarding the constitutionality

13   of Mr. Ramirez's death sentence, Mr. Ramirez must be allowed to establish a

14   predicate for his claims. The "Great Writ" demands, at a minimum, an airing of the

15   facts. The duty of this Court was clearly articulated by the Supreme Court when it

16   stated:

17        [w]e are aware that confinement sometimes induces fantasy which has
          its basis in the paranoia of prison rather than in fact. But where specific
18        allegations before the court show reason to believe that the petitioner
          may, if the facts are fully developed, be able to demonstrate that he is
19        confined illegally and is therefore entitled to relief, *it is the duty of the*
          *court to provide the necessary facilities and procedures for an adequate*
20        *inquiry.* Obviously, in exercising this power, the court may utilize
          familiar procedures, as appropriate, whether these are found in the civil
21        or criminal rules or elsewhere in the "usages and principles of law."

22   *Harris v. Nelson,* 394 U.S. 286, 300 (1969) (emphasis added); *see also Bracy v.*

23   *Gramley,* 520 U.S. 899, 909 (1997).

24   Mr. Ramirez seeks to expand the record before this Court under Habeas Rule

25   7 in order to support his claims for relief now before this Court. The Court clearly

26   has the authority to expand the record as requested.

27   Habeas Rule 7 authorizes district courts to expand the record under certain

28   circumstances. Rule 7(a) allows the record to be "expanded by the parties by the

1   inclusion of additional materials relevant to the determination of the merits of the

2   petition." Rule 7(b) provides "[t]he expanded record may include, *without limitation*,

3   letters predating the filing of the petition in the district court, documents, [and]

4   exhibits . . . . Affidavits may be submitted and considered as a part of the record."

5   (Emphasis added.) When Congress amended the habeas corpus statute by enacting

6   the AEDPA, it did not amend Habeas Rule 7.

7         Habeas Rule 7 is "permissive, not preventive." *Shah v. United States*, 878 F.2d

8   1156, 1162 (9th Cir. 1989). A habeas petitioner "should be allowed to submit

9   additional materials pursuant to Rule 7 in order that [he] may have the opportunity

10  to substantiate [his] contentions." *Turner v. Chavez*, 586 F.2d 111, 113 (9th Cir.

11  1978). If the exhibits offered by Mr. Ramirez "provide facts relevant to [his] . . .

12  claim[s], they may be accepted into the record for purpose of this § 2254 petition."

13  *Cardwell v. Netherland*, 971 F.Supp. 997, 1012 (E.D. Va. 1997).

14        The documents filed with the motion under Habeas Rule 7 support the claims

15  and are relevant[6] to the issues currently under consideration by this Court. Because

16  the documents offered by Mr. Ramirez are "relevant to the merits of the petition,"

17  according to the Advisory Committee Notes to Habeas Rule 7, the Court "has a duty

18  to expand the record to include the omitted material. . . ." *Jones v. Parke*, 734 F.2d

19  1142, 1148 (6th Cir. 1984).[7]

20        After exhaustive analysis in *McNair v. Haley*, 97 F. Supp. 2d 1270, 1280-1286

21  (M.D. Ala. 2000), the district court determined that the ability to expand the record

22

23

24   [6]"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

25

26   [7]In *Jones*, "[t]he record before the district court did not contain an adequate development of the facts material to determining whether petitioner's guilty plea was made knowingly and intelligently." 734 F.2d at 1148. The court of appeals in *Jones* instructed the district court to search for additional materials. *Id*. at 1149.

27

28

1  under Rule 7 was not affected by § 2254(e)(2)'s stringent requirements for an

2  evidentiary hearing.  The *McNair* court reasoned that because Congress had not

3  explicitly amended Rule 7 to apply the same standard utilized in § 2254(e)(2), or

4  stated that § 2254(e)(2) applied to all evidence (not just evidentiary hearings),

5  traditional principles of statutory interpretation must apply. *Id.* at 1282. This analysis

6  hinges on the meaning of the term "evidentiary hearing" as used in § 2254(e)(2).

7  Because Congress presumes that legislation will be read in light of Supreme Court

8  precedent, this presumption also includes the idea that words are "uniformly

9  presumed, unless the contrary appears, to be used in their ordinary and usual sense

10 and with the meaning commonly attributed to them." *Caminetti v. United States*, 242

11 U.S. 470, 485-86 (1917).  Further, "[w]here the language is plain and admits of no

12 more than one meaning, the duty of interpretation does not arise, and the rules which

13 are to aid doubtful meanings need no discussion." *Id.* at 485.  As such, there is no

14 reason provided in either § 2254 or any other part of the AEDPA to suggest that

15 "evidentiary hearing" should be interpreted in a non-traditional manner.  As the

16 *McNair* court aptly put it, "an evidentiary hearing is an evidentiary hearing is an

17 evidentiary hearing." 97 F. Supp. 2d at 1282.

18      In addition, the drafters of the AEDPA redrafted those existing statutory

19 provisions that conflicted with the purpose of the new legislation.  Rule 22 of the

20 Federal Rules of Appellate Procedure was amended as part of the AEDPA's

21 enactment.  It should be presumed that if Rule 7 did not comport with these standards

22 it would have been altered as well. *See United States v. LaBonte*, 520 U.S. 751, 757

23 (1997) (holding that courts must "assume that in drafting this legislation, Congress

24 said what it meant").  As a result, any finding that Rule 7 is somehow limited by the

25 standard for evidentiary hearings set forth in § 2254(e)(2) is clearly contradictory to

26 congressional intent. *Id.* at 1282-83.

27      While Rule 7 leaves the expansion of the record to the discretion of the district

28 court judge, the advisory committee's note to Rule 7 states that one purpose of the

1   rule is to assist the district court in determining whether an evidentiary hearing is

2   warranted by the factual record, clearly suggesting that the standard for expansion of

3   the record should *not* be the same as that required for allowing an evidentiary hearing.

4   *See, e.g., Kasi v. Angelone*, 300 F.3d 487, 498-99 (4th Cir. 2002) (although documents

5   were admittedly not developed or introduced in state court and the federal district

6   court did not determine whether the evidence fit the strictures of § 2254(e) before

7   admitting them, consideration of the documents was proper where it was unclear

8   whether petitioner could have discovered the existence of these records in state

9   court).    The idea that expansion of the record may be a preliminary step in

10  determining the need for an evidentiary hearing has been frequently repeated by the

11  courts.    *See, e.g., Blackledge v. Allison*, 431 U.S. 63, 81-82 (1977) (stating that

12  discovery and expansion of the record can be tools to avoid the need for an

13  evidentiary hearing); *McDonald v. Johnson*, 139 F.3d 1056, 1060 (5th Cir. 1998).

14  These cases conspicuously show that the standard for expansion of the record and

15  provision of an evidentiary hearing cannot be the same, because one is widely

16  considered a precursor to the other. *See Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir.

