1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    David Martinez Ramirez,              )    No. CV 97-1331-PHX-JAT
                                          )
10             Petitioner,                )    DEATH PENALTY CASE
                                          )
11   v.                                   )
                                          )
12                                        )    **ORDER RE: CONVICTION CLAIMS**
     Dora B. Schriro, et al.,             )
13                                        )
               Respondents.               )
14   _____  )

15          Petitioner David Martinez Ramirez ("Petitioner") is a state prisoner under sentence

16   of death.  Pending before the Court is Petitioner's Motion for Record Expansion and

17   Evidentiary Development of Facts on Claims 2, 13 and 14.  (Dkt. 127.)[1]  Respondents oppose

18   the motion.  (Dkt. 129.)

19          The Court previously reviewed the procedural status of Claim 2, and dismissed part

20   as procedurally barred (see dkt. 83 at  14-15, 27); Respondents concede that Claim 13 is

21   exhausted and properly before this Court for review on the merits.  Claim 2, in part, and

22   Claim 13 are addressed below in the Motions Discussion section.  In contrast, the parties

23   contest exhaustion regarding Claim 14, therefore, the Court first reviews the procedural

24   status of that claim.  Because only one other conviction claim remains before the Court,

25   Claim 17, the Court will also address that claim on the merits in this Order.

26

27   _____

28          [1] "Dkt." refers to the documents in this Court's case file.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

2   On July 27, 1990, Petitioner was convicted of two counts of first degree murder.

3   Maricopa County Superior Court Judge Thomas W. O'Toole sentenced Petitioner to death

4   on both counts on December 18, 1990. The Arizona Supreme Court affirmed the convictions

5   and sentences. See State v. Ramirez, 178 Ariz. 116, 871 P.2d 237 (1994). Petitioner filed

6   a petition for post-conviction relief ("PCR") with the trial court, which was denied in its

7   entirety in a ruling filed on February 20, 1996. On May 20, 1997, the Arizona Supreme

8   Court summarily denied review of that decision.

9

**EXHAUSTION AND PROCEDURAL DEFAULT OF CLAIM 14**

10   Because this case was filed after April 24, 1996, it is governed by the Antiterrorism

11   and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"). Lindh v. Murphy,

12   521 U.S. 320, 336 (1997); Woodford v. Garceau, 538 U.S. 202, 210 (2003). The AEDPA

13   requires that a writ of habeas corpus not be granted unless it appears that the petitioner has

14   properly exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); see also

15   Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509 (1982). To

16   properly exhaust state remedies, the petitioner must "fairly present" his claims to the state's

17   highest court in a procedurally appropriate manner. O'Sullivan v. Boerckel, 526 U.S. 838,

18   848 (1999).

19   The parties agree that Petitioner presented Claim 14–alleging prosecutorial

20   misconduct arising out of commentary on Petitioner's silence at trial–in the opening brief on

21   direct appeal. However, counsel withdrew the claim at oral argument and the Arizona

22   Supreme Court did not address it. See Ramirez, 178 Ariz. at 118 n.1, 871 P.2d at 239 n.1.

23   The parties dispute the significance of the presentation and subsequent withdrawal. It is self-

24   evident that by withdrawing the claim Petitioner removed it from the court's consideration.

25   Cf. Nelson v. Phoenix Resort Corp., 181 Ariz. 188, 196 n.9, 888 P.2d 1375, 1383 n.9 (App.

26   1994) (noting that withdrawn claim was not relevant to appeal); Patchell v. State, 147 Ariz.

27   508, 509, 711 P.2d 647, 648 (App. 1985) (addressing only one claim because petitioner

28   withdrew all other claims at oral argument). Therefore, Petitioner failed to present the claim

in a procedurally appropriate manner to the highest state court and Claim 14 has not been properly exhausted.  See O'Sullivan, 526 U.S. at 848.

Petitioner argues that it would be presumptuous and premature for this Court to determine that he has no remedy available in state court for Claim 14 because Arizona often inadequately invokes its preclusion rules.  First, it is the district court's role to determine if there is a state remedy presently available for claims never properly raised in state court.  See Ortiz v. Stewart, 149 F.3d 923, 931 (9th Cir. 1998) (citing Harris v. Reed, 489 U.S. 255, 269-70 (1989) (O'Connor, J., concurring)).  Second, the Ninth Circuit has repeatedly determined that Arizona regularly and consistently applies its procedural default rules such that they are an adequate bar to federal review of a claim.  See Ortiz, 149 F.3d at 932 (finding Rule 32.2(a)(3) regularly followed and adequate); Poland v. Stewart, 117 F.3d 1094, 1106 (9th Cir. 1997) (same); Martinez-Villareal v. Lewis, 80 F.3d 1301, 1306 (9th Cir. 1996) (previous version of Arizona's preclusion rules "adequate"); Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992) (same).  Petitioner alleges generally that Claim 14 fits an exception to preclusion, but does not cite any specific exception.  The Court finds that no exceptions apply and Petitioner is now precluded by Arizona Rules of Criminal Procedure 32.2(a)(3) and 32.4 from obtaining relief on Claim 14 in state court.  See Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).  Thus, Claim 14 is technically exhausted but procedurally defaulted, absent a showing of cause and prejudice or a fundamental miscarriage of justice.

