**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Martinez Ramirez, ) | No. CV 97-1331-PHX-JAT |
| ) | |
| Petitioner, ) | DEATH PENALTY CASE |
| ) | |
| v. ) | |
| ) | |
| ) | **ORDER RE: MOTION TO AMEND** |
| Dora B. Schriro, et al., ) | |
| ) | |
| Respondents. ) | |

Pending before the Court is Petitioner's Motion for Leave to File Second Amended Petition. (Dkt. 145). Respondents have filed a response and Petitioner has filed a reply. (Dkts. 147, 151.) Petitioner seeks leave to add five claims, Claims 32-36, which he recently presented in state court in a successive petition for post-conviction relief.

**PROCEDURAL BACKGROUND**

On June 26, 1997, Petitioner filed his initial petition in this Court, and the Court appointed counsel. (Dkts. 1, 2.) After briefing, the Court issued a ruling on the procedural status of the twelve claims raised in the Amended Petition, dismissing all except portions of Claims 1 and 2. (Dkt. 26.) Due to concerns regarding the quality of representation provided by Petitioner's CJA-appointed habeas counsel, the Court substituted the Federal Public Defender (FPD) as counsel and allowed Petitioner to file a motion to amend. (Dkts. 40, 55.) On February 16, 2001, the FPD was granted leave to review the record; on November 26, 2003, the FPD sought amendment of the petition on behalf of Petitioner. (Dkts. 40, 76.) The Court allowed the amendment in its entirety, and reconsidered its procedural rulings based

on arguments made by Petitioner's new counsel. (Dkt. 83.) The Court subsequently granted a stay of the sentencing claims, to allow Petitioner to seek relief from his death sentence in state court based on a claim of mental retardation pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002). (Dkt. 119.) The stay is ongoing. The Court limited the FPD's authority in state court strictly to raising a claim based on *Atkins*. (*Id.*) After the FPD filed a notice of post-conviction relief (PCR) in state court,[1] private counsel filed a separate successive PCR notice raising the five claims as to which amendment is now sought. (Dkt. 145 at 3 & Ex. A.) The notice filed by private counsel was summarily dismissed, and a petition for review was filed and denied. (*Id.*, Exs. B, C, D.)

## STANDARD FOR AMENDMENT

A petition for habeas corpus may be amended pursuant to the Federal Rules of Civil Procedure. 28 U.S.C. § 2242; *see also* Rule 11, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the Federal Rules of Civil Procedure may be applied to habeas petitions to the extent the rules are not inconsistent with the habeas rules). Thus, the Court looks to Rule 15 of the Federal Rules of Civil Procedure to address a party's motion to amend a pleading in a habeas corpus action. *See James v. Pliler*, 269 F.3d 1124, 1126 (9th Cir. 2001). Leave to amend 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), and courts must review motions to amend in light of the strong policy permitting amendment. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir. 1986). The factors which may justify denying a motion to amend are undue delay, bad faith or dilatory motive, futility of amendment, undue prejudice to the opposing party, and whether petitioner has previously amended. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Leave to amend may be denied based upon futility alone. *See Bonin*, 59 F.3d at 845. To assess futility, a court necessarily evaluates whether relief may be available on the merits

---

[1] The PCR court has denied Petitioner's *Atkins* claim, and Petitioner is currently pursuing a motion for rehearing. (Dkt. 156.)

- 2 -

of the proposed claim. *See Caswell v. Calderon*, 363 F.3d 832, 837-39 (9th Cir. 2004) (conducting a two-part futility analysis reviewing both exhaustion of state court remedies and the merits of the proposed claim); *Stafford v. Saffle*, 34 F.3d 1557, 1560 (10th Cir. 1994) (reviewing the evidence presented at trial and determining it would be futile to allow the addition of a sufficiency-of-the-evidence claim). If proposed claims are untimely, unexhausted, or otherwise fail as a matter of law, amendment should be denied as futile.