17  2001) (stating that when discovery or expansion of the record is used to obviate the

18  need for an evidentiary hearing, "it makes little sense to impose the same restrictions

19  that are placed on petitioners seeking an evidentiary hearing").

20      **B. DISCOVERY.**

21      Mr. Ramirez requests leave to pursue discovery to obtain additional

22  information with which to support the claims now before the Court. While specific

23  discovery requests will be discussed under the relevant individual claims below, it is

24  first important to understand this Court's general authority to order discovery.

25      Pursuant to Habeas Rule 6(a), "[a] party shall be entitled to invoke the

26  processes of discovery available under the Federal Rules of Civil Procedure if, and

27  to the extent that, the judge in the exercise of his discretion and for good cause shown

28  grants leave to do so, but not otherwise." Under Habeas Rule 6, "[g]ranting discovery

1  is left to the discretion of the court, discretion to be exercised where there is a

2  showing of good cause why discovery should be allowed." Habeas Rule 6, Advisory

3  Committee Note.

4        "Good cause" exists when (1) the petitioner makes credible allegations of a

5  constitutional violation, and (2) the requested discovery will enable the petitioner to

6  investigate and prove his claims. *See Bracy*, 520 U.S. at 904, 908-09; *see also*

7  *McDaniel v. United States District Court (Jones)*, 127 F.3d 886, 888 (9th Cir. 1997)

8  (citing *Harris v. Nelson*, 394 U.S. 286, 299 (1969)) ("[W]here specific allegations

9  before the court show reason to believe that the petitioner may, if the facts are fully

10 developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the

11 court to provide the necessary facilities and procedures for an adequate inquiry.");

12 *Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000) ("Petitioner need not show

13 that the additional discovery would definitely lead to relief. Rather, he need only

14 show good cause that the evidence sought would lead to relevant evidence regarding

15 his petition.").

16        In some cases, the *discretion* to grant discovery rises to the level of a *duty*.

17 *Harris*, 394 U.S. at 300; *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991); *Maynard*

18 *v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991) (court should exercise its discretion and

19 grant discovery where "good cause" exists for allowing discovery). The Supreme

20 Court has also suggested that district court judges should consider ordering discovery

21 before deciding whether an evidentiary hearing is appropriate whenever the claim on

22 which discovery is sought is not so "'palpably incredible' [or] 'patently frivolous or

23 false' as to warrant summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 76, 82-

24 83 (1977) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). In fact,

25 Rule 6 warrants discovery "when[ever] it would help the court make a reliable

26 determination with respect to the prisoner's claim." *Herrera v. Collins*, 506 U.S. 390,

27 444 (1993) (Blackmun, J., dissenting on other grounds).

28

1   A district court may authorize discovery "at any time in the proceedings, when

2   the court considers that it is necessary to do so in order that a fair and meaningful

3   evidentiary hearing may be held . . . before or in conjunction with the hearing . . . ."

4   *Harris*, 394 U.S. at 300[8] (setting forth standards for discovery under All Writs Act,

5   28 U.S.C. §1651).[9]  Indeed, the United States Supreme Court has emphasized that

6   district courts *should* authorize discovery procedures "reasonably fashioned to elicit

7   facts necessary to help the court 'dispose of the matter as law and justice require.'"

8   *Id.* at 290 (*quoting* 28 U.S.C. § 2243).

9   The scope of discovery under the Federal Rules of Civil Procedure is quite

10  broad.  *See, e.g., Hickman v. Taylor*, 329 U.S. 495 (1947).  Rule 26(b)(1) provides

11  that "parties may obtain discovery regarding any matter, not privileged, which is

12  relevant to the subject matter involved in the pending action . . . .  The information

13

14

15

16  [8]*Harris v. Nelson* disclaimed the notion that "district judges are without power
    to enter necessary orders in the absence of rules," while noting that "the rulemaking
17  machinery should be invoked to formulate rules of practice with respect to federal
18  habeas corpus . . . proceedings."  394 U.S. at 300 n.7.  Habeas Rule 6 was thus
    subsequently adopted.
19
    In stating that Habeas Rule 6(a) is "consistent with *Harris*," however, the
20  Advisory Committee Note indicates that Habeas Rule 6 was not designed to supplant
    the district courts' inherent powers under *Harris* and 28 U.S.C. §1651, but rather to
21  provide practical, enforceable guidelines for discovery in habeas proceedings.  *See*
22  *Gilday v. Callahan*, 99 F.R.D. 308, 309 (D. Mass. 1983) ("[T]he Advisory Committee
    Note of Rule 6 renders [the] Rule consistent with the strict and well reasoned
23  interpretation supplied by *Harris*.")  The All Writs Act thus remains viable to the
24  extent it permits potentially broader discovery procedures than those of Habeas Rule
25  6.

26  [9]Under the All Writs Act, 28 U.S.C. §1651(a), "The Supreme Court and all
27  courts established by Act of Congress may issue all writs necessary and appropriate
    in aid of their respective jurisdictions and agreeable to the usages and principles of
28  law."

1  sought need not be admissible at the trial if the information sought appears reasonably

2  calculated to lead to the discovery of admissible evidence."[10]

3  Consistent with its sweeping language, federal courts have uniformly construed

4  Rule 26(b)(1) very broadly. As the Ninth Circuit explained in *Shoen v. Shoen*, "[t]his

5  broad right of discovery is based on the general principle that litigants have a right

6  to every man's evidence, and that wide access to relevant facts serves the integrity

7  and fairness of the judicial process by promoting the search for truth." 5 F.3d 1289,

8  1292 (9th Cir. 1993) (internal citations and quotations omitted); *see also Kerr v. U.S.*

9  *Dist. Court for Northern Dist. of California*, 511 F.2d 192, 195 (9th Cir. 1975).

10  Allowing discovery will facilitate prompt resolution of this case. "Because

11  habeas corpus discovery is designed to aid courts in determining the validity of the

12  petitioner's claims, it often can add -- and may in fact be indispensable -- to the

13  reliability of habeas corpus proceedings in capital cases. For this reason, liberal use

14  of discovery is appropriate in such cases." RANDY HERTZ & JAMES S. LIEBMAN,

15  FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE 526 (4th ed. 2001).

16  The need for liberal discovery in capital cases is especially acute. Capital cases

17  require heightened reliability in the determination of both the defendant's guilt and

18  sentence. *See Beck v. Alabama*, 447 U.S. 625, 637 (1980). When an individual's life

19  is at stake, the Supreme Court insists upon higher standards of reliability and fairness.

20  *See, e.g., Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality opinion) ("'[T]he

21  penalty of death is qualitatively different' from any other sentence .... We are

22  satisfied that this qualitative difference between death and other penalties calls for a

23

24  [10]Discovery can even be allowed in habeas when discovery is sought on

25  unexhausted or procedurally defaulted claims, and petitioner admits that he failed to
    pursue discovery in state court because of state post-conviction counsel's lack of

26  diligence. *See Sherman v. McDaniel*, 333 F.Supp.2d 960, 961, 970-71 (D. Nev.