As cause to excuse default of this claim, Petitioner alleges that his appellate and post-conviction counsel were ineffective for failing to raise this claim.  Before ineffective assistance of counsel ("IAC") can constitute "cause" to excuse the procedural default of another claim, the petitioner must have fairly presented that ineffectiveness to the state's highest court as an independent claim.  See Edwards v. Carpenter, 529 U.S. 446, 451-53 (2000) ("ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"); Murray v. Carrier, 477 U.S. 478, 489-90 (1986) ("the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to

1   establish cause for a procedural default."); Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir.

2   1988) (exhaustion requires petitioner to first raise IAC on appeal claim separately in state

3   court before alleging it as cause for default).

4        Petitioner did not present ineffective assistance of appellate or PCR counsel as

5   independent claims in state court. (See dkt. 83 at 10-11, 26.) Because the Arizona Supreme

6   Court did not have a fair opportunity to rule on Petitioner's counsel claims and Petitioner

7   may not exhaust those claims now, any claims for ineffective assistance of appellate or PCR

8   counsel are technically exhausted and procedurally defaulted. See Gray v. Netherland, 518

9   U.S. 152, 161-62 (1996); Coleman, 501 U.S. at 735 n.1; Kibler v. Walters, 220 F.3d 1151,

10  1153 (9th Cir. 2000) (state prisoner's claims of IAC not previously presented to state

11  supreme court were procedurally barred due to state's procedural requirements). Thus, such

12  claims cannot constitute cause. Additionally, the Court has previously rejected, as a matter

13  of law, Petitioner's argument that IAC during PCR proceedings can constitute cause to

14  excuse the default of any claims.[2] (See dkt. 83 at 24-26 & n.12.) Because Petitioner has not

15  established cause to overcome the default, the Court need not analyze prejudice. See Thomas

16  v. Lewis, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991).

17       Petitioner makes a conclusory allegation that a fundamental miscarriage of justice will

18  occur if Claim 14 is not reviewed on the merits because he is actually innocent of first degree

19  murder and his death sentence is unconstitutional. To demonstrate a fundamental

20  miscarriage of justice based on innocence of the crime a petitioner must show that "a

21  constitutional violation has probably resulted in the conviction of one who is actually

22  innocent." See Schlup v. Delo, 513 U.S. 298, 327 (1995). To establish the requisite

23

24       [2] Petitioner requests a hearing on cause and prejudice to overcome any procedural
25  default. Because the Court finds Petitioner's allegations of cause insufficient as a matter
    of law, evidentiary development on this issue is not warranted. See McCleskey v. Zant,
26  499 U.S. 467, 494 (1991) ("The petitioner's opportunity to meet the burden of cause and
    prejudice will not include an evidentiary hearing if the district court determines as a
27  matter of law that petitioner cannot satisfy the standard."); see also Clark v. Lewis, 1 F.3d
28  814, 820 (9th Cir. 1993); Campbell v. Blodgett, 997 F.2d 512, 524 (9th Cir. 1992).

probability, Petitioner must prove with "new reliable evidence" that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 324, 327.  In the motion for evidentiary development as to Claim 14, Petitioner seeks only to introduce evidence from trial jurors.  Because the standard for miscarriage of justice based on innocence of the crime requires the Court to evaluate how a "reasonable juror" would have decided the case in light of the new evidence, testimony from the actual jurors is irrelevant.  See id. at 324, 327.  Petitioner has not alleged new evidence sufficient to establish a fundamental miscarriage of justice based on innocence of the crime.  Further, because Claim 14 is not related to Petitioner's sentence it does not implicate fundamental miscarriage of justice based on innocence of the death penalty.  The Court finds that Petitioner's conclusory allegations regarding miscarriage of justice are insufficient to overcome the default.  Claim 14 will be dismissed as procedurally barred.

## LEGAL STANDARD FOR EVIDENTIARY HEARING, EXPANSION OF THE RECORD AND DISCOVERY

### Evidentiary Hearing

The decision whether to grant an evidentiary hearing when there are material facts in dispute is generally at the discretion of the district court judge.  See Townsend v. Sain, 372 U.S. 293, 312, 318 (1963), overruled in part by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992), and limited by § 2254(e)(2); Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999); Rule 8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the district court judge shall determine if an evidentiary hearing is required).  However, a judge's discretion is significantly circumscribed by § 2254(e)(2) of the AEDPA.  See Williams v. Taylor, 529 U.S. 420 (2000).

Section 2254 provides that:

*If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –*

(A) the claim relies on –

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously

unavailable; or

    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

    As interpreted by the Supreme Court, subsection (e)(2) precludes an evidentiary hearing in federal court only if the failure to develop a claim's factual basis is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams, 529 U.S. at 432.  "The purpose of the fault component of 'failed' is to ensure the prisoner undertakes his own diligent search for evidence."  Id. at 435.  The Court found that this rule served AEDPA's goal of furthering comity in that "federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."  Id.; see also Cardwell v. Netherland, 971 F. Supp. 997, 1008 (E.D. Va. 1997) ("Ordinarily, a § 2254 petition is limited to the factual record developed in state court proceedings"), aff'd Cardwell v. Greene, 152 F.3d 331 (4th Cir. 1998), overruled on other grounds, Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000).   In correlation, subsection (e)(2) allows factual development when a petitioner diligently attempts to develop the factual basis of a claim in state court and is "thwarted, for example, by the conduct of another or by happenstance was denied the opportunity to do so." Williams, 529 U.S. at 432; see Baja, 187 F.3d at 1078-79.