## **ANALYSIS**

### **Claims 32, 33, 35, and 36: Futility**

The Court finds that amendment is properly denied as futile, based on the statute of limitations and/or the merits, as to Claims 32, 33, 35, and 36.[2]

<u>Statute of Limitations</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254,[3] a one-year statute of limitations applies to petitions for writ of habeas corpus by state prisoners. *See* 28 U.S.C. § 2244(d)(1). Petitioner does not dispute that the proposed second amended petition was not lodged within the initial one-year limitations period; rather, he contends all of the newly proposed claims relate back to his prior timely pleadings. Federal Rule of Civil Procedure 15 provides, in relevant part, that an amended pleading "relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). Amended habeas

---

[2] Respondents also contend that all five claims were procedurally barred in state court and, therefore, amendment to add them would be futile. The PCR court dismissed these claims because they "were or could have been raised" in a prior proceeding. (Dkt. 145, Ex. 2). Because this language is ambiguous and does not distinguish claims previously raised, which are exhausted, from claims waived for failure to raise them previously, it does not function as an adequate bar to federal review. *See Valerio v. Crawford*, 306 F.3d 742, 774-75 (9th Cir. 2002) (en banc); *Koerner v. Grigas*, 328 F.3d 1039, 1049-50 (9th Cir. 2003); *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996).

[3] Because Petitioner's original habeas petition was filed after April 24, 1996, it is governed by the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997).

1  claims relate back to timely habeas claims when they are "tied to a common core of operative
2  facts"; they do not relate back if they arise out of "events separate in 'both time and type'
3  from the originally raised episodes." *Mayle v. Felix*, 545 U.S. 644, 657 (2005) (rejecting
4  broad construction which equated "conduct, transaction, or occurrence" with trial,
5  conviction, or sentence).

6  Claim 32

7  Based upon *Tennard v. Dretke*, 542 U.S. 274 (2004), Petitioner alleges that the trial
8  court violated his constitutional rights by requiring him to establish a causal connection
9  between the crime and the mitigation evidence he offered at sentencing. (Dkt. 145 at 110-
10 12.)  Petitioner contends this claim relates back to Claims 4 and 5 of his petition.

11 Claim 4 alleged that the Arizona Supreme Court failed to give effect to mitigating
12 evidence that did not impact on the commission of the crime.  Claim 4 addressed an error
13 alleged to have been committed by the Arizona Supreme Court on direct appeal, while Claim
14 32 alleges error by the trial court at sentencing.  Thus, Claim 32 does not relate back to Claim
15 4 because the claims arise out of events separate in time and type.  Claim 5 alleged that the
16 Arizona death penalty statute imposes an improper burden of proof for mitigating evidence.
17 Claim 32, alleging an unconstitutional application of the law to Petitioner's specific
18 mitigating evidence, is different in time and type from Claim 5's facial challenge to the
19 Arizona death penalty statute; therefore, proposed Claim 32 does not relate back to Claim
20 5.

21 Even if Claim 32 related back to the petition, thus satisfying the statute of limitations,
22 it has no merit.  Petitioner alleges that, because the trial court determined Petitioner had
23 proved several compelling mitigating circumstances, the only explanation for his death
24 sentence is that the judge applied an unconstitutional nexus-to-the-crime requirement.
25 Petitioner's argument has no factual support in the record.  The sentencing judge found that
26 one statutory and seven non-statutory mitigating factors had been proved by a preponderance
27 of the evidence but concluded that they were not sufficiently substantial, individually or
28

- 4 -

cumulatively, to call for leniency. (*See* RT 12/18/90 at 10-13; ROA 112.) He considered evidence of two additional mitigating factors but found that Petitioner had not met his burden of proof as to those factors. (*See* RT 12/18/90 at 12-13.) The judge gave no indication that he applied a causal-connection requirement to his mitigation determination.