27  2004) (because petitioner sought only information regarding his own case, which was
    in the hands of prior attorneys, experts, and information about his family from various

28  governmental agencies).

1  greater degree of reliability when the death sentence is imposed.") (quoting *Woodson*
2  *v. North Carolina*, 428 U.S. 280, 305 (1976)).  Indeed, Congress has articulated this
3  federal policy through the Anti-Drug Abuse Act of 1988, which provides additional
4  investigators, experts, and services of counsel for those seeking collateral review of
5  a death sentence.  *See* 21 U.S.C. §848(q).

6      Because Mr. Ramirez has been sentenced to die, discovery is necessary to
7  insure the additional level of due process that is demanded in capital cases.  Indeed,
8  it has been recognized that "[I]f death is involved, the petitioner should be presented
9  every opportunity possible . . . to present facts relevant to his constitutional claims."
10  *Wilson v. Butler*, 825 F.2d 879, 883 (5th Cir. 1987).  The capital petitioner who fails
11  to request full discovery in his initial habeas petition may lose his life because he
12  failed to investigate his case earlier.  *See, e.g., Tucker v. Kemp*, 819 F.2d 978, 981
13  (11th Cir. 1987) (finding abuse of the writ and denying relief on eve of execution,
14  where capital petitioner failed to seek discovery during first habeas proceedings).

15      As discussed below, Mr. Ramirez has made credible allegations of
16  constitutional violations which, if true, demand habeas relief.  Discovery is necessary
17  in order to further investigate and prove the allegations.

18  **C. EVIDENTIARY HEARINGS.**

19      Mr. Ramirez also requests an evidentiary hearing pursuant to Habeas Rule 8,
20  so that he may present additional information to the Court that will further support
21  the claims for relief pending before the Court.

22      The Supreme Court has recognized six circumstances under which a district
23  court must provide an evidentiary hearing for a habeas petitioner:  (1) the merits of
24  a factual dispute were not resolved in a state court proceeding; (2) the state court
25  factual determination is not supported by the record; (3) the fact finding procedure
26  used by the state was inadequate to afford a full and fair hearing; (4) there is a
27  substantial allegation of newly discovered evidence; (5) the material facts were not
28  adequately developed in a state court proceeding; and (6) for any reason it appears

1  that the state trier of fact did not afford the habeas applicant a full and fair hearing.

2  *See Townsend v. Sain*, 372 U.S. 293, 312-13 (1963), *overruled on other grounds*,

3  *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).

4       In *Keeney*, the Supreme Court partially overruled *Townsend*, but only as to

5  *Townsend's* fifth circumstance -- that the material facts were not adequately

6  developed in the state court hearing. *Townsend's* five other circumstances remain

7  unaffected by *Keeney*. *Keeney*, 504 U.S. at 5.

8       Under *Keeney*, in cases in which the petitioner had a state court evidentiary

9  hearing and negligently failed to develop the material facts in that hearing, the

10  petitioner is entitled to a federal evidentiary hearing only "if he can show cause for

11  his failure to develop the facts in state-court proceedings and actual prejudice

12  resulting from the failure."  504 U.S. at 11.  *Keeney* also recognizes a "narrow

13  exception" to this cause and prejudice requirement: "A habeas petitioner's failure to

14  develop a claim in state-court proceedings will be excused and a hearing mandated

15  if he can show that a fundamental miscarriage of justice would result from failure to

16  hold a federal evidentiary hearing."  *Id.* at 12.

17       Congress codified *Keeney* when it enacted the AEDPA.    Specifically,

18  subsection (e) was added to 28 U.S.C. § 2254 to provide that a district court is not

19  required to hold an evidentiary hearing if the petitioner has "failed to develop the

20  factual basis of his claim in State court proceedings." *Id.* § 2254(e)(2). The AEDPA

21  left the remaining elements of *Townsend* entirely intact.

22       Section 28 U.S.C. § 2254(e)(2) starts off with a conditional clause, requiring

23  the petitioner to meet stringent requirements for a hearing only if the prisoner "failed

24  to develop the factual basis of the claim in State Court." *See Davis v. Lambert*, 388

25  F.3d 1052, 1059-60 (6th Cir. 2001) (the failure to diligently develop the facts is a

26  conditional clause that must be met before the remaining (e)(2) strictures against a

27  federal evidentiary hearing are even applicable); *see also, Channer v. Brooks*, 320

28  F.3d 188, 199 (2nd Cir. 2003) (where petitioner has been diligent in developing his

claim, the requirements of (e)(2) "simply do not apply."); *Cannon v. Mullin*, 383 F.3d 1152 (10th Cir. 2004)(same).

In *Michael Williams v. Taylor*, 529 U.S. 420 (2000), the Supreme Court interpreted and applied 28 U.S.C. Section 2254(e)(2) as amended by the AEDPA. As a threshold matter, the Court recognized that Congress codified *Keeney* in modified form:

> As is evident from the similarity between the Court's phrasing in *Keeney* and the opening clause of § 2254(e)(2), Congress intended to preserve at least one aspect of *Keeney*'s holding: prisoners who are at fault for the deficiency in the state-court record must satisfy a heightened standard to obtain an evidentiary hearing. To be sure, in requiring that prisoners who have not been diligent satisfy § 2254(e)(2)'s provisions rather than show cause and prejudice, and in eliminating a freestanding "miscarriage of justice" exception, Congress raised the bar *Keeney* imposed on prisoners who were not diligent in state-court proceedings.

529 U.S. at 433.

The respondent in *Williams* argued that the "failure to develop" language of Section 2254(e)(2) imposed a "no fault," "strict liability" rule: if the facts were not developed in state court (no matter what the reason), a petitioner is precluded under the statute from developing the facts in federal court. *Id.* at 431. The Supreme Court disagreed with this reading of the "failure to develop" language. "[A] person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance. Fault lies, in those circumstances, either with the person who interfered with the accomplishment of the act or with no one at all." *Id.* at 432. The Court held, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Ibid.*

The mere existence of additional information in federal habeas, that could have been found in state court, does not mean that due diligence cannot be demonstrated. *Williams*, 529 U.S. at 435; *Roberts v. Dretke*, 356 F.3d 632, 639 (5th Cir. 2004) (due diligence does not mean that if the evidence was theoretically available, prior counsel should have acquired it). Petitioner is only required to make a "reasonable attempt,

1   in light of the information available at the time, . . . it does not depend, . . . upon
2   whether those efforts could have been successful." *Williams*, 529 U.S. at 435. For
3   example, if no evidence puts a "reasonable attorney on notice" of additional
4   information about a juror's omissions on voir dire about possible bias, prior counsel
5   cannot be faulted for not discovering this information or for only vaguely alleging a
6   need to examine all the circumstances surrounding the jury's impanelment and
7   consideration of the case. *Id.* at 442; *see also, Roberts*, 356 F.3d at 639 (if there is
8   reason for prior counsel to believe that time and labor intensive discovery efforts will
9   not bear fruit, discovery of this type of evidence "is beyond the requirements of due
10  diligence.").