    In compliance with § 2254(e)(2), when the factual basis for a particular claim has not been fully developed in state court, the first question for a district court in evaluating whether to grant an evidentiary hearing on the claim is whether the petitioner was diligent in attempting to develop its factual basis.  See Baja, 187 F.3d at 1078 (quoting Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998), overruled on other grounds, Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)).  The Supreme Court set an objective standard for determining "diligence" – whether a petitioner "made a reasonable attempt, in light of the information

- 6 -

available at the time, to investigate and pursue claims in state court." <u>Williams</u>, 529 U.S. at 435.  For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to sufficiently investigate and present the evidence to the state court.  <u>See id.</u> at 438-40 (counsel lacked diligence because he was on notice of possibly material evidence and conducted only a cursory investigation); <u>Alley v. Bell</u>, 307 F.3d 380, 390-91 (6th Cir. 2002) (lack of diligence because petitioner knew of and raised claims of judicial bias and jury irregularities in state court, but failed to investigate all the factual grounds for such claims).

Absent unusual circumstances, diligence requires "that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." <u>Williams</u>, 529 U.S. at 437; <u>see</u> <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1090 (9th Cir. 2001), <u>amended on denial of reh'g</u>, 253 F.3d 1150 (9th Cir. 2001) ("inactions show insufficient diligence" on ineffective counsel claim because petitioner did not request an evidentiary hearing, and brought claim only on appeal not in a collateral proceeding).  What is more, the mere request for an evidentiary hearing may not be sufficient to establish diligence if a reasonable person would have taken additional steps.  <u>See</u> <u>Dowthitt v. Johnson</u>, 230 F.3d 733, 758 (5th Cir. 2000) (petitioner requested hearing but found not diligent because he failed to present affidavits of family members that were easily obtained without court order and with minimal expense); <u>see also</u> <u>Koste v. Dormire</u>, 345 F.3d 974, 985-86 (8th Cir. 2003) (lack of diligence despite hearing request because petitioner made no effort to develop the record or assert any facts to support claim that his counsel was ineffective for knowing of and failing to investigate his psychiatric condition), <u>cert. denied</u>, 541 U.S. 1011 (2004).  If an evidentiary hearing is requested, a petitioner's inability to persuade a state court to conduct such a hearing does not in itself demonstrate lack of diligence.  <u>See</u> <u>Cardwell</u>, 152 F.3d at 338.

In sum, if this Court determines that a petitioner has not been diligent in establishing the factual basis for his claims in state court, then the Court may not conduct a hearing unless the petitioner satisfies one of § 2254(e)(2)'s narrow exceptions.  If, however, the petitioner

has not failed to develop the factual basis of his claim in state court, the Court will then proceed to consider whether a hearing is appropriate or required under the criteria set forth by the Supreme Court in <u>Townsend</u>. 372 U.S. 293; <u>see Baja</u>, 187 F.3d at 1078 (quoting <u>Cardwell</u>, 152 F.3d at 337).  A federal district court *must* hold an evidentiary hearing in a § 2254 case when the facts are in dispute if (1) the petitioner "alleges facts which, if proved, would entitle him to relief," and (2) the state court has not "after a full hearing reliably found the relevant facts." <u>Townsend</u>, 372 U.S. at 312-13.  In any other case in which the facts are in dispute and diligence has been established, the district court judge "has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim." <u>Id.</u> at 318 (noting that if a "habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, [the judge] may, and ordinarily should, accept the facts as found in the hearing").

**<u>Expansion of the Record</u>**

Rule 7 of the Rules Governing Section 2254 Cases authorizes a federal habeas court to expand the record to include additional material relevant to the determination of the merits of a petitioner's claims.  Rule 7 provides:

> The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath, to written interrogatories propounded by the judge.  Affidavits may also be submitted and considered as part of the record.

Rule 7(b), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  The purpose of Rule 7 "is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing."  Advisory Committee Notes, Rule 7, 28 U.S.C. foll. § 2254; <u>see also</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 81-82 (1977).

Section 2254(e)(2), as amended by the AEDPA, limits a petitioner's ability to present new evidence through a Rule 7 motion to expand the record in the same manner as it does with regard to evidentiary hearings.  <u>See</u> <u>Cooper-Smith v. Palmateer</u>, 397 F.3d 1236, 1241 (9th Cir. 2005) (holding that the conditions of § 2254(e)(2) generally apply to petitioners

1   seeking relief based on new evidence, even when they do not seek an evidentiary hearing)

2   (citing Holland v. Jackson, 542 U.S. 649, 653 (2004) (per curiam)).  Thus, when a petitioner

3   seeks to introduce, through a Rule 7 motion, new affidavits and other documents never

4   presented in state court for the purpose of establishing the factual predicate of a claim, he

5   must show both diligence in developing the factual basis in state court and relevancy of the

6   evidence to his claim.  If diligence is not shown, the requirements of § 2254(e)(2) must be

7   satisfied before the Court can consider expansion of the record.  To find otherwise would

8   allow circumvention of the AEDPA's restriction against federal habeas courts holding

9   evidentiary hearings in cases where the petitioner is at fault for failing to develop the facts

10  in state court.

11          **Discovery**

12          Rule 6(a) of the Rules Governing Section 2254 Cases ("Habeas Rules") provides that

13  "[a] judge may, for *good cause*, authorize a party to conduct discovery under the Federal

14  Rules of Civil Procedure, and may limit the extent of discovery."  Rule 6(a), 28 U.S.C. foll.

15  § 2254 (emphasis added).  Whether a petitioner has established "good cause" for discovery

16  requires a habeas court to determine the essential elements of the petitioner's substantive

17  claim and evaluate whether "specific allegations before the court show reason to believe that

18  the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . .

19  entitled to relief."  Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (quoting Harris v. Nelson,

20  394 U.S. 286, 300 (1969)).

21          **LEGAL STANDARD FOR RELIEF UNDER THE AEDPA**

22          For properly preserved claims "adjudicated on the merits" by a state court, the

23  AEDPA enacted a more rigorous standard for habeas relief.  See Miller-El v. Cockrell, 537

24  U.S. 322, 337 (2003); Lambert v. Blodgett, 393 F.3d 943, 965 (9th Cir. 2004) ("Inspired by

25  principles of comity, finality and federalism, AEDPA establishes a highly deferential

26  standard for reviewing state court determinations").

27          Pursuant to the AEDPA, Petitioner is not entitled to relief on any claim adjudicated

28  on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Further, section 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

### § 2254(d)(1)

To assess a habeas claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review.  "Clearly established" federal law includes the holdings of the Supreme Court at the time the petitioner's state court conviction became final.  See Williams v. Taylor, 529 U.S. 362, 365 (2000).  Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue.  See id. at 381.  A state court decision is "contrary to" clearly established federal law if it fails to apply the correct controlling Supreme Court authority, or if it applied the correct authority to a case involving facts materially indistinguishable from those in a controlling Supreme Court case, but nonetheless reached a different result.  Id. at 413; see also Lockyer v. Andrade, 538 U.S. 63, 72 (2003); Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004).

A state court decision amounts to an "unreasonable application" under § 2254(d)(1) if the state court correctly identifies the governing "clearly established" legal principle from the Supreme Court's decisions, but then makes an objectively unreasonable application of that principle to the facts of the petitioner's case.  See Andrade, 538 U.S. at 75.  An "objectively unreasonable" application of federal law involves more than an incorrect or even clearly erroneous application of federal law.  See Williams, 529 U.S. at 410-11 ("[A] federal

1   habeas court may not issue the writ simply because that court concludes in its independent

2   judgment that the relevant state-court decision applied clearly established federal law

3   erroneously or incorrectly.  Rather, that application must also be unreasonable.")  The

4   AEDPA mandates deferential review of a state court's application of clearly established

5   Supreme Court precedent.  See Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (citing Lindh

6   v. Murphy, 521 U.S. 320, 333 n.7 (1997)).

7       In considering a challenge under either the "contrary to" or "unreasonable

8   application"  prong of subsection (d)(1), state court factual determinations are presumed

9   correct pursuant to § 2254(e)(1) and can be rebutted only by clear and convincing evidence.

10  See Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004), cert. denied 543 U.S. 1038

11  (2004).

12      **§ 2254(d)(2)**

13      To obtain habeas relief under subsection (d)(2), the state court factual determination

14  at issue must be "objectively unreasonable" in light of the evidence presented in the state

15  court proceeding.  Miller-El, 537 U.S. at 340; Davis v. Woodford, 384 F.3d 628, 637-38 (9th

16  Cir. 2004).  As explained by the Ninth Circuit, the "unreasonable determination" clause:

> applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, see, e.g., Wiggins v. Smith, 539 U.S. 510, 123 S. Ct. 2527, 2538-39, 156 L.Ed.2d 471 (2003); Ward v. Sternes, 334 F.3d 696, 704-08 (7th Cir. 2003), that the process employed by the state court is defective, see, e.g., Nunes v. Mueller, 350 F.3d 1045, 1055-56 (9th Cir. 2003); Valdez v. Cockrell, 274 F.3d 941, 961-68 (5th Cir. 2001)(Dennis, J., dissenting), or that no finding was made by the state court at all, see, e.g., Weaver v. Thompson, 197 F.3d 359, 363 (9th Cir. 1999); cf. Wiggins, 123 S. Ct. at 2539-41.

Taylor, 366 F.3d at 999; cf. Norton v. Spencer, 351 F.3d 1, 7 (1st Cir. 2003) (describing

grounds to find state court factual determinations unreasonable under (d)(2)).

24      When a petitioner challenges a state court's factual findings under subsection (d)(2),

25  a federal court must be satisfied that an appellate court could not reasonably affirm the

26  finding.  Taylor, 366 F.3d at 1000.  "Once the state court's fact-finding process survives this

27  intrinsic review . . . the state court's findings are dressed in a presumption of correctness,

28

which then helps steel them against any challenge based on extrinsic evidence, *i.e.*, evidence presented for the first time in federal court." Id.  The presumption of correctness may be overcome only by clear and convincing evidence, pursuant to § 2254(e)(1).  Id.; see Nunes v. Mueller, 350 F.3d 1045, 1055-56 (9th Cir. 2003), cert. denied 543 U.S. 1038 (2004).

## MOTIONS DISCUSSION ON CLAIMS 2 AND 13

The Court now assesses whether evidentiary development and relief on the merits should be granted with respect to Claims 2 and 13.

### Claim 2

Petitioner alleges that statements made by Petitioner and admitted at trial violated his Miranda rights.[3]  Petitioner moved to suppress the statements and, after a hearing, the court found the statements admissible at trial under the public safety exception to Miranda.