Petitioner contends that Arizona law at the time required a defendant to demonstrate a nexus between a mitigating circumstance and the crime, and that this Court must presume that the sentencing judge applied that requirement. While Petitioner correctly states the general principle that a judge is presumed to follow the law, application of that presumption is necessary only when the basis of the judge's decision is not apparent. *See Bell v. Cone*, 543 U.S. 447, 455-457 (2005) (noting that state court opinion did not specify whether it applied a specific construction of the aggravating circumstance but presuming it applied the constitutional narrowing construction). In this case, the trial court explicitly stated that it considered all the mitigating circumstances presented by Petitioner, and weighed all of the circumstances that had been proved by a preponderance of the evidence. (*See* RT 12/18/90 at 12, 13.) That is all the constitution requires. *See Ortiz v. Stewart*, 149 F.3d 923, 943 (9th Cir. 1998). Presuming that the trial court applied a causal-connection requirement and thereby excluded consideration of this evidence as mitigation is directly contrary to the record. Further, Petitioner's argument would require this Court to presume that the trial court applied allegedly unconstitutional Arizona law but did not apply constitutional law set forth by the United States Supreme Court, *e.g., Lockett v. Ohio* 438 U.S. 586, 604 (1978); *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982).

Amendment as to Claim 32 is denied as futile because the claim violates the statute of limitations and fails on the merits.

Claim 33

Petitioner alleges that his due process rights were violated by the trial court's jury instruction on premeditation because the instruction relieved the state of its burden of proving the actual reflection necessary for first degree murder and allowed a conviction based merely

on the passage of time.[4]  The relevant jury instruction stated:

> Premeditation means that the defendant's intention or knowledge existed before the killing long enough to permit reflection. However, the reflection differs from the intent or knowledge that his conduct will cause death. It may be as instantaneous as successive thoughts in the mind, and it may be proven by circumstantial evidence. It is this period of reflection, regardless of its length, which distinguishes first degree murder from intentional or knowing second degree murder.

(RT 7/25/90 at 25.)

Petitioner's claim relies on the holding in *State v. Thompson*, 204 Ariz. 471, 480, 65 P.3d 420, 429 (2003). Contrary to Petitioner's argument, in *Thompson* the Arizona Supreme Court did not find the instruction at issue unconstitutional; rather, it found erroneous a premeditation instruction that stated "actual reflection is not required." 204 Ariz. at 480, 65 P.3d at 429. The court did "discourage" the use of the phrase "instantaneous as successive thoughts of the mind," *id.* at 479, 65 P.3d at 428; however, the use of an "undesirable, erroneous, or even 'universally condemned'" instruction does not equate to a constitutional violation, *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).

When a particular jury instruction is challenged, the question is whether the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Id.* at 147. The Court must consider the jury instruction at issue in the context of the whole charge given the jury. *See id.* at 146-47; *Francis v. Franklin*, 471 U.S. 307, 315 (1985). The Court must assess "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). Due process requires that the state prove every element of a crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970); *Sandstrom v. Montana*, 442 U.S. 510, 520-21 (1979). Petitioner's allegation is that the premeditation instruction relieved the prosecution of the burden of proving actual reflection beyond a reasonable doubt.

---

[4] The Court finds that this claim relates back to Claim 10 of the prior petition, which challenged the premeditation instruction under state law.

- 6 -

1    The Court finds that the challenged jury instruction, on its face, does not permit a
2 finding of premeditation based solely on the passage of time. The instruction specifically
3 states first degree murder requires a "period of reflection." Nothing in the prosecutor's
4 argument or the court's instructions inaccurately suggested that the State needed only to
5 prove the time element of reflection in lieu of actual premeditation.

6    Petitioner relies on the case of *Jones v. United States* to support his argument;
7 however, the instruction at issue is distinguishable from the one in *Jones*, which the court
8 found deprived the defendant of a fair trial:

> Deliberate and premeditated malice is presumed by law to exist where the intention to unlawfully take life is deliberately formed in the mind of the actor, and thereafter such intention is carried out. There need be no appreciable length of time between the formation of the intent to kill and the killing, itself; it may be as instantaneous as successive thought.