11          In such a situation, it would be absurd to think "that in all cases diligent
12  counsel must check public records containing personal information pertaining to each
13  and every juror." *Id.* at 443; *see also, Kasi v. Angelone*, 300 F.3d 487, 498-99 (4th
14  Cir. 2002) (failure to develop or include documents in state court record was not
15  attributable to the petitioner because the documents were made confidential by the
16  government and they refused to disclose them at the time of state court proceedings).
17  However, if there is reason to believe that the prior attorney's assumptions were
18  incorrect, new evidence should be allowed to surface in federal habeas and should be
19  considered "in determining whether to accept the state habeas court's factual
20  determinations." *Id.*

21          The Court further recognized, "Congress has given prisoners who fall within
22  § 2254(e)(2)'s opening clause an opportunity to obtain an evidentiary hearing where
23  the legal or factual basis of the claims did not exist at the time of state-court
24  proceedings." *Williams*, 529 U.S. at 436. Finally, the Court stated, "If there has been
25  no lack of diligence at the relevant stages in the state proceedings, the prisoner has
26  not 'failed to develop' the facts under § 2254(e)(2)'s opening clause, and he will be
27  excused from showing compliance with the balance of the subsection's
28  requirements." *Id.* at 437; *see also, Jaramillo v. Stewart*, 340 F.3d 877, 882 (9th Cir.

1   2003).  Interference by the state in developing the facts in state court does not bar a

2   petitioner from developing the facts in federal court.  *See Williams*, 529 U.S. at 443.

3   **D. PROCEDURAL DEFAULT.**

4   Mr. Ramirez also seeks the benefit of discovery and an evidentiary hearing to

5   develop the facts necessary to establish cause and prejudice for any procedural default

6   of his claims for relief, when, and if, such defaults are held by this Court to have

7   occurred.

8   **II. SPECIFIC DISCOVERY AND EVIDENTIARY HEARING REQUESTS.**

9   **A. SECOND CLAIM FOR RELIEF.**

10  In his Second Claim for Relief, Mr. Ramirez alleges that statements were

11  admitted against him at trial that were taken in violation of *Miranda*.[11]  Mr. Ramirez

12  requests expansion of the record to include the documents discussed below, as well

13  as leave to pursue the requested discovery.   Mr. Ramirez further requests an

14  evidentiary hearing on his Second Claim for Relief.

15  **1. REQUEST TO EXPAND THE RECORD.**

16  As discussed above, where specific allegations before the court show reason

17  to believe that the petitioner can, if the facts are fully developed, demonstrate that he

18  is confined or sentenced illegally and is therefore entitled to relief, it is the duty of the

19  court to provide the necessary facilities and procedures for an adequate inquiry.

20  *Harris*, 394 U.S. at 300; *see also Bracy*, 520 U.S. at 909.

21

22

---

23  [11]Facts and arguments supporting the Second Claim for Relief are set forth fully

24  on pages 19-21 of Mr. Ramirez's Amended Petition [Dist. Ct. Doc. No. 18], pages 10-
    11 of the Traverse [Dist. Ct. Doc. No. 21], pages 13-16 of the Memorandum of the

25  Merits [Doc. No. 29], pages 28-38 of the Second Memorandum Regarding the Merits

26  of the Remaining Claims [Dist. Ct. Doc. No. 90], pages 48-51 of the Reply to the
    Response of the Merits (Claims 2, 3, 4, 6, 9, 12) and Traverse to the Answer to the

27  Supplemental First Amended Petition for Writ of Habeas Corpus (Claims 13-31)

28  [Dist. Ct. Doc. No. 110].  These documents are incorporated by reference herein.

1    The state court's fact-finding process in deciding this claim was defective, and
2  thus not entitled to the AEDPA presumption of correctness, because Mr. Ramirez was
3  denied funding at the state court level to develop evidence of his mental retardation.
4  *See Taylor v. Maddox*, 366 F.3d 992, 994-1000 (9th Cir. 2004). Mr. Ramirez's failure
5  to develop facts regarding his mental retardation were not the result of a lack of
6  diligence because as set forth in Claim 12, Mr. Ramirez was denied funding for the
7  assistance of mental health experts for the guilt phase.  Had Mr. Ramirez been
8  provided with the proper resources, a mental health expert could have uncovered the
9  evidence of mental retardation and presented it during the state court hearing on this
10 claim.

11    Information about Mr. Ramirez's mental retardation would have been relevant
12 and admissible since the *Miranda* rule was created due to the recognition that
13 "in-custody interrogation of persons suspected or accused of crime contains
14 inherently compelling pressures which work to undermine the individual's will to
15 resist and to compel him to speak where he would not otherwise do so freely."
16 *Miranda v. Arizona*, 384 U.S. 436, 367 (1966).  Mentally retarded defendants are
17 especially vulnerable to improper police questioning because "by definition they have
18 diminished capacities to understand and process information, to communicate, to
19 abstract from mistakes and learn from experience, to engage in logical reasoning, to
20 control impulses, and to understand the reactions of others." *Atkins v. Virginia*, 536
21 U.S. 304, 318 (2002); *see also, Hill v. Anderson*, 300 F.3d 679, 683 (6th Cir. 2002)
22 (staying guilt phase claims while *Atkins* claim was exhausted in state court because
23 mental retardation was relevant to determining the admission of petitioner's
24 confession).

25    Mr. Ramirez asks that this Court expand the record in this matter to include the
26 following exhibits related to mental retardation which are appended hereto:

27    **EXHIBIT 1:  DECLARATION OF RICARDO WEINSTEIN** (December 14,
     2004). Dr. Weinstein, a neuropsychologist, has diagnosed Mr. Ramirez
28   as mentally retarded.

**EXHIBIT 2: DECLARATION OF ELOISE ARCE** (November 4, 2004). Eloise Arce is Mr. Ramirez's aunt and she provided information regarding Mr. Ramirez's developmental period that was used to support the diagnosis of mental retardation.

**EXHIBIT 3: DECLARATION OF HERMINIA NARANJO** (November 4, 2004). Herminia Naranjo is Mr. Ramirez's aunt and she provided information regarding Mr. Ramirez's developmental period that was used to support the diagnosis of mental retardation.

**EXHIBIT 4: DECLARATION OF RICHARD GARCIA** (November 23, 2004). Richard Garcia was Mr. Ramirez's stepfather and he provided information regarding Mr. Ramirez's developmental period that was used to support the diagnosis of mental retardation.

**EXHIBIT 5: DECLARATION OF MARY HELEN PIERCE** (November 5, 2004). Mary Helen Pierce is Mr. Ramirez's aunt and she provided information regarding Mr. Ramirez's developmental period that was used to support the diagnosis of mental retardation.