### State Court Findings

At the suppression hearing, Officer Hartson testified that when he and other officers arrived at the scene, they knocked on the front door and announced they were police officers. (RT 7/6/90 at 12-13.)[4]  Officers at the rear of the apartment radioed to the officers at the front door that they could see someone inside who was wearing a red shirt and possibly suspenders. (Id. at 13.)  Upon entering the apartment with a pass key, the officers saw a body laying on the living room floor and large amounts of blood. (Id. at 16, 18.)  Just after Officer Hartson entered the apartment he testified that Petitioner came into the living room, and Hartson escorted him outside and put him in an arm bar. (Id. at 17, 19.)  Petitioner did not have a shirt or suspenders on when he exited the apartment. (Id. at 21.)  When the officers at the front of the apartment notified the officers in the rear that the person they had in

---

[3]  Throughout the briefing, Petitioner intermingles allegations regarding whether Petitioner's statements were voluntary.  That portion of the original claim was determined to be procedurally defaulted and was dismissed. (Dkt. 83 at 14-15, 27.)  Thus, only the Miranda portion of the claim is before the Court.

[4]  "RT" refers to reporter's transcript from Petitioner's state court proceeding.  The original reporter's transcripts were provided to this Court by the Arizona Supreme Court on July 30, 2001. (Dkt. 53.)

1    custody was shirtless, an officer in the rear said there might be someone else in the apartment

2    wearing a red shirt.  (Id. at 30.)  The officers did not know how many people were in the

3    apartment.  (Id. at 17.)  Sergeant Howk stepped outside and asked Officer Hartson who else

4    was in the apartment.  (Id. at 20.)  Officer Hartson asked Petitioner what was going on and

5    Petitioner replied "we had a big fight."  (Id.)  Officer Hartson asked who else was inside and

6    Petitioner indicated that his girlfriend and her daughter were inside.  (Id.)  Officer Hartson

7    asked if anybody else was hurt, and Petitioner said, "yeah, they're hurt pretty bad, we're all

8    hurt pretty bad."    (Id.)   The officers waited for Petitioner to answer Officer Hartson's

9    questions before conducting a protective sweep of the apartment.  (Id.)  Petitioner did not put

10    on any evidence at the suppression hearing.  (Id. at 39-40.)

11        The  trial  court  made  a  finding  that  Petitioner  was  in  custody  and  subject  to

12    questioning at the time he made the statements at the scene.  (RT 7/9/90 at 10.)  The court

13    determined that the questioning was "primarily for the purpose of attempting to find out more

14    about whether anybody was in that apartment, whether the officers who were in the process

15    of planning to go into the apartment were going to be safe or not, and to prepare for any

16    dangers that may exist." (Id. at 11.)  The court concluded the questioning was done pursuant

17    to safety concerns for the public and the officers and to rescue anyone that might still be in

18    the apartment.  (Id. at 16.)

19        Applying New York v. Quarles, 467 U.S. 649, 655 (1984), the Arizona Supreme

20    Court held that the public safety exception was satisfied.  Ramirez, 178 Ariz. at 123, 871

21    P.2d at 244.  It set forth the following facts upon which it based its decision:

22        At the time that Officer Hartson questioned defendant, the police were
        operating under a great deal of uncertainty in a very dangerous situation. The
23        police had been denied access to the apartment; yet, they knew that someone
        was in the apartment, wearing what they thought was a red shirt and
24        suspenders. When they finally gained access to the apartment, the police were
        greeted with a blood-splattered room, a bloody knife blade lying on the floor,
25        and the body of Mrs. G lying on the living room floor.  As the officers
        surveyed the carnage, the bloodstained, shirtless defendant approached them
26        from the hallway.  While one of the officers took defendant into custody,
        another notified the officers stationed at the back of the apartment that they
27        had detained a male subject. After being told that the subject was not wearing
        suspenders, one of the officers responded: "[t]here is a guy in that apartment
28        with suspenders, you need to find him."  It was in response to this situation

that Officer Hartson, without first informing defendant of his *Miranda* rights, asked defendant the following three questions:

Q. What is going on?

A. We had a big fight.

Q. Who else was inside?

A. My girlfriend and her daughter.

Q. Is anybody else hurt?

A. Yeah, they're hurt pretty bad. We're all hurt pretty bad.

Only after receiving this information did Sgts. Howk and Stahl proceed further into the apartment.

Id. at 123-24, 871 P.2d at 244-45.

The court noted that the officers were facing uncertainty, did not know what had happened in the apartment, how many people were involved, and whether others needed assistance.  Id. at 124, 871 P.2d at 245.  Further, the officers reasonably believed that someone in a red shirt and suspenders was in the apartment.  Id.  The court determined that Officer Hartson's questions were reasonably designed to elicit information necessary for the police to protect themselves and anyone else in the apartment.  Id.  The court found that the fact that the officer asked more than one question did not change the nature of the inquiry into one seeking evidence of a crime.  Id.  Therefore, the court concluded that the public safety exception applied and the statements were properly admitted under the exception to Miranda.  Id.

**Clearly Established Supreme Court Law**

A person under arrest, prior to being questioned, must be warned that, "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed."  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  Such warnings are not required, and a suspect's answers to questions may be admitted, when the "public safety" exception is met.  Quarles, 467 U.S. at 655.  This exception applies when a police officer asks questions "reasonably prompted by a concern for the public safety," or the safety of the officers present.  Id. at 656,

659.  A court assesses whether, under the exigent circumstances, the questions were justified because they were necessary to secure the safety of the officers or the public and were not designed to elicit testimonial evidence.  Id. at 658-59.

**Factual Development**

Mental Retardation Evidence

Petitioner seeks to expand the record with evidence of mental retardation, exhibits 1 to 8.  Petitioner also seeks an evidentiary hearing to present testimony of Dr. Ricardo Weinstein regarding Petitioner's mental retardation and susceptibility to the coercive atmosphere of custodial questioning.  Petitioner asserts that there is a material factual dispute regarding whether he is mentally retarded.