12 175 F.2d 544, 551 (9th Cir. 1949). The court noted that instructions containing some of the
13 same principles had been previously approved; this instruction failed, however, because it
14 contained the concept that there did not need to be any appreciable length of time between
15 the intent and the killing *and* the concept that such a period could be "as instantaneous as
16 successive thought." *Id.* The instruction in Petitioner's case did not include both those ideas.
17 Further, the instruction in *Jones* applied a legal presumption for proof of premeditation and
18 contained no mention of reflection, while the instruction used in Petitioner's case explicitly
19 distinguished intent as existing before, and as something distinct from, reflection, and thus
20 emphasized that it is the "period of reflection" which distinguishes first degree murder. This
21 is similar to another case cited by Petitioner, in which the court upheld an instruction stating
22 that premeditation takes no "appreciable length of time," despite finding the language to be
23 erroneous, because a later portion of the jury charge required that after forming the intent to
24 kill the person must turn that intention over in his mind. *Bullock v. United States*, 12 F.2d
25 213, 214 & n.4 (D.C. Cir. 1941).

26    Additionally, the Court looks to the other instructions and examines the jury charge
27 as a whole. The subsequent instructions regarding second degree murder and manslaughter

- 7 -

1 emphasized the significance of premeditation to a verdict of first degree murder.
2 Specifically, the second degree murder instruction reiterated that the difference between first
3 and second degree murder is premeditation, and stated that if the jury determined that
4 Petitioner was guilty either of first or second degree murder, but had a reasonable doubt as
5 to which, they must find second degree murder. (ROA, Dkt. 115 at 15(b).)

6 Finally, the facts of this case are sufficient to support a finding of premeditation.
7 Evidence from the crime scene indicated that a prolonged struggle took place during which
8 a juror could find that reflection occurred. *See Frady v. United States*, 348 F.2d 84, 96 (D.C.
9 Cir. 1965) (finding a prolonged assault of at least ten minutes and numerous non-fatal
10 wounds sufficient to establish premeditation). As summarized by the Arizona Supreme
11 Court, the apartment where the murders were committed was in disarray, with significant
12 amounts of blood in the foyer, kitchen, living room, bathroom, and one bedroom; both
13 victims were stabbed numerous times and had facial injuries and defensive wounds; and
14 witnesses heard banging and screams extending over more than a five-minute period.
15 *Ramirez*, 178 Ariz. 116, 119-21, 871 P.2d 237, 240-42 (1994).

16 The Court finds there is not a reasonable likelihood that the jury applied the
17 premeditation instruction in a manner that violated Petitioner's due process rights by
18 lessening the prosecution's burden of proof with respect to premeditation. Amendment as
19 to Claim 33 is therefore denied as futile because it fails on the merits.

20 Claim 35

21 Petitioner alleges that his due process rights were violated when the PCR court denied
22 his claim of innocence of the death penalty brought pursuant to Arizona Rule of Criminal
23 Procedure 32.1(h), which he alleges created a liberty interest. Petitioner asserts that Claim
24 35 relates back to Claims 8 and 23.

25 Claim 8 alleged ineffective assistance of counsel (IAC) based on counsel's failure to
26 investigate a defense of intoxication; failure to investigate Petitioner's mental condition as
27 a mitigating factor, including his competency, the possibility of mental illness, and funding
28

- 8 -

1 for a psychologist; and failure to note that the court reporter did not transcribe certain side
2 bar conferences. Claim 35, which alleges error by the state court during a PCR proceeding,
3 does not relate back to Claim 8, which alleged error by counsel at trial and sentencing,
4 because the claims are distinct in type and time. Claim 23 alleged that Arizona's death
5 penalty statute is unconstitutional because it mandates a death sentence if one aggravating
6 factor is established and there is not mitigation sufficient to warrant leniency. Again, Claim
7 35, alleging an error by the PCR court in ruling on a specific post-sentencing claim, does not
8 arise from a common core of operative facts as Claim 23's facial challenge to the Arizona
9 death penalty statute; therefore, proposed Claim 35 does not relate back to Claim 23.