**EXHIBIT 6: DECLARATION OF JOHN PIERCE** (November 5, 2004). Mr. Pierce was Mr. Ramirez's uncle and he provided information regarding Mr. Ramirez's developmental period that was used to support the diagnosis of mental retardation.

**EXHIBIT 7: DECLARATION OF MICKEY MCMAHON, PH.D.** (November 5, 2004). Dr. McMahon was appointed just before sentencing to evaluate Mr. Ramirez. Had he been provided with adequate funding and resources and appointed prior to the guilt phase, he could have recognized the potential diagnosis of mental retardation in Mr. Ramirez.

**EXHIBIT 8: LETTER FROM MCGRAW-HILL COMPANIES, INC. REGARDING THE MEANING OF MR. RAMIREZ'S CALIFORNIA TEST SCORES** (November 22, 2004). This letter explains how Mr. Ramirez's school test scores indicate that he was performing below the level expected of a child his age.[12]

The state court's fact-finding process in deciding this claim was also defective, and thus not entitled to the AEDPA presumption of correctness, because they ignored evidence highly probative of Mr. Ramirez's *Miranda* claim by failing to reconcile inconsistencies in the officers' testimony. *See Taylor v. Maddox*, 366 F.3d at 1001, 1006-07. Because there is no presumption of correctness on the facts underlying this claim, the state court factual findings can be set aside and this court is free to make

[12]Mr. Ramirez reserves the right to include additional documents and evidence in this request once the issue of mental retardation has been explored in state court.

1   new findings and expand the record. *See Buckley*, 397 F.3d at 1155. Mr. Ramirez did

2   not fail to develop this claim in state court because he requested and received a

3   hearing on the admissibility of his statements to the officers.

4       As the Supreme Court has recently pointed out, when it comes to *Miranda*

5   issues, oftentimes law enforcement officials are less than candid about their purpose

6   for talking with a suspect. *Missouri v. Seibert*, 542 U.S. ___, 124 S.Ct. 2601, 2613

7   n.6; *see also, e.g., Arnett v. Lewis*, 870 F.Supp. 1514, 1520 (D.Ariz. 1994). Instead

8   of focusing on the officers' purported motivation of public safety as a justification for

9   asking Mr. Ramirez "what's going on" and accepting their assertions, the Arizona

10  court's focus should have been "on facts apart from intent that show the [an

11  impermissible] tactic at work." *Seibert*, 124 S.Ct. at 2613 n.6.

12      The testimony of the officers at the scene evidences several inconsistencies that

13  are highly probative of Mr. Ramirez's claim that the situation at hand did not warrant

14  application of *Miranda*'s emergency exception. However, the Arizona Supreme

15  Court failed to reconcile these inconsistencies, and instead, they ignored key facts

16  supporting Mr. Ramirez's position. *Taylor*, 366 F.3d at 1001, 1006-07. The

17  justification for Officer Hartson's illegal interrogation was that an officer in the back

18  had radioed to them that the Mexican male he saw was wearing a red shirt and

19  suspenders, but when the other officers at the front encountered Mr. Ramirez inside,

20  he was shirtless. *Ramirez*, 178 Ariz. at 119, 871 P.2d at 240. The Arizona Supreme

21  Court relied on this testimony to claim that the officers questions were prompted by

22  a concern for "public safety" because there was a possibility that another Mexican

23  male was inside the small apartment wearing a red shirt and suspenders. *Id.* at 123,

24  871 P.2d at 244.

25      However, the Arizona Supreme Court completely ignored highly probative

26  facts that supported Mr. Ramirez's position and these facts were inconsistent with the

27  officer's testimony. When the officers at the front door entered the apartment, they

28  would have observed a shirt, stained red with blood, laying on an ironing board in the

1   dining area. *Id.* at 121, 871 P.2d at 242. They also would have observed that a "pair

2   of blood-stained suspenders lay on a chair" in the living room. *Id.* at 120, 871 P.2d

3   at 241. Despite the fact that Mr. Ramirez, a Hispanic male, approached them from

4   the back of the apartment, shirtless and covered in blood, and that they could see a

5   blood-stained shirt and suspenders in plain view, that the murder weapon was the first

6   thing they saw when the entered the apartment, the officers still contended that when

7   questioning Mr. Ramirez, he was not considered the primary suspect and that they

8   had reason to believe that another potentially armed Hispanic male with a red shirt

9   and suspenders was still inside and a potential danger to them.[13] *Id.* at 120-21, 871

10   P.2d at 241-42. In addition, one of the officers at the back admitted that although the

11   first time he saw the Mexican male at the back of the apartment he appeared to be

12   wearing a red shirt and some suspenders, he admitted that when he saw the same

13   person a second time in the back of the apartment, he was no longer wearing a shirt.[14]

14          Because the Arizona Supreme Court's factual findings must be set aside, this

15   Court is free to expand the record to include evidence which supports Mr. Ramirez's

16   claim. The Arizona Supreme Court found that the officers had reason to believe their

17   was still a man inside the apartment who was wearing a red shirt because that is what

18   was radioed to them by the officers in the back. *Id.* at 123-24, 871 P.2d at 244-245.

19   However, Officer Hartson, the officer who illegally questioned Mr. Ramirez, wrote

20   in his police report that before they encountered Mr. Ramirez, "[f]rom the back

21   window an officer broadcast that he could see a male moving about inside the

22   apartment and he was covered with tattoos and *wasn't wearing a shirt*."[15] Tellingly,

23   his report, made just after the crime, does not mention that they were on the lookout

24   for a man wearing a red shirt and suspenders.

25   ————————

26          [13]TR 7/6/90 at 22; TR 7/13/90 at 65, 74.

27          [14]TR 7/13/90 at 46, 49, 53.

28          [15]Exhibit 9 (emphasis added).

Mr. Ramirez asks that this Court expand the record in this matter to include the following exhibit related to the *Miranda* violation which is appended hereto:

**EXHIBIT 9: POLICE REPORT OF OFFICER R.V. HARTSON** (May 25, 1989). Officer Hartson's report further illustrates the inconsistencies in the officers' testimony that they perceived there to be another man wearing a red shirt and suspenders in the small apartment. This supports Mr. Ramirez's claim that the "public safety" exception was erroneously applied in this case.

## 2. REQUEST FOR DISCOVERY.[16]

As noted above, "good cause" to grant a discovery request under Habeas Rule 6 exists when (1) the petitioner makes credible allegations of a constitutional violation, and (2) the requested discovery will enable the petitioner to investigate and prove his claims. *See Bracy*, 520 U.S. at 904, 908-09. Mr. Ramirez's Second Claim for Relief establishes credible allegations of constitutional violations relating to his right to remain silent. This claim was developed in state court at a hearing, so there has been no lack of diligence on the part of Mr. Ramirez. However, as set forth above under the request for expansion of the record on this claim, because the Arizona Supreme Court's factual findings must be set aside on this claim, this Court is free to allow additional discovery.