Pursuant to Quarles, to evaluate Claim 2 the Court examines the circumstances with which the officers were presented and whether the questions asked were "reasonably" motivated by concerns for the safety of the public and/or the officers.  467 U.S. at 656-59. While Petitioner's mental state would be relevant to the procedurally barred issue of voluntariness, see Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973) (considering personal characteristics, including low intelligence, as relevant to voluntariness); Hill v. Anderson, 300 F.3d 679, 682 (6th Cir. 2002), that issue, including Petitioner's alleged mental retardation, is not relevant to the applicability of the public safety exception to Miranda, see Quarles, 467 U.S. at 656-69.  Expansion of the record as to mental retardation is not warranted because such materials do not relate to this claim.  See Rule 7(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  Therefore, expansion as to exhibits 1 to 8 will be denied.  Similarly, an evidentiary hearing is not required or warranted on the issue of Petitioner's mental retardation because it is not material to this claim, and proof of mental retardation would not entitle Petitioner to relief on this claim.  See Townsend, 372 U.S. at 312-13.  Because that is the only basis on which Petitioner seeks an evidentiary hearing, his request for a hearing on Claim 2 will be denied in its entirety.

Officer Hartson's Report

Petitioner seeks to expand the record in support of Claim 2 with a report prepared by

- 15 -

1  Officer Hartson, submitted as exhibit 9.  To assess that request, the Court must determine if

2  Petitioner was diligent in his attempt to develop the factual basis of this claim in state court.

3  See Cooper-Smith, 397 F.3d at 1241.  Petitioner argues that he satisfies the diligence

4  requirement because he requested and obtained a hearing on this claim.  While requesting

5  a hearing is the minimum showing required, the governing test is whether a petitioner "made

6  a reasonable attempt, in light of the information available at the time, to investigate and

7  pursue claims in state court."  Williams, 529 U.S. at 435.

8       Petitioner seeks expansion to include Officer Hartson's report because he contends

9  it contradicts some of the factual findings of the state court regarding the circumstances with

10  which the officers were faced at the time Petitioner was questioned.  Although Petitioner

11  requested and obtained a suppression hearing on this claim, he did not put on any evidence

12  at that hearing.  The state presented two officers, Richard Hartson and Detective Billy Butler.

13  (RT 7/6/90 at 8-39.)  Petitioner's counsel cross-examined both witnesses and rested without

14  putting on other evidence.  (Id. at 39.)  Significantly, Petitioner's counsel posed the following

15  leading question to Officer Hartson during the suppression hearing, "[y]ou wrote a report,

16  didn't you, officer?" (id. at 31); this question indicates counsel had seen the report.  Ten days

17  later, during trial, counsel again referred to the contents of Officer Hartson's report.  (See RT

18  7/16/90 at 14.)  By not entering the report into evidence or questioning Officer Hartson about

19  the allegedly relevant contents during the suppression hearing, Petitioner failed to diligently

20  develop this claim.  Petitioner fails to satisfy § 2254(e)(2) and has not attempted to meet the

21  statutory exceptions to that provision, as set forth in § 2254(e)(2)(A) & (B); therefore, the

22  Court is barred from expanding the record with exhibit 9 as to the merits of Claim 2.  See

23  Cooper-Smith, 397 F.3d at 1241.

24       Discovery

25       Petitioner requests the following discovery:  (1) personnel files of Officers Hartson,

26  Stahl, Howk and Sapon; and (2) Phoenix Police Department policies, protocol, training

27  materials and other documents relevant to the department's application of Miranda.

28  Petitioner argues that the discovery is relevant to determining the officer's true intent behind

1    questioning Petitioner at the scene without providing <u>Miranda</u> warnings.  The Supreme Court

2    explicitly held in <u>Quarles</u> that the motivation of the officer(s) is not relevant to the

3    determination of whether the public safety exception to <u>Miranda</u> has been met.  467 U.S. at

4    656.  Because this information is not relevant to the merits of Petitioner's claim, there is no

5    good cause for the requested discovery and it will be denied.  <u>See</u> <u>Bracy</u>, 520 U.S. at 908-09.

6    **Merits**

7    For the sake of expediency, because Claim 2 is fully briefed and no evidentiary

8    development is warranted, the Court will address the merits of the claim.  Petitioner alleges

9    that the state court fact-finding was objectively unreasonable in light of the evidence

10   presented, and that the state courts unreasonably applied the clearly established Supreme

11   Court law set forth in <u>Quarles</u>.

12   <u>Challenge to State Court Fact-Finding</u>

13   Petitioner argues that the state court fact-finding was defective because he was denied

14   resources to develop evidence of his mental retardation.  As discussed above, such evidence

15   is not relevant to this claim and, thus, has no bearing on the state court's fact-finding.

16   Petitioner also argues that the fact-finding was defective because the state court failed to

17   reconcile inconsistencies in testimony by the police officers, thereby ignoring evidence

18   supportive of Petitioner's claim under <u>Miranda</u>.  The evidence upon which Petitioner relies

19   for this argument was not presented at the suppression hearing; he did not develop it until

20   trial.  Therefore, it cannot be considered because it was not before the trial court when it

21   decided whether the public safety exception had been met.  <u>See</u> 28 U.S.C. § 2254(d)(2)

22   (requiring an "unreasonable determination of the facts in light of the evidence presented in

23   the State court proceeding.").