10 Even if Claim 35 related back to the original petition, thus satisfying the statute of
11 limitations, it is not cognizable in this proceeding. Petitioner's reliance on a due process
12 right arising out of state criminal procedural rules is misplaced because the rule on which he
13 relies is not a procedural rule applicable at trial or sentencing but a collateral ground for relief
14 during a PCR proceeding. *Cf. Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980) (due process
15 liberty interest in statutory sentencing procedure); *Walker v. Deeds*, 50 F.3d 670, 673 (9th
16 Cir. 1995) (recognizing liberty interests in state procedural rights at sentencing) (citing *Hicks*,
17 447 U.S. at 346). The Ninth Circuit has clarified that procedural errors arising during PCR
18 proceedings are not cognizable in habeas corpus proceedings under 28 U.S.C. § 2254
19 because they do not challenge a petitioner's detention. *Franzen v. Brinkman*, 877 F.2d 26,
20 26 (9th Cir. 1989) (per curiam); *see also Ortiz*, 149 F.3d at 939; *Gerlaugh v. Stewart*, 129
21 F.3d 1027, 1045 (9th Cir. 1997). Further, Petitioner's claim makes clear that he is not
22 actually alleging a procedural error; rather, he contends that the state court wrongly decided
23 the substance of his state-law claim. Erroneous application of substantive state law is not
24 reviewable in a federal habeas corpus proceeding. *See Estelle v. McGuire*, 502 U.S. 62, 67-
25 68 (1991). Finally, free-standing claims of innocence of the death penalty are not cognizable
26 in a federal habeas proceeding. *Cf. Herrera v. Collins*, 506 U.S. 390, 417 (1993) (assuming
27 without deciding that if a free-standing claim of innocence is cognizable for habeas relief,
28

1  it would be a claim of "actual innocence" of the crime with an extremely high standard of
2  proof); *Carriger v. Stewart*, 132 F.3d 463, 476-77 (9th Cir. 1997) (holding that, if
3  recognized, a free-standing innocence claim would require proof that the defendant is
4  innocent of the crime). Innocence of the death penalty, if it amounts to a "fundamental
5  miscarriage of justice," has been recognized only as a gateway through which an otherwise
6  barred claim may be heard. *See Sawyer v. Whitley*, 505 U.S. 333, 336 (1992).

7  Amendment as to Claim 35 is denied as futile because the claim violates the statute
8  of limitations and fails on the merits.

9  Claim 36

10  Petitioner alleges that his low IQ, brain damage, and other impairments render him
11  ineligible for the death penalty, on the same grounds that mental retardation has been found
12  to preclude imposition of the death penalty. Petitioner alleges that Claim 36 relates back to
13  Claims 8, 12, and 30.

14  Claim 36, which attempts to create a new prohibition on the death penalty, does not
15  relate back to Claim 8's allegations of ineffective assistance of trial counsel because the
16  claims do not share a common core of operative facts. Claim 12 alleged that the trial court
17  erred in denying funds for experts to assist in preparation for trial and sentencing. Again,
18  Claim 36 does not relate back to a claim of trial court error regarding funding, which is
19  distinct in type and time from a claim alleging Petitioner is not eligible for the death penalty
20  based on his mental capacity.