As the Supreme Court has recently pointed out, when it comes to *Miranda* issues, oftentimes law enforcement officials are less than candid about their purpose for talking with a suspect. *Seibert*, 124 S.Ct. at 2613 n.6; *see also, e.g., Arnett*, 870 F.Supp. at 1520. In *Seibert*, the Supreme Court examined a strategy used by the police case—question first without *Miranda*, obtain a confession, and then give the *Miranda* warnings and obtain the confession again— and found that it undermined the purpose of *Miranda* and that the repeated statements were inadmissible at trial.

---

[16]Mr. Ramirez is not seeing discovery at this point on this claim as it relates to mental retardation because relief is currently being sought on this claim in state court. Therefore, it is premature to begin the discovery process in federal court. Mr. Ramirez reserves the right to seek discovery on mental retardation in federal court, should he need to return to federal court for relief.

*Id.* at 2605. They also noted that there was evidence that this kind of tactic was widely used by police across the nation, promoted by a national police training organization, and adapted to undermine the purpose of the *Miranda* warnings. *Id.* at 2608, 2612. Similarly, Mr. Ramirez requests discovery to pursue indications that the officers at the scene and the Phoenix Police Department were trained to intentionally violate *Miranda* under the guise of the "public safety" exception.

Mr. Ramirez requests leave to pursue the following discovery on the merits of his Second Claim for Relief:

> **PERSONNEL FILES OF OFFICERS HARTSON, STAHL, HOWK AND SAPON:** Petitioner seeks the personnel files of the officers present at the scene to determine whether they have ever been disciplined for violating a suspect's constitutional rights or for testifying untruthfully. Petitioner also seeks their personnel files in order to determine what training they may have received on *Miranda* and its application.

> **REQUEST FOR PRODUCTION OF DOCUMENTS FROM THE PHOENIX POLICE DEPARTMENT:** This request for production of documents will seek the written policies, protocol, training materials and other documents relevant to the Phoenix Police Department and the application of *Miranda*.

### 3. REQUEST FOR EVIDENTIARY HEARING.

Mr. Ramirez is entitled to an evidentiary hearing on his Second Claim for Relief. Although discovery might reveal additional witnesses whose testimony would be relevant to the claim and additional evidence of mental retardation is currently being developed in state court, Mr. Ramirez intends to call, at a minimum, the following witnesses at an evidentiary hearing in support of his Second Claim for Relief:

> **DR. RICARDO WEINSTEIN:** Dr. Weinstein will testify that Mr. Ramirez is mentally retarded and thus, more susceptible to the inherently coercive atmosphere of custodial questioning.

Mr. Ramirez's *Miranda* claim was developed in state court at a hearing, so there is no diligence problem. However, as set forth on the request to expand the record on this claim, and incorporated herein, the Arizona Supreme Court's fact-finding process was defective because of the failure to reconcile the inconsistencies

1  in the officers' testimony, the failure to acknowledge highly probative evidence

2  which supported Mr. Ramirez's claim, and because Mr. Ramirez was denied adequate

3  resources for a mental health expert to assist him in preparation for the guilt phase.

4  Because the process was defective, the state court factual findings must be set aside

5  and the federal court is free to hear new evidence. The material fact in dispute is Mr.

6  Ramirez's mental retardation.[17]   If his mental retardation is proven, it will

7  demonstrate that he is even more susceptible to the "inherently compelling

8  pressure[]" of an in-custody interrogation.  *Miranda v. Arizona*, 384 U.S. 436, 367

9  (1966).

10  **B. THIRTEENTH CLAIM FOR RELIEF.**

11  In his Thirteenth Claim for Relief, Mr. Ramirez alleged that the trial court erred

12  in failing to clarify for the jury that they should not be considering the fact that Mr.

13  Ramirez failed to testify.[18] Mr. Ramirez requests expansion of the record to include

14  the documents discussed below, as well as leave to pursue the requested discovery.

15  **1. REQUEST TO EXPAND THE RECORD.**

16  As discussed *supra*, where specific allegations before the court show reason

17  to believe that the petitioner can, if the facts are fully developed, demonstrate that he

18  is confined or sentenced illegally and is therefore entitled to relief, it is the duty of the

19

20

21  [17]Petitioner assumes for the sake of argument that Respondents will dispute that

22  Mr. Ramirez is mentally retarded, although they have not yet done so in any pleading.

23  Mr. Ramirez reserves the right to call additional witnesses on mental retardation once this evidence has been presented in state court.

24  [18]Facts and arguments supporting the Thirteenth Claim for Relief are set forth

25  fully on pages 4-7 of the Supplement to First Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Dist. Ct. Doc. No.76]

26  and pages 78-80 of the Reply to the Response on Merits (Claims 2, 3, 4, 6, 9, 12) and

27  Traverse to the Answer to the Supplemental First Amended Petition for Writ of Habeas Corpus (Claims 13-31) [Dist. Ct. Doc. No. 110], which are incorporated by

28  reference herein.

1  court to provide the necessary facilities and procedures for an adequate inquiry.

2  *Harris,* 394 U.S. at 300; *see also Bracy,* 520 U.S. at 909.

3        Mr. Ramirez seeks to expand the record to include evidence that Mr. Ramirez's

4  failure to testify did factor into the jury's deliberations because the trial court failed

5  to clarify for them that this could not enter into their decision.  Mr. Ramirez also

6  seeks to expand the record to include evidence that his guilt was not a foregone

7  conclusion in the jury's minds because at least two jurors had serious doubts about

8  finding Mr. Ramirez guilty of capital murder.   This claim was not developed in state

9  court because at the time of Mr. Ramirez's trial, Arizona law prevented him from

10  obtaining evidentiary support from jurors regarding their misunderstanding of the

11  court's instructions, or their mental processes.  *State v. Mauro,* 159 Ariz. 186, 206,

12  766 P.2d 59, 79 (1988) ("Rule 24.1(c)(3) lists the 6 exclusive types of juror

13  misconduct.  Juror misunderstanding of instructions is not one of the grounds of

14  misconduct listed in rule 24.1(c)(3). Furthermore, Mr. Goodman's affidavit is

15  evidence which inquires into a juror's subjective motives or mental processes and is

16  inadmissible under the explicit wording of rule 24.1(d). Information concerning how

17  a particular juror viewed the burden of proof relates to the juror's mental processes.")

18  (internal citations omitted). This rule was later amended in recognition that Arizona's

19  prior rule was overly restrictive.  Comment to Ariz. R. Crim. P. 24.1(d).  Therefore,

20  there was no lack of diligence on Mr. Ramirez's part because state law prevented him

21  from developing this evidence.

22        Mr. Ramirez also demonstrated due diligence in state court because after

23  raising this claim on direct appeal, he again raised the claim in state postconviction

24  and he specifically requested an evidentiary hearing.[19]   In raising the claim,

25  postconviction counsel specifically pointed out that under Arizona law "the parties

26  may not use extrinsic evidence to inquire "'into the subjective motives or mental

27

28     [19]Td. 193 at 2.