24   Further, even if the Court considers the trial evidence upon which Petitioner relies,

25   that evidence does not demonstrate the state court's fact-finding was defective.  Petitioner

26   alleges that the state court's justification for the questioning–that the officers believed a

27   person in a red shirt and suspenders was still in the house–was not reasonable.  In support of

28   this allegation, Petitioner argues that evidence established that the officers would have seen

- 17 -

the blood-stained shirt and the suspenders laying in the apartment when they first entered. Petitioner does not point to testimony by the officers who initially entered the apartment to support that argument.  Rather, in its factual summary, the Arizona Supreme Court stated that, when Investigator Fuqua supervised a detailed examination of the apartment, bloody suspenders were found on a chair in the living room and a bloody shirt was found on an ironing board in the dining room.  Ramirez, 178 Ariz. at 120-21, 871 P.2d at 241-42. Nothing in the factual summary indicates those items were immediately visible or seen by any of the officers who initially entered the apartment.

Petitioner also argues that one of the officers testified at trial that he saw Petitioner inside the apartment through the back window a second time and that he was shirtless.  (RT 7/13/90 at 53.)  While there was testimony to that effect, there was no testimony that the officer relayed that information to anyone.  To the contrary, the testimony indicated that the information relayed to the front door was that someone was inside in a red shirt and suspenders.  (Id. at 50.)  No testimony contradicts that of the officers at the front door who stated that they were concerned someone wearing a red shirt and suspenders remained inside following Petitioner's removal from the apartment.  Even if the Court were to consider the trial testimony as relevant to the suppression issue, Petitioner has not demonstrated that the state court fact-finding was objectively unreasonable in light of the evidence.  Therefore, Petitioner cannot satisfy § 2254(d)(2).

Application of the Law

Petitioner alleges that the state court unreasonably applied Quarles to the facts.  The Court disagrees.  In light of the limited information the officers possessed at the time they took Petitioner into custody, it was reasonable to ask Petitioner some questions to protect the safety of the officers.  The officers had a reasonable belief that someone in a red shirt was still in the apartment and, in light of the horrific scene encountered upon opening the door to the apartment, they did not know if anyone else in the apartment might need assistance. Under those circumstances it was reasonable to ask Petitioner questions designed to protect the safety of the officers and anyone else in the apartment.  The questions asked by Officer

1  Hartson were reasonably designed to elicit that type of information.  The first question, what

2  happened, was a general question reasonably designed to provide the officers some

3  information about what they might find inside.  The other specific questions were focused

4  on who was inside and whether they might need help.  In light of the circumstances the

5  officers faced at the time Petitioner was questioned, it was not an unreasonable application

6  of Quarles for the Arizona Supreme Court to determine that the public safety exception to

7  Miranda had been met.  Therefore, Petitioner cannot satisfy § 2254(d)(1), and Claim 2 will

8  be denied on the merits.

9        **Claim 13**

10       Petitioner alleges that the trial court erred in refusing to answer a jury question, which

11  asked whether the decision for Petitioner not to testify was that of the prosecutor and defense

12  attorney or just the defense attorney.  Petitioner seeks to discover, expand the record with,

13  and present evidence from the trial jurors regarding their understanding of the jury

14  instructions.

15       **State Court Proceedings**

16       The trial court read the jury the following instruction, a copy of which was given to

17  the jury during deliberations:

18       The state must prove all of its case against the Defendant with its own
     evidence.  The Defendant is not required to testify.  The decision whether to
19       testify is left to the Defendant acting with the advice of an attorney.  You must
     not conclude that the Defendant is likely to be guilty because the Defendant
20       does not testify.  You must not let this choice affect your deliberations in any
     way.

21  (RT 7/25/90 at 48, 58.)  On the second day of deliberations, the jury sent a note to the judge

22  asking, "Was it a decision of both Stalzer [the prosecutor] and Siegel [the defense attorney]

23  not to call Ramirez on the stand or just Siegel's."  (RT 7/26/90 at 3.)  The judge stated that

24  he intended to answer, "Please rely on the jury instructions in answering this question."  (Id.)

25  Neither counsel objected.  (Id.)

26       The Arizona Supreme Court held that the original instruction was accurate and it

27  answered the jury's question clearly and concisely, therefore, the trial court's decision to

28

1  refer the jury back to the original instructions satisfied its obligation. Ramirez, 178 Ariz. at

2  126-27, 871 P.2d at 247-48.

3      **Analysis**

4      When requested, a trial court is obligated by the Fifth Amendment to instruct the jury

5  that it cannot draw an adverse inference from a defendant's choice not to testify. Carter v.

6  Kentucky, 450 U.S. 288, 305 (1981).  When a particular jury instruction is challenged, the

7  question is whether the erroneous instruction "so infected the entire trial that the resulting

8  conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973).

9      The trial court's Fifth Amendment obligation was satisfied by providing the original

10  instruction regarding Petitioner's right not to testify and Petitioner does not allege that the

11  instruction was inaccurate or insufficient as originally given. That instruction fully answered

12  the jury's question by explicitly stating that the decision of whether to testify is left to

13  Petitioner with the advice of his attorney.  Additionally, to the extent the jury was

14  considering the implications of Petitioner's failure to testify, the instruction made clear that

15  they could not do so. The original instruction and the response to the question were clear and

16  accurate.  Therefore, there is no erroneous instruction implicating due process as discussed

17  in Cupp.