21  Claim 30 alleged that Petitioner will not be competent to be executed because he will
22  be insane. This principle arises from the Supreme Court's conclusion that it offends the
23  Eighth Amendment to execute someone who cannot comprehend that his execution is based
24  on a conviction for murder. *Ford v. Wainwright*, 477 U.S. 399, 409-10 (1986). Such a
25  determination cannot be made until an execution warrant is issued by the State making the
26  petitioner's execution imminent. *See Martinez-Villareal v. Stewart*, 118 F.3d 628, 630
27  (1997) (citing *Herrera v. Collins*, 506 U.S. 390, 406 (1993)). In contrast, Petitioner argues

28

1   in Claim 36 that his mental impairments cause deficits in his reasoning, judgment, and
2   control which make him less culpable and ineligible for a death sentence, based on *Atkins v.*
3   *Virginia*, 536 U.S. 304, 306, 321 (2002) (finding the death penalty to be an excessive
4   punishment in violation of the Eighth Amendment as applied to the mentally retarded). If
5   successful, both claims would have the effect of precluding Petitioner's execution and both
6   relate to his mental state; however, they do not arise from a common core of operative facts.
7   Success on Claim 30 requires establishing that "due to a mental disease or defect [Petitioner]
8   is presently unaware that he is to be punished for the crime of murder or that he is unaware
9   that the impending punishment for that crime is death." A.R.S. § 13-4021B. In contrast, in
10  Claim 36 Petitioner seeks relief premised on ongoing impairments causing deficits in
11  reasoning, judgment, and impulse control. Claim 36 does not relate back to Claim 30
12  because they are distinct in both type and time.

13  Even if Claim 36 related back to the original petition, thus satisfying the statute of
14  limitations, it is without merit. The prohibition on execution of the mentally retarded is
15  based on a national consensus developed in state legislatures that death is an excessive
16  punishment for those who are mentally retarded. *See Atkins*, 536 U.S. at 311-16. The
17  Supreme Court was clear that the national consensus creating the prohibition applied only
18  to those individuals determined to be mentally retarded under state law, the definition of
19  which was not uniform but within a fairly well-accepted set of parameters. *Id.* at 317 & 308
20  n.3. The Court noted the difficulty in determining whether particular offenders are mentally
21  retarded and come within the prohibition, thus making clear that the Eighth Amendment does
22  not restrict the imposition of a death sentence for those whose level of impairment does not
23  meet the state's definition of mental retardation. *Id.* at 317. Petitioner's own pleading, which
24  is not based on mental retardation, highlights the lack of consensus for the prohibition he
25  seeks because he cites only to dissenting and concurring opinions in non-controlling
26  jurisdictions. (*See* Dkt. 145, Ex. E at 122-125.) There is no constitutional prohibition on the
27  execution of persons with mental impairments that do not amount to incompetency or mental
28

- 11 -

1 retardation; therefore, Petitioner cannot obtain relief on this claim.

2 Amendment as to Claim 36 is denied as futile because it violates the statute of
3 limitations and fails on the merits.

### Equitable & Statutory Tolling

To the extent the Court found that Claims 32, 35, and 36 do not relate back and violate the statute of limitations, Petitioner contends that his brain damage and reduced intellectual functioning entitle him to equitable tolling of the statute of limitations. The Supreme Court has assumed without deciding that the AEDPA's statute of limitation could be equitably tolled. *Lawrence v. Florida*, 127 S. Ct. 1079, 1081 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 n.8 (2005). Citing the standard for equitable tolling set forth in *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), the Court observed that a litigant generally "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. In turn, the Ninth Circuit holds that the limitation period may be equitably tolled "if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (quoting *Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003)).

The Court finds that Petitioner is not entitled to equitable tolling of the statute of limitations. First, Petitioner timely initiated these proceedings within the statute of limitations and has been represented by counsel for the entirety of his federal habeas proceeding, including a change of counsel to ensure adequate representation. This contrasts with the case on which Petitioner relies, *Laws v. LaMarque*, 351 F.3d 919, 922-23 (9th Cir. 2003), in which a pro se petitioner's mental incompetence prevented him from filing an initial petition by the one-year deadline. Further, no counsel has ever indicated to the Court that Petitioner's competency was an impediment to this proceeding, and Petitioner was allowed to amend his petition twice. Claims 32 and 36 could have been raised in the

1   amended or supplemental amended petition; while Claim 35 is alleged to have arisen in the
2   most-recent successive PCR proceeding, it is patently meritless. Petitioner has not made a
3   showing that his mental deficiencies interfered with counsel's ability to timely raise any
4   claims, thus it does not constitute an extraordinary circumstance.