1    processes which led a juror to assent or dissent from the verdict.' (Rule 24.1(d) of the

2    Arizona Rules of Criminal Procedure)."[20]

3          The unfairness of the old rule regarding juror evidence is illustrated by the

4    result in Mr. Ramirez's case.  In denying relief, the Arizona Supreme Court relied

5    upon the presumption that jurors follow the court's instructions, "absent some

6    evidence the contrary." *Ramirez*, 178 Ariz. at 127, 871 P.2d at 248.  However, Mr.

7    Ramirez was prevented from developing evidence to the contrary under Arizona law.

8    Mr. Ramirez has now developed evidence that indicates the jury did consider the fact

9    that he did not testify in their deliberations, and that this prejudiced the result of the

10   trial.

11         Mr. Ramirez asks that this Court expand the record in this matter to include the

12   following exhibits which are appended hereto:

13         **EXHIBIT 10: DECLARATION OF JEAN HOWELL:** (May 10, 2005). Jean
           Howell served as a juror in Mr. Ramirez's case. Ms. Howell states that
14         "[d]uring deliberations, the jury considered the fact that the defense
           attorney's decision not to have Mr. Ramirez testify may have indicated
15         that the case for his innocence was weak." Howell Declaration at ¶8.

16         **EXHIBIT 11: DECLARATION OF LINDA WELLS:** (May 9, 2005). Linda
           Wells served as a juror in Mr. Ramirez's case. Ms. Wells states that at
17         least two jurors "had serious doubts about finding Mr. Ramirez guilty of
           capital murder during deliberations." Wells Declaration at ¶3. She also
18         stated that "I was personally disappointed that Mr. Ramirez did not
           testify in his own defense during trial. I felt that it would have been nice
19         to see him in action, and I was curious to see if he had anything to say
           in order to defend himself." Wells Declaration at ¶4.
20
           **2. REQUEST FOR DISCOVERY.**
21
                 As discussed *supra*, where specific allegations before the court show reason
22
     to believe that the petitioner can, if the facts are fully developed, demonstrate that he
23
     is confined or sentenced illegally and is therefore entitled to relief, it is the duty of the
24
     court to provide the necessary facilities and procedures for an adequate inquiry.
25
     *Harris*, 394 U.S. at 300; *see also Bracy*, 520 U.S. at 909.
26

27   _____

28         [20]Td. 190 at 6.

1  As explained in the request for an expanded record on this claim, Mr. Ramirez

2  did not fail to develop this claim in state court because of a lack of diligence. He was

3  prevented by then-prevailing state law from developing evidence on how the trial

4  court's failure prejudiced him because he was not allowed to obtain evidence from

5  jurors on this ground.

6  This discovery request seeks to develop facts which demonstrate that the jurors

7  did not know they were not to consider Mr. Ramirez's failure to testify, that the

8  judge's answer to their question did not clarify this for them, and that they did

9  consider his failure to testify, to the prejudice of Mr. Ramirez's defense.

10  **DEPOSITIONS OF MR. RAMIREZ'S JURORS.** These depositions will seek
testimony pertaining to the jury's consideration of Mr. Ramirez's failure

11  to testify and their understanding of the judge's answer to their question
on Mr. Ramirez's failure to testify.

12

13  ### 3. REQUEST FOR EVIDENTIARY HEARING.

14  As explained *supra*, in the request for an expanded record and discovery, Mr.

15  Ramirez seeks to develop facts which demonstrate that the jurors did not know they

16  were not to consider Mr. Ramirez's failure to testify, that the judge's answer to their

17  question did not clarify this for them, and that they did consider his failure to testify,

18  to the prejudice of Mr. Ramirez's defense. Mr. Ramirez did not fail to develop this

19  claim in state court because of a lack of diligence. He was prevented by then-

20  prevailing state law from developing evidence on how the trial court's failure

21  prejudiced him because he was not allowed to obtain evidence from jurors on this

22  ground.

23  Although Mr. Ramirez contends that he can obtain relief on this claim based

24  upon the record as it stands, the Arizona Supreme Court denied relief on this claim

25  by relying upon the instruction that jurors follow the court's instructions, "absent

26  evidence to the contrary." *Ramirez*, 178 Ariz. at 127, 871 P.2d at 248. Therefore,

27  under this analysis, the material fact in dispute is whether the trial judge's failure to

28  clarify prejudiced Mr. Ramirez's defense because the jury was considering his failure

1   to testify as part of their deliberations.  An evidentiary hearing will show that Mr.

2   Ramirez is entitled to relief because he does possess "evidence to the contrary,"

3   namely, that the jury was considering his failure to testify and that this consideration

4   prejudiced his defense.   There was no full and fair hearing on this in state court, so

5   this fact was never reliably found and there was no lack of diligence because then-

6   prevailing state law prevented counsel from presenting this testimony at a hearing.

7       Although discovery might reveal additional witnesses whose testimony would

8   be relevant to the claim, Mr. Ramirez intends to call, at a minimum, the following

9   witnesses at an evidentiary hearing on his Thirteenth Claim for Relief:

10      **MR. RAMIREZ'S JURORS:**  Upon information and belief, jurors will
        testify regarding their understanding of whether they could consider Mr.
11      Ramirez's to testify, their understanding of the trial court's answer to
        their question regarding Mr. Ramirez's failure to testify, that they did
12      consider his failure to testify during deliberations, and that this
        consideration tended to make them disbelieve the defense's case. Upon
13      information and belief, they will also testify that at least two jurors
        entertained serious doubts about Mr. Ramirez's guilt on the charge of
14      capital first degree premeditated murder.

15      **C. FOURTEENTH CLAIM FOR RELIEF.**

16      In his Fourteenth Claim for Relief, Mr. Ramirez alleged that the prosecutor

17  violated his right to remain silent and unconstitutionally shifted the burden of proof

18  to him by twice eliciting testimony from the state criminalist regarding the availability

19  of vaginal swabs for testing by a defense expert.[21]

20      Mr. Ramirez requests leave to pursue discovery in support of his Fourteenth

21  Claim for Relief.   Mr. Ramirez further requests an evidentiary hearing on his

22  Fourteenth Claim for Relief.

23  _____

24      [21]Facts and arguments supporting the Fourteenth Claim for Relief are set forth
    fully on pages 8-9 of the Supplement to First Amended Petition Under 28 U.S.C. §
25  2254 for Writ of Habeas Corpus by a Person in State Custody [Dist. Ct. Doc. No.76]
    and pages 78-80 of the Reply to the Response on Merits (Claims 2, 3, 4, 6, 9, 12) and
26  Traverse to the Answer to the Supplemental First Amended Petition for Writ of
27  Habeas Corpus (Claims 13-31) [Dist. Ct. Doc. No. 110], which are incorporated by
28  reference herein.