18      Petitioner also relies on the case of Bollenbach v. United States, 326 U.S. 607 (1946).

19  Bollenbach is not applicable to the instant claim because it is a federal criminal appeal and

20  does not clearly address any constitutional principles. 326 U.S. at 608-15.  In that case, the

21  judge responded to a jury question with a misleading erroneous instruction central to the

22  crime charged, which was determined to warrant reversal. See id. at 613-15.  Because the

23  trial court's response to the jury question in Petitioner's case referred the jury to an accurate

24  statement of the law that answered the jury's question, Bollenbach does not govern this

25  situation. See Davis v. Greer, 675 F.2d 141, 145-46 & n.5 (7th Cir. 1982) (distinguishing

26  Bollenbach and finding that referring a jury back to clear and correct original instructions in

27  response to a question does not violate due process).

28      In light of the above, the Arizona Supreme Court did not unreasonably apply Supreme

1   Court law in denying this claim.  Because there was no legal error in the original instruction
2   or response to the jury question, factual development of the jurors' perceptions is
3   unwarranted and will be denied.  Claim 13 will be denied on the merits as a matter of law.

4   ## MERITS DISCUSSION ON CLAIM 17

5       Petitioner alleges that his constitutional rights were violated because the jury was
6   "death-qualified," even though the sentence was to be imposed by the judge not the jury,
7   which resulted in a jury that did not represent a cross-section of the community and was not
8   impartial.  Respondents concede that this claim is exhausted.  (Dkt. 103 at 39.)  However,
9   because no state court ruled on the merits of this claim the Court reviews it de novo.

10      Petitioner's constitutional right to a jury selected from a fair cross-section of the
11  community applies only to jury panels or venires, not to petit juries.  See Lockhart v.
12  McCree, 476 U.S. 162, 173 (1986).  Additionally, fair-cross-section claims require the
13  systematic exclusion of a distinctive group, and persons who would be prevented from
14  performing their duties as a juror because of their opposition to the death penalty do not
15  satisfy the "distinctive group" requirements.  See id. at 174-76.

16      Petitioner suggests that his jury was not impartial because a jury that has been death-
17  qualified is more likely to convict than a jury that was not put through that process.  To date,
18  the Supreme Court has not agreed with that argument.  To the contrary, the Supreme Court
19  has held: "We simply cannot conclude, either on the basis of the record before us or as a
20  matter of judicial notice, that the exclusion of jurors opposed to capital punishment results
21  in an unrepresentative jury on the issue of guilt or substantially increases the risk of
22  conviction."  Witherspoon, 391 U.S. at 518, 523 n.21 (stating explicitly that its reversal of
23  the death sentence did not affect the conviction).  In a subsequent reversal of a death
24  sentence, based on counsel not being allowed to ask jurors whether they would automatically
25  impose a sentence of death upon a finding of guilt, the Court specifically noted that "[o]ur
26  decision today has no bearing on the validity of petitioner's conviction."  Morgan v. Illinois,
27  504 U.S. 719, 728 (1992) (citing Witherspoon, 391 U.S. at 523 n.21).  There is no per se rule
28  that death-qualification of a guilt-phase jury is a constitutional violation.

1    The Court next turns to the application of death-qualification in Petitioner's particular

2    case.  Because the jury was not going to impose his sentence, Petitioner argues that if

3    potential jurors could "state that they [would] render a verdict in keeping with the law as

4    instructed by the court," then there was no need to inquire about their beliefs regarding

5    capital punishment.  However, when informed that a death sentence was a possible

6    punishment potential jurors in Petitioner's case stated that their ability to render a verdict

7    based on the law as provided by the court was seriously impaired.  While jurors cannot be

8    struck for cause "because they voiced general objections to the death penalty or expressed

9    conscientious or religious scruples against its infliction," Witherspoon, 391 U.S. at, 522 &

10   n.21 (noting that exclusion for cause is appropriate if views on the death penalty would

11   "prevent them from making an impartial decision as to the defendant's guilt"), a juror is

12   properly struck for cause if his opinion about the death penalty "would prevent or

13   substantially impair the performance of his duties as a juror in accordance with his

14   instructions and his oath," Adams v. Texas, 448 U.S. 38, 45 (1980); see Wainwright v. Witt,

15   469 U.S. 412, 424 (1985).  The Court has reviewed the relevant transcripts and finds that the

16   trial court applied the proper standard in striking the only two jurors who attested that their

17   views regarding capital punishment would prevent or substantially impair their ability to sit

18   as a juror in the guilt-phase of Petitioner's case.  (RT 7/11/90 at 13-14, 17-20, 57-60, 64-68.)

19   The Court finds that the striking for cause of those two jurors did not violate Petitioner's

20   constitutional rights.

21        Petitioner is not entitled to habeas relief on Claim 17, and it will be dismissed on the

22   merits.

23

24        Accordingly,

25        **IT IS ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**:

26   Claims 2, 13 and 17 on the merits as a matter of law, and Claim 14 as procedurally barred.

27        **IT IS FURTHER ORDERED** that Petitioner's Motion for Record Expansion and

28   Evidentiary Development (Dkt. 127) is **DENIED**.

1   **IT IS FURTHER ORDERED** that if, pursuant to LRCiv 7.2(g), Petitioner or

2   Respondents file a Motion for Reconsideration of this Order, such motion shall be filed

3   within fifteen (15) days of the filing of this Order.

4   **IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order

5   to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-3329.

6   DATED this 13th day of February, 2006.

7

8   James A. Teilborg
    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28