5   Second, Petitioner asserts that he is entitled to statutory tolling, pursuant to 28 U.S.C.
6   § 2244(d)(1)(B), because he was prevented from timely filing due to the State's failure to
7   adequately fund his mitigation investigation and to appoint adequate counsel. This statutory
8   provision requires that the State impediment violate the Constitution or federal law;
9   Petitioner has pointed to no such violation. More significantly, Petitioner's state court
10  mitigation investigation and/or counsel have no bearing on Petitioner's ability to have raised
11  these claims through counsel in one of his prior federal petitions.

**Claim 34**

13  Petitioner alleges that counsel was ineffective for failing to conduct a complete
14  mitigation investigation and presentation, which would have included evidence of
15  Petitioner's mental retardation, brain damage, impaired intellectual functioning, childhood
16  poverty, *in utero* exposure to pesticides and alcohol, the fact that he was the product of the
17  rape of his fifteen-year-old mother by his uncle, and childhood neglect and abuse.

Futility

19  Petitioner alleges that Claim 34 relates back to Claims 8, 12, and 21. Claim 12 alleged
20  that the trial court erred in denying funds for experts to assist in defense preparation for trial
21  and sentencing. Funding error by the trial court is distinct in type and time from error by
22  counsel in failing to investigate and seek such funds. Claim 21 alleged that the balancing test
23  for aggravation and mitigation was unconstitutionally applied by the state courts. Error by
24  the state courts in assessing the information presented in mitigation and aggravation is not
25  closely related in time and type to counsel's failure to adequately investigate and present
26  such mitigation for consideration. Claim 34 does not relate back to Claims 12 or 21.

27  As previously discussed, Claim 8 alleged, in part, that Petitioner's counsel was

- 13 -

ineffective for failing to investigate his mental condition as a mitigating factor, including his competency, the possibility of mental illness, and funding of a psychologist. Claim 34 relates back to these portions of Claim 8 alleging IAC at sentencing. Additionally, Claim 34 as plead is not meritless on its face. (*See* Dkt. 145, Ex. E at 118-20.) Therefore, amendment to add Claim 34 is not futile.

### Other Amendment Factors

Respondents contend that amendment should be denied because the original petition was filed ten years ago, amendment has been previously granted, and amendment would engender additional delay that violates the principles of finality and federalism that underlie habeas corpus and the AEDPA. Petitioner contends that he acted in good faith, that Respondents will suffer no prejudice, and that he sought amendment shortly after exhausting the claims in state court.

In assessing the factor of undue delay, the Court considers whether "the issue could have been raised in the initial petition." *Stafford v. Saffle*, 34 F.3d 1557, 1560 (10th Cir. 1994); *see also Chodos v. West Publ'g Co., Inc.*, 292 F.3d 992, 1003 (9th Cir. 2002) (denying amendment because the "new" facts were available to the plaintiff prior to earlier amendment); *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990) (noting that petitioner knew or should have known the necessary facts and theories for the amendment at the time of the original pleading). Similarly, the Ninth Circuit has noted "that late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986).

Counsel had access to Petitioner and the state court sentencing record for years before seeking amendment; therefore, the basic information needed to formulate this IAC claim was within the FPD's possession when they sought amendment on Petitioner's behalf. Additionally, Petitioner has been granted amendment twice, including once after the appointment of new counsel who was allowed more than two years to review the record and

conduct investigation. *See Bonin*, 59 F.3d at 845 (with respect to motions to amend, a court should consider whether the petitioner has previously amended); *Chodos*, 292 F.3d at 1003 ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions is 'particularly broad.'") (quoting *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 879 (9th Cir. 1999)).