1       **1. REQUEST FOR DISCOVERY.**

2           As discussed *supra*, where specific allegations before the court show reason

3   to believe that the petitioner can, if the facts are fully developed, demonstrate that he

4   is confined or sentenced illegally and is therefore entitled to relief, it is the duty of the

5   court to provide the necessary facilities and procedures for an adequate inquiry.

6   *Harris,* 394 U.S. at 300; *see also Bracy,* 520 U.S. at 909.

7           Mr. Ramirez seeks to develop facts on this claim which show that these

8   questions and testimony effected the members of the jury and how the viewed the

9   defense case and the state's burden of proof.  Depositions of jury members will be

10  relevant to show the prejudicial nature of the error committed by the prosecutor.

11  Information from jury members was not collected in state court because then-

12  prevailing state law prevented counsel from obtaining this information. *See State v.*

13  *Mauro,* 159 Ariz. 186, 206, 766 P.2d 59, 79 (1988) ("Rule 24.1(c)(3) lists the 6

14  exclusive types of juror misconduct.  Juror misunderstanding of instructions is not

15  one of the grounds of misconduct listed in rule 24.1(c)(3).  Furthermore, Mr.

16  Goodman's affidavit is evidence which inquires into a juror's subjective motives or

17  mental processes and is inadmissible under the explicit wording of rule 24.1(d).

18  Information concerning how a particular juror viewed the burden of proof relates to

19  the juror's mental processes.") (internal citations omitted).  This rule was later

20  amended in recognition that Arizona's prior rule was overly restrictive.  *See*

21  Comment to Ariz. R. Crim. P. 24.1(d).  Therefore, there was no lack of diligence on

22  Mr. Ramirez's part because state law prevented him from developing this evidence.

23          To enable Mr. Ramirez to present the Court with additional factual support for

24  his Fourteenth Claim for Relief, Mr. Ramirez requests that the Court grant leave to

25  pursue the following discovery:

26      **DEPOSITIONS OF MR. RAMIREZ'S JURORS:** This deposition will seek
        testimony pertaining to the prejudicial nature of the error committed by
27      the prosecutor.  The declaration of juror Jean Howell, Exhibit 10,
        illustrates that the jurors were making improper inferences about the
28      defense on other issues, so there is reason to believe they also made

1    improper inferences based upon the prosecutor, and the respect they had
     for the prosecutor. This discovery will also show that at least two jurors
2    entertained serious doubts about Mr. Ramirez's guilt on the charge of
     capital first degree premeditated murder, going to the prejudice prong
3    of this claim. *See* Declaration of Linda Wells, Exhibit 11 at ¶4.

4              **2. REQUEST FOR EVIDENTIARY HEARING.**

5          Mr. Ramirez is entitled to an evidentiary hearing on his Fourteenth Claim for

6    Relief. As stated *supra*, Mr. Ramirez seeks to develop facts on this claim which show

7    that the prosecutor's questions and the criminalist's testimony effected the members

8    of the jury and how the viewed the defense case and the state's burden of proof.

9    Testimony from jury members will be relevant to show the prejudicial nature of the

10   error committed by the prosecutor. Information from jury members was not collected

11   in state court because then-prevailing state law prevented counsel from obtaining this

12   information. *See State v. Mauro*, 159 Ariz. 186, 206, 766 P.2d 59, 79 (1988) ("Rule

13   24.1(c)(3) lists the 6 exclusive types of juror misconduct. Juror misunderstanding of

14   instructions is not one of the grounds of misconduct listed in rule 24.1(c)(3).

15   Furthermore, Mr. Goodman's affidavit is evidence which inquires into a juror's

16   subjective motives or mental processes and is inadmissible under the explicit wording

17   of rule 24.1(d). Information concerning how a particular juror viewed the burden of

18   proof relates to the juror's mental processes.") (internal citations omitted). This rule

19   was later amended in recognition that Arizona's prior rule was overly restrictive. *See*

20   Comment to Ariz. R. Crim. P. 24.1(d). Therefore, there was no lack of diligence on

21   Mr. Ramirez's part because state law prevented him from developing this evidence.

22         Although Mr. Ramirez contends that he can obtain relief on this claim based

23   upon the record as it stands, to the extent the Court believes he has not shown that

24   this error was prejudicial, Mr. Ramirez requests the opportunity to dispute this

25   material fact – the effect of the comments and questions upon the members of the

26   jury. Upon information and belief, juror members will admit that they held it against

27   the defense that they did not have their own expert test the swabs and that they

28   thought it was the defense's job to affirmatively prove their case before they could

1   return a verdict of not guilty or of a lesser included offense. Because it was the

2   prosecutor who elicited this testimony, twice, and according to at least one juror, the

3   jury had a favorable impression of the prosecutor, it increases the likelihood of Mr.

4   Ramirez being able to demonstrate prejudice on this claim if given the opportunity.[22]

5   There was no full and fair hearing on this claim in state court because, as outlined

6   above, then prevailing Arizona law prevented Mr. Ramirez from developing this

7   evidence.

8        Although discovery might reveal additional witnesses whose testimony would

9   be relevant to the claim, Mr. Ramirez intends to call, at a minimum, the following

10  witnesses at an evidentiary hearing in support of his Eleventh Claim for Relief:

11      **MR. RAMIREZ'S JURORS:** Upon information and belief, Mr. Ramirez's
        jurors will possess relevant information about the prejudicial effect the
12      prosecutor's questions and the criminalist's answers had upon their
        deliberations, how they viewed the defense's case and how they viewed
13      the state and defendant's burden of proof. Upon information and belief,
        they will also testify that at least two jurors entertained serious doubts
14      about Mr. Ramirez's guilt on the charge of capital first degree
        premeditated murder.

15

16  **III.   CONCLUSION.**

        For the foregoing reasons, Mr. Ramirez requests that this Court:

17
            1.   Pursuant to Habeas Rule 7, expand the record
18               as requested;

19          2.   Pursuant to Habeas Rule 6, grant leave to
                 pursue discovery as requested; and
20
            3.   Pursuant to Rule 8, order that an evidentiary
21               hearing be held on the issues requested.

22

23

24

25

26

27
    _____
28  [22]Exhibit 10, Declaration of Jean Howell.

1    Respectfully submitted this 10th day of May, 2005.

2                                    Jon M. Sands
                                     Federal Public Defender
3                                    Paula K. Harms
                                     Williams S. Lazarow
4

5

6                                    By
                                         Counsel for Petitioner
7

8

9    A copy of the foregoing was mailed
     this 10th day of May, 2005, to:
10
     John Pressley Todd
11   Assistant Attorney General
     1275 West Washington Street
12   Phoenix, Arizona 85007-2997

13   David Martinez Ramirez, #39656
     ASPC - Eyman - SMU II
14   P.O. Box 3400
     Florence, Arizona 85232
15

16
     Regina Montoya
17

18

19

20

21

22

23

24

25

26

27

28