However, upon the substitution of counsel, the Court instructed that amendment would only be granted upon a "substantial showing," which was defined as:

> (1) demonstrating that cause and prejudice exists to overcome procedural default of one (or more) of Petitioner's claims, or that a fundamental miscarriage of justice will occur if the Court does not reach the merits of one or more of Petitioner's procedurally defaulted claims; (2) demonstrating that a claim that was fairly presented to the state courts, which has arguable merit, was omitted from the Amended Petition; or (3) any other claim which is arguably procedurally defaulted but for which counsel can demonstrate cause and prejudice or a fundamental miscarriage of justice.

(Dkt. 40 at 9.) Therefore, arguably the Court put counsel on notice that amendment should not be sought as to claims such as Claim 34 – one not previously presented in state court and for which there were no substantive arguments of cause and prejudice or fundamental miscarriage of justice. Counsel appears to have diligently investigated mitigation, pursued exhaustion of this claim in state court, and then promptly sought amendment in this Court, *see Caswell*, 363 F.3d at 839-40 (finding no undue delay because petitioner sought amendment promptly after exhausting claim). Respondents do not contend that Petitioner acted in bad faith or that they will be prejudiced by amendment.[5] *See Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir. 1994) (holding denial of amendment to be an abuse of discretion despite petitioner's delay in exhausting claim, because he sought amendment shortly after exhaustion, allowing amendment would not cause significant delay to the proceeding, and there was no prejudice or bad faith).

---

[5] Although there is no allegation of bad faith and the Court does not make such a finding, it is evident that Petitioner intentionally withheld this claim from the prior amendment, in order to pursue exhaustion in state court, and did not mention this claim when seeking a stay to exhaust his *Atkins* claim in state court.

- 15 -

1 Because the Court granted a stay of all sentencing claims shortly after the last 2 amendment, and the stay remains in effect, adding Claim 34 now would not cause any delay 3 in the final resolution of this case or in the State's execution of its judgment. If Petitioner 4 does not obtain relief on his *Atkins* claim in state court, this Court will lift the stay on the 5 twenty-one remaining sentencing claims and order the filing of motions for evidentiary 6 development. Only when that process is complete will the case be ready for final resolution. 7 Additionally, in light of the strict rules governing successive petitions, if amendment is 8 denied as to this claim it will likely never be reviewed on the merits.[6] *See Riley v. Taylor*, 9 62 F.3d 86, 90 (3d Cir. 1995); *Fetterly v. Paskett*, 997 F.2d 1295, 1301-02 (9th Cir. 1993) 10 (amendment preferable to the filing of a successive petition); 28 U.S.C. § 2244(b).

11 In light of the strong policy favoring amendment, the fact that final resolution of this 12 case will not be delayed by this amendment, and the absence of bad faith or prejudice to 13 Respondents, the Court will grant amendment as to Claim 34.

14 Accordingly, **IT IS ORDERED** that Petitioner's Motion for Leave to File Second 15 Amended Petition (Dkt. 145) is **GRANTED IN PART** as to Claim 34, and **DENIED IN** 16 **PART** as to Claims 32, 33, 35, and 36.

17 **IT IS FURTHER ORDERED** that Petitioner shall file a Second Amended Petition 18 adding only Claim 34, within **ten (10) days** of the file date of this Order.

19 DATED this 19th day of March, 2007.

James A. Teilborg
United States District Judge

---

[6] Respondents rely on caselaw discussing the equities governing successive habeas petitions, *see Kuhlmann v. Wilson*, 477 U.S. 436 (1986), which the Court finds inapposite because successive petitions should be allowed only in a "rare instance," *id.* at 451-52, are limited by statute, and require appellate court permission for filing, *see* 28 U.S.C. § 2244(b), while amendment shall be "freely given," is discretionary, and non-statutory. *See Bonin*, 59 F.3d at 846 (liberal amendment policy of Rule 15(a) is of "no less significance" in habeas cases in which subsequent petitions are subject to stringent requirements).