**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| David Martinez Ramirez, | ) | No. CV 97-1331-PHX-JAT |
| Petitioner, | ) ) | DEATH PENALTY CASE |
| v. | ) ) | |
| Dora B. Schriro, et al., | ) ) | **ORDER** |
| Respondents. | ) ) ) | |

          Pending before the Court is Petitioner's Motion for Leave to File Third Amended and/or Supplemental Petition for Writ of Habeas Corpus. Petitioner seeks leave to add four new claims to this action, which were recently adjudicated in state court. Because the claims are outside the statute of limitations, the Court denies amendment.

          Petitioner has twenty-one claims pending before the Court for which the pleadings are complete; in addition, Claim 34 awaits briefing. Prior to the filing of motions for evidentiary development, the Court finds it expedient to review the fully-briefed claims and, to the extent no evidentiary development is required, resolve them. Based on that review, the Court determines that Petitioner is not entitled to relief on any of the twenty-one briefed claims, Claims 3, 4, 6, 9, 12, 15, 16, and 18-31.

### FACTUAL AND PROCEDURAL BACKGROUND

          Petitioner was convicted of two counts of premeditated first degree murder for the deaths of Mary Ann Gortarez and her fifteen-year-old daughter Candie. This factual summary is based on the Court's review of the record and the Arizona Supreme Court's opinion upholding Petitioner's convictions, *State v. Ramirez*, 178 Ariz. 116, 119-21, 871

P.2d 237, 240-42 (1994).

On the evening and night of May 24, 1989, Petitioner was seen with Candie and Mary Ann around the Gortarez's apartment.  As late as 3:30 a.m. the following morning, he was seen talking with Mary Ann outside the apartment.  Approximately ninety minutes later, around 5:00 a.m., the Gortarez's upstairs neighbors, Priscilla Arce, Kathy Arce, and Larry Bernabe, awoke to screaming, banging, and running sounds from the Gortarez's apartment. Bernabe went downstairs and knocked at the door; no one answered but the sounds stopped. Five minutes after returning to his apartment, he heard a slam against the wall and a loud scream.  Bernabe unsuccessfully tried to kick in the Gortarez's apartment door; when he looked in the rear window he saw a shadow moving in the hallway.

Pursuant to a 911 call by Bernabe, the police arrived a few minutes later, approximately 5:36 a.m.  No one responded to the police knock at the front door.  Two officers went to the back of the apartment, where they observed blood on a window frame and latch.  They saw Petitioner enter the bedroom and instructed him to go to the front door. The officers heard rustling at the blinds of the other bedroom; Petitioner then re-entered the first bedroom and was instructed to unlock the door.  The officers in the rear radioed to the officers up front that Petitioner was wearing suspenders; one officer noted that Petitioner was Hispanic while the other stated that he was wearing a red shirt.

Officers at the front of the apartment obtained a key and entered through the front door.  They saw Mary Ann's body on the living room floor.  Petitioner approached the officers, without a shirt on, covered in blood, and with cuts to the inside of his fingers. Petitioner was removed from the apartment and restrained outside.  An officer asked Petitioner what was going on, to which he replied, "We had a big fight."  When asked who was inside and if anyone else was hurt, Petitioner responded, "My girlfriend and her daughter," and "they're hurt pretty bad.  We're all hurt pretty bad."  While being escorted to a police car, Petitioner volunteered, "You can ask anyone, me and my girlfriend are very close, we're going to get married."  Petitioner appeared to be intoxicated.

1     The officers performed a sweep of the apartment, looking for a guy with a red shirt
2  and/or suspenders.  No other men were found in the apartment.  Candie's body was found
3  naked in one of the bedrooms.  There was blood throughout the entire apartment.  A knife
4  blade was found in the front hall, a cake knife was found near Mary Ann's arm, part of the
5  cake knife handle and a handle matching the blade found in the hall was in her hair, a pair
6  of bloody scissors was found in the bathroom, and in a rear hallway lay a blood-soaked box
7  cutter.  Blood-stained suspenders and a man's white blood-stained shirt were found in the
8  apartment.

9     Mary Ann had been stabbed eighteen times in the neck, and in the back and knee, and
10  she had defensive wounds on her hand and forearms.  Her daughter had been stabbed fifteen
11  times in the neck.  Vaginal swabs taken from Candie tested positive for semen; Petitioner
12  could not be excluded as the donor of the semen.

13     At sentencing, the judge found three aggravating circumstances:  Petitioner had two
14  prior violent felony convictions (A.R.S. § 13-703(F)(2)); Petitioner committed the murders
15  in an especially cruel, heinous, or depraved manner (A.R.S. § 13-703 (F)(6)); and Petitioner
16  committed multiple homicides during the same episode (A.R.S. § 13-703(F)(8)).  The
17  sentencing judge found one statutory mitigating circumstance and seven non-statutory
18  circumstances, but determined that they were not sufficiently substantial to warrant leniency.
19  The court sentenced Petitioner to death on both murder counts.

20     The Arizona Supreme Court affirmed Petitioner's convictions and sentences on direct
21  appeal.  *Ramirez*, 178 Ariz. 116, 871 P.2d 237.  Petitioner sought reconsideration of the
22  supreme court's opinion, which was denied.  Petitioner filed a Petition for Post-conviction
23  Relief (PCR) with the trial court, which was denied in its entirety in a ruling filed on
24  February 20, 1996.  On May 20, 1997, the Arizona Supreme Court summarily denied review
25  of that decision.

26     On June 26, 1997, Petitioner filed his initial petition in this Court, and the Court
27
28

- 3 -

appointed counsel.  (Dkts. 1, 2.)[1]  After briefing, the Court issued a ruling on the procedural status of the twelve claims raised in the amended petition, dismissing all except portions of Claims 1 and 2.  (Dkt. 26.)  Due to concerns regarding the quality of representation provided by Petitioner's CJA-appointed habeas counsel, the Court substituted the Federal Public Defender (FPD) as counsel and allowed Petitioner to file a motion to amend.  Specifically, on February 16, 2001, the FPD was granted leave to review the record; on March 25, 2002, the FPD was officially appointed as counsel; and on November 26, 2003, the FPD sought to file a supplemental petition alleging additional claims and a supplemental traverse on behalf of Petitioner.  (Dkts. 40, 55, 76.)  The Court allowed the supplements in entirety, and reconsidered its procedural rulings based on arguments made by Petitioner's new counsel. (Dkt. 83.)

The parties briefed the procedural status and/or the merits of the remaining claims. (Dkts. 90, 97, 103, 110.)  The Court subsequently granted a stay of the sentencing claims, to allow Petitioner to seek relief from his death sentence in state court based on a claim of mental retardation pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002).  (Dkt. 119.)  During the stay, the Court issued a ruling denying evidentiary development and dismissing Petitioner's conviction claims.  (Dkt. 140.)

After the FPD filed a notice of PCR in state court regarding the *Atkins* claim, private counsel filed a separate successive PCR notice raising five additional claims.  When those five claims had been exhausted in state court, the FPD sought to amend the petition to include them in this Court.  (Dkt. 145.)  The Court granted amendment only as to Claim 34 (Dkt. 158); Petitioner filed a second amended petition incorporating that claim (Dkt. 162). Petitioner now seeks amendment to add claims raised in his *Atkins* PCR proceeding.

## MOTION TO AMEND

Petitioner seeks to amend his second amended petition to add four claims litigated in his recently-completed PCR proceeding, all of which are connected to his *Atkins* claim and

---

[1]  "Dkt." refers to the documents in this Court's case file.

the procedures used by the state court to adjudicate that claim. Proposed Claim 37 alleges that Petitioner's rights to due process, equal protection, a jury trial, and to be free of cruel and unusual punishment were violated by the state court's use of a clear and convincing standard of proof for retardation and the denial of a jury determination on retardation. Proposed Claim 38 alleges that Petitioner cannot be executed pursuant to *Atkins* because he is mentally retarded and that the PCR court's procedures violated due process, the right to a fair trial, and the right to be free from cruel and unusual punishment. Proposed Claim 39 alleges that the PCR court violated Petitioner's right to confrontation, due process, and a reliable *Atkins* determination. Proposed Claim 40 alleges that the PCR court erred in denying disclosure of Petitioner's sister's social security records for use in Petitioner's *Atkins* proceeding.

### Standard for Amendment

A petition for habeas corpus may be amended pursuant to the Federal Rules of Civil Procedure. 28 U.S.C. § 2242; *see also* Rule 11, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the Federal Rules of Civil Procedure may be applied to habeas petitions to the extent they are not inconsistent with the habeas rules). Thus, the Court looks to Rule 15 of the Federal Rules of Civil Procedure to address a party's motion to amend a pleading in a habeas corpus action. *See James v. Pliler*, 269 F.3d 1124, 1126 (9th Cir. 2001). Leave to amend shall be freely given "when justice so requires," Fed. R. Civ. P. 15(a), and courts must review motions to amend in light of the strong policy permitting amendment. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir. 1986). The factors which may justify denying a motion to amend are undue delay, bad faith or dilatory motive, futility of amendment, undue prejudice to the opposing party, and whether petitioner has previously amended. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Leave to amend may be denied based upon futility alone. *See Bonin*, 59 F.3d at 845. To assess futility, a court necessarily evaluates whether relief may be available on the merits of the proposed claim. *See Caswell v. Calderon*, 363 F.3d 832, 837-39 (9th Cir. 2004)

(conducting a two-part futility analysis reviewing both exhaustion of state court remedies and the merits of the proposed claim). If proposed claims are untimely, unexhausted, or otherwise fail as a matter of law, amendment should be denied as futile.

**Analysis**

Respondents asserted lack of timeliness regarding these claims in prior filings relating to the propriety of staying the case while Petitioner pursued the claims in state court. In light of that notice, the Court instructed Petitioner to address the statute of limitations and any equitable tolling arguments in the instant motion to amend. If the claims are untimely then amendment would be futile; therefore, the Court first examines the statute of limitations, equitable tolling, and whether Petitioner's proposed amendments relate back to previously pleaded claims.

Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, a one-year statute of limitations applies to petitions for writ of habeas corpus by state prisoners. *See* 28 U.S.C. § 2244(d)(1). Petitioner does not contend that the proposed amendment comes within the initial one-year limitations period that runs from the date judgment became final or within one year of the *Atkins* 2002 decision that first recognized an Eighth Amendment prohibition on sentencing the mentally retarded to execution. *See* 28 U.S.C. § 2244(d)(1)(A) & (C).

Rather, Petitioner argues that he satisfies the one-year limitations period measured from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The Supreme Court holds that "diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest" in developing a possible avenue for relief. *Johnson v. United States*, 544 U.S. 295, 308, 310 (2005) (finding defendant not diligent because he delayed three years in seeking to have a state court conviction vacated after it was used to enhance his federal sentence). By way of example,

the Court noted that a defendant would have to seek DNA testing with reasonable promptness, once available, if a new one-year limitations period is to be triggered by the "discovery" of the test result.  *Id.* at 310.

*Johnson* is squarely on point – at the time *Atkins* was decided in June 2002, Petitioner and his counsel were on notice that mental retardation, if present, would provide a basis for overturning Petitioner's death sentence.  Petitioner did not act promptly in conducting the investigation necessary to assess whether he might be entitled to relief based on that decision. Counsel first scheduled a contact visit on June 11, 2002, between Petitioner and psychologist Ricardo Weinstein, who eventually opined that Petitioner was mentally retarded (Dkt. 106, Ex. 1).  Counsel has not provided any reason why Dr. Weinstein's evaluations were not completed until 2004.  The fact that counsel was not aware of Petitioner's mental retardation until 2004 when the doctor completed his evaluation does not satisfy their obligation to have acted diligently in obtaining that information.[2]

Additionally, in addressing relation back, Petitioner argues that "the core operative facts upon which [the *Atkins*] claim was based already existed" at the time of the original March 10, 1998 petition.  (Dkt. 176 at 5.)  Specifically, Petitioner contends that he has argued from the beginning of this habeas proceeding that he had mental impairments that

---

[2]  To the extent Petitioner relies on prior statements by this Court to bolster his argument that he acted diligently in pursuing his *Atkins* claim, the Court does not find them persuasive because the context and governing law are distinct.  In assessing whether the Court should exercise its discretion to grant a stay, the Court noted that Petitioner had reason not to have included an *Atkins* claim in a prior petition because he only received the doctor's report on which the claim was based in December 2004.  (Dkt. 119 at 3-4.)  More significantly, the Court noted that, even if Petitioner had delayed pursuing the claim, a stay was warranted because delay would not clearly bar him from obtaining relief in state court. (*Id.* at 4.)  Similarly, in a subsequent order, the Court denied reconsideration of the stay, again noting that the *Atkins* claim could not have been included in the original petition and declining to find that Petitioner lacked good cause for not filing sooner.  (Dkt. 126 at 1-2.) Finally, in a later order, the Court explicitly declined to decide whether, if Petitioner sought amendment, Petitioner's *Atkins* claim would satisfy the statute of limitations in light of the decision in *Mayle v. Felix*, 545 U.S. 644, 657 (2005) (narrowing the relation-back doctrine in habeas proceedings).  (Dkt. 138 at 1.)

- 7 -

1   required additional investigation.  That mental health investigation led to the expert opinion
2   that Petitioner was mentally retarded; in light of Petitioner's representation, the investigation
3   could have begun years earlier.

4          Petitioner was not diligent in discovering the factual predicate for the *Atkins* claim;
5   therefore, it falls outside the statute of limitations.  Similarly, because action by Petitioner
6   (initiating the PCR proceeding to assert an *Atkins* claim) was a critical step in generating the
7   factual basis for his related procedural claims, he must have acted reasonably promptly in
8   initiating that proceeding.  *See Johnson*, 544 U.S. at 310.  As the Court concluded above, he
9   did not do so; therefore, Claims 37, 39, and 40, as well as the remainder of Claim 38 are
10  outside the statute of limitations.

11         Equitable Tolling

12         Petitioner contends he is entitled to equitable tolling of the statute of limitations.  The
13  Supreme Court has assumed without deciding that the AEDPA's statute of limitations can
14  be equitably tolled.  *Lawrence v. Florida*, 549 U.S. 327, ___, 127 S. Ct. 1079, 1085 (2007);
15  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 n.8 (2005).  Citing the standard for equitable tolling
16  set forth in *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), the Court observed
17  that a litigant generally "bears the burden of establishing two elements:  (1) that he has been
18  pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his
19  way." *Pace*, 544 U.S. at 418.  In turn, the Ninth Circuit holds that the limitations period may
20  be equitably tolled "if extraordinary circumstances beyond a prisoner's control make it
21  impossible to file a petition on time."  *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999)
22  (quoting *Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998) (en
23  banc), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003)).

24         The Court finds that Petitioner is not entitled to equitable tolling of the statute of
25  limitations.  First, as discussed above, Petitioner did not act diligently in investigating
26  whether he had a claim based on mental retardation.  Second, Petitioner has not established
27  that an extraordinary circumstance prevented him from timely filing these claims.  Petitioner

28

initiated this action within the limitations period and has been represented by counsel for the entirety of his federal habeas proceeding, including a change of counsel to ensure adequate representation.   *Cf. Laws v. LaMarque*, 351 F.3d 919, 922-23 (9th Cir. 2003) (*pro se* petitioner's mental incompetence prevented him from filing an initial petition by the one-year deadline).

The Court further finds that Petitioner's specific arguments in support of equitable tolling are lacking.  First, Petitioner asserts that his mental retardation is an extraordinary circumstance, but no counsel has ever indicated, and Petitioner has not made a showing, that his alleged mental deficiencies interfered with counsel's ability to timely raise any claims. Petitioner also alleges he is innocent of the death penalty; however, there is no recognized exception in the Ninth Circuit to the statute of limitations for "innocence of the death penalty."  Finally, Petitioner asserts that *Atkins* is an extraordinary legal development that was decided after Petitioner's habeas proceeding; however, new caselaw is not extraordinary – the statute of limitations provides for exactly such an occurrence, allowing one year from the newly recognized right to raise the claim.  28 U.S.C. § 2244(d)(1)(C).  To the extent equitable tolling exists, the Court finds that Petitioner is not entitled to it under the present circumstances.

Relation Back

Petitioner's primary argument for timeliness is that the proposed claims relate back to timely claims raised in his prior petitions.  Federal Rule of Civil Procedure 15 provides, in relevant part, that an amended pleading "relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2).  Amended habeas claims relate back to timely habeas claims when they are "tied to a common core of operative facts"; they do not relate back if they arise out of "events separate in 'both time and type' from the originally raised episodes." *Mayle v. Felix*, 545 U.S. 644, 657 (2005) (rejecting broad construction which equated "conduct, transaction,

1    or occurrence" with trial, conviction, or sentence).

2        Petitioner alleges that his proposed claims relate back to Claims 8 and 12 of his

3    original amended petition.[3] Claim 8 alleges ineffective assistance of counsel (IAC) based,

4    in part, on counsel's failure to investigate Petitioner's mental condition as a mitigating factor,

5    including his competency, the possibility of mental illness, and funding for a psychologist.

6    Claim 12 alleges that the trial court erred in denying funds for experts to assist in preparation

7    for trial and sentencing.

8        Petitioner's *Atkins* claim (Claim 38) is not premised on attorney error or court error,

9    but rather a constitutional prohibition on executing mentally retarded individuals.  While

10   proof that Petitioner is mentally retarded could have been offered as mitigation at sentencing

11   and, therefore, is reasonably part of his IAC-at-sentencing claim, the *Atkins* claim is not

12   based on attorney error.  Similarly, while Claim 12 alleges the trial court erred in not funding

13   adequate experts who might have discovered the mental retardation, the *Atkins* claim does

14   not allege court error or inadequate investigation.  Thus, the claim is distinct in both type and

15   time from Claims 8 and 12.  *Felix* instructs that the "occurrence" relative to a specific claim

16   requires assessing the essential predicate for the claim and the facts dispositive to resolution

17   of the claim.  545 U.S. at 661 (finding the essential predicate for a self-incrimination claim

18   to be the defendant's conduct during the police interrogation not the fact of the statements

19   admission at trial).  The essential predicate for Petitioner's *Atkins* claim is whether he is

20   below the requisite intelligence level and has "significant impairment in adaptive behavior,"

21   and whether these conditions were manifest before he turned eighteen.  A.R.S. § 13-

22

23           [3] In his reply brief, Petitioner argues that his claims also relate back to Claim 34 –

24   alleging ineffective assistance of counsel at sentencing.  The Court granted amendment to
     add Claim 34, which was untimely, because it found that it related back to Claim 8; the Court

25   will not assess whether the new *Atkins* claim relates back to an untimely claim, saved only
     by its relation back to another claim.  Rather, the Court assesses whether the new claim

26   relates back to the original timely claim (Claim 8).  Further, for the same reasons the Court

27   determines that the new claims do not relate back to Claim 8, they would fail to relate back

28   to Claim 34.

1    703.02(K)(3); *Atkins*, 536 U.S. at 317.  These facts are clearly distinct from error by his

2    counsel in preparation for and presentation at sentencing, and from pre-trial error by the

3    court.  Therefore, Petitioner's *Atkins* claim does not relate back to a timely-filed claim.

4          The *Atkins*-related procedural claims arise out of the rules governing mental

5    retardation proceedings in Arizona as applied by the PCR court, including the burden of

6    proof, the non-jury format, the expert qualifications and evaluations, the court's alleged

7    statutory and scientific errors, the court's alleged erroneous consideration of testimony, and

8    the court's denial of discovery.  As pleaded by Petitioner, the facts underlying these claims

9    are the events during the most recent PCR proceeding as well as the governing statutes and

10   rules.  These facts are distinct in type and time from counsel error prior to and at sentencing,

11   and from pre-trial court error.  Therefore, these claims do not relate back to a timely-filed

12   claim.

13              Supplemental Claims

14         Petitioner requests, in the alternative, that Claims 37-40 be added as supplemental

15   claims, which he argues do not need to stem from the same occurrence as a claim in a prior

16   petition.  While Petitioner is correct that supplemental claims do not have to arise from the

17   same conduct as the allegations in a prior pleading; however, if they do not, then they must

18   satisfy the statute of limitations.  *See United States ex rel. Wulff v. CMA, Inc.*, 890 F.2d 1070,

19   1073 (9th Cir. 1989) (noting that calling a subsequent pleading amended versus supplemental

20   is "immaterial" because relation-back principle was applicable to both types of pleadings);

21   *William Inglis & Sons Baking Co. v. ITT Continental Baking Co, Inc.*, 668 F.2d 1014, 1057

22   (9th Cir. 1981) (when "claims are unrelated to those alleged in the initial complaint, or rely

23   on conduct or events different from those involved in the original action, the statute of

24   limitations should be applied."); *Security Ins. Co. of New Haven, Conn. v. United States ex*

25   *rel. Haydis*, 338 F.2d 444, 449 (9th Cir. 1964) (holding that the relation back doctrine can

26   be applied to supplemental claims that fall outside the statute of limitations).  As addressed

27   above, Petitioner's newly-alleged claims fall outside the statute of limitations and do not

28

1   relate back to timely-filed claims; therefore, they cannot be added as supplemental claims.

2   **Conclusion**

3   Petitioner's four proposed claims, Claims 37-40, are outside the limitations period,

4   he is not entitled to equitable tolling, and the claims do not relate back to timely claims in a

5   prior petition.  Therefore, his claims are untimely and amendment or supplementation to add

6   them is futile.  Petitioner's motion to amend is denied.

7   **MERITS ANALYSIS**

8   The Court now turns to the pending briefed claims, Claims 3, 4, 6, 9, 12, 15, 16, and

9   18-31 and concludes that none warrant evidentiary development because they are

10  procedurally defaulted, are record-based, do not involve a factual dispute or are purely legal,

11  and/or the facts as alleged do not entitle Petitioner to relief.

12  **Principles of Exhaustion and Procedural Default**

13  Under the AEDPA, a writ of habeas corpus cannot be granted unless it appears that

14  the petitioner has exhausted all available state court remedies.  28 U.S.C. § 2254(b)(1); *see*

15  *also Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509 (1982).

16  To exhaust state remedies, a petitioner must "fairly present" the operative facts and the

17  federal legal theory of his claims to the state's highest court in a procedurally appropriate

18  manner.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S.

19  4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).  If a habeas claim includes new

20  factual allegations not presented to the state court, it may be considered unexhausted if the

21  new facts "fundamentally alter" the legal claim presented and considered in state court.

22  *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

23  In Arizona, there are two primary procedurally appropriate avenues for petitioners to

24  exhaust federal constitutional claims:  direct appeal and post-conviction relief proceedings.

25  Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides

26  that a petitioner is precluded from relief on any claim that could have been raised on appeal

27  or in a prior PCR petition.  Ariz. R. Crim. P. 32.2(a)(3).  The preclusive effect of Rule

28

32.2(a) may be avoided only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition or not presented in a timely manner. *See* Ariz. R. Crim. P. 32.1(d)-(h), 32.2(b), 32.4(a).

A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1; *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). As a general matter, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. at 753. Objective factors which constitute cause include interference by officials which makes compliance with the state's procedural rule impracticable, a showing that the factual or legal basis for a claim was not reasonably available, and

constitutionally ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). There are two types of claims recognized under the fundamental miscarriage of justice exception to procedural default: (1) that a petitioner is "innocent of the death sentence," – in other words, that the death sentence was erroneously imposed; and (2) that a petitioner is innocent of the capital crime.

**Legal Standard for Relief Under the AEDPA**

The AEDPA established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reducing delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, ___, 127 S. Ct. 1933, 1939-40 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "'highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists

of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381; *see Musladin*, 549 U.S. at 77; *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004). Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark*, 331 F.3d at 1069.

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's

application of Supreme Court precedent "unreasonable" under § 2254(d)(1), the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan*, 127 S. Ct. at 1939; *Visciotti*, 537 U.S. at 25.

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based upon an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 127 S. Ct. at 1939-40; *Miller-El II*, 545 U.S. at 240.

**Analysis**

Claim 3

Petitioner alleges that the trial court failed to conduct a proper cumulative weighing of the mitigating evidence;[4] if the court had done so, Petitioner argues, he would not have been sentenced to death because the mitigating factors found by the court were sufficient for leniency.[5]

---

[4] Petitioner also alleged error by the Arizona Supreme Court as part of this claim; however, the Court previously determined that portion of the claim was procedurally defaulted. (Dkt. 83 at 18-19.)

[5] In his reply brief on the merits of this claim, Petitioner attempts to turn this claim into one based on *Tennard v. Dretke*, 542 U.S. 274, 289 (2004) (holding that sentencing courts may not be prohibited from considering mitigating evidence because it does not have a nexus to the crime). The claim was not framed this way in the amended petition (Dkt. 18 at 21-22) or the merits brief (Dkt. 90 at 38-40); therefore, it is improperly raised in the reply brief to which Respondents have had no opportunity to respond. *See* Rule 2, Rules

1    First, Petitioner's factual contention that the sentencing judge did not properly

2    consider or cumulatively weigh his mitigation is refuted by the record.  After finding one

3    statutory mitigating circumstance, the sentencing judge stated that it considered "nonstatutory

4    mitigating circumstances, including 'any aspect of the Defendant's character, propensities

5    or record and any of the circumstances of the offense.'" (RT 12/18/90 at 11.)[6]  Subsequently,

6    the judge stated that he assessed the mitigation individually **and** collectively in determining

7    whether it was sufficiently substantial to call for leniency.  (*Id.* at 13.)

8    Second, there is no law to support Petitioner's request for relief based on how the trial

9    court weighed the aggravation and mitigation.  The Supreme Court holds that once a court

10   determines that a person is eligible for the death penalty, the sentencer must then consider

11   relevant mitigating evidence, allowing for "an *individualized* determination on the basis of

12   the character of the individual and the circumstances of the crime."  *Tuilaepa v. California*,

13   512 U.S. 967, 972 (1994).  If these two criteria are met – there is a rational criteria for

14   eligibility and no limitation on consideration of relevant circumstances that could mitigate

15   against a death sentence – "the States enjoy their traditional latitude to prescribe the method

16   by which those who commit murder shall be punished."  *Romano v. Oklahoma*, 512 U.S. 1,

---

Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring all grounds for relief to be included in the petition); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994) (noting that claims must be raised in the petition so the State can respond).  Additionally, neither the trial court (RT 12/18/90 at 10-13) nor the Arizona Supreme Court, *Ramirez*, 178 Ariz. at 131-32, 871 P.2d at 252-53, precluded consideration of any mitigating evidence because it lacked a causal connection to the crime; to the contrary, the courts both expressly stated that they considered all the mitigating factors presented that were proven by a preponderance of the evidence.

[6] "RT" refers to reporter's transcript from Petitioner's state court proceedings. "ROA" refers to the docket numbers from the four-volume record on appeal from post-conviction proceedings prepared for Petitioner's petition for review to the Arizona Supreme Court (Case No. CR-96-0464-PC). "SCT-DOC" refers to the Arizona Supreme Court's docket numbers from Petitioner's direct appeal (Case No. CR 90-359-AP). The state court original reporter's transcripts and certified copies of the trial and post-conviction records were provided to this Court by the Arizona Supreme Court on July 30, 2001. (Dkt. 53.)

7 (2004) (quoting *Blystone v. Pennsylvania*, 494 U.S. 299, 309 (1990)).  Once eligibility for the death penalty is determined, the sentencer "may be given 'unbridled discretion in determining whether the death penalty should be imposed.'"  *Tuilaepa*, 512 U.S. at 979 (quoting *Zant v. Stephens*, 462 U.S. 862, 875 (1983)).  In sum, giving a sentencer "discretion to evaluate and weigh the circumstances relevant to the particular defendant and the crime he committed" is not unconstitutional.  *Id.* (quoting *McCleskey v. Kemp*, 481 U.S. 279, 315 n.37 (1987)).

Claim 3 is without merit and is dismissed.

Claim 4

Petitioner alleges the Arizona Supreme Court erred by rejecting consideration of his excellent prison work record as mitigation.[7]  Specifically, Petitioner contends his prison work record was mitigating independent of whether he was a model inmate overall.

In his sentencing memorandum, Petitioner set forth an overview of his experiences in the prison system beginning in 1979.  (ROA 149 at 10-17.)  Based on that history, Petitioner argued that his overall record while incarcerated, although less than perfect, demonstrated that he could make a positive contribution to his fellow prisoners and the prison authorities if given a life sentence.  (*Id.* at 17-18.)  Petitioner attached numerous records from the department of corrections as exhibits to his sentencing memorandum.  (*Id.* at 10-17; RT 10/19/90 at 116.)  During the aggravation/mitigation hearing, Petitioner presented two correctional officers who testified that he did an excellent job working in the prison kitchen, including the officers' dining room.  (RT 11/30/90 at 4-27.)  During subsequent argument, counsel argued that Petitioner "does very well in a structured environment," and that he had "potential to live out a life sentence and be a useful inmate and be of assistance to the Department of Corrections."  (RT 12/7/90 at 8.)  The trial court found

---

[7]  Petitioner also alleged that the Arizona Supreme Court erred in rejecting remorse as a mitigating factor; however, the Court previously determined that this portion of the claim was procedurally defaulted.  (Dkt. 83 at 18-19.)

1  that Petitioner had not proven by a preponderance that he had an excellent prison record

2  because, although his work record was very good, "his overall performance as an inmate has

3  been poor, as is evidenced by his escape conviction in CR-128529 and his going AWOL and

4  being written up on several occasions, as outlined in the presentence report in this case and

5  the report filed in CR-128529."  (RT 12/18/90 at 13; ROA 169 at 10.)

6       Petitioner did not raise a claim on direct appeal regarding his prison record as a

7  mitigating factor.  (*See* Appellant's Opening Br.)  In conducting its independent review of

8  Petitioner's sentence based on the record, the Arizona Supreme Court agreed with the trial

9  court and found that Petitioner had not proven by a preponderance of the evidence that he

10 had an excellent prison record. *Ramirez*, 178 Ariz. at 132, 871 P.2d at 253.  When Petitioner

11 raised the allegations of Claim 4 in a motion for reconsideration, the Arizona Supreme Court

12 summarily denied it.  (SCT-DOC 44.)

13      A sentencing court is required to consider any mitigation offered by a defendant,

14 including non-statutory mitigation.  *See Lockett v. Ohio*, 438 U.S. 586, 604 (1978); *see also*

15 *Ceja v. Stewart*, 97 F.3d 1246, 1251 (9th Cir. 1996).  In *Lockett* and subsequently in *Eddings*

16 *v. Oklahoma*, the Supreme Court held that under the Eighth and Fourteenth Amendments the

17 sentencer must be allowed to consider, and may not refuse to consider, any constitutionally

18 relevant mitigating evidence.  *Eddings v. Oklahoma*, 455 U.S. 104, 113-14 (1982).

19 Constitutionally relevant mitigating evidence is "any aspect of a defendant's character or

20 record and any of the circumstances of the offense that the defendant proffers as a basis for

21 a sentence less than death." *Lockett*, 438 U.S. at 604.  However, while the sentencer must

22 not be foreclosed from considering relevant mitigation, "it is free to assess how much weight

23 to assign such evidence." *Ortiz v. Stewart*, 149 F.3d 923, 943 (9th Cir. 1998); *see Eddings*,

24 455 U.S. at 114-15 ("The sentencer . . . may determine the weight to be given the relevant

25 mitigating evidence.").

26      There is no federal constitutional or factual foundation for Petitioner's assertion that

27 the Arizona Supreme Court erred in failing to weigh in mitigation a subpart of one of the

28

1   mitigating factors he alleged (Petitioner's prison work record as distinct from his overall

2   prison record).  The record on appeal, as reviewed by the Arizona Supreme Court, included

3   Petitioner's assertion that his prison record *as a whole* was a mitigating factor demonstrating

4   that he could be a good inmate if given a life sentence.  It also included Petitioner's

5   sentencing memorandum, in which he acknowledged that he had an escape conviction as

6   well as disciplinary infractions while incarcerated.  The Arizona Supreme Court considered

7   the entirety of the mitigating evidence proffered, which is all the law requires.  *See Lockett*,

8   438 U.S. at 604 (requiring consideration of "proffered" evidence); A.R.S. § 13-703 (G)

9   (including as mitigation, evidence proffered by defendant relating to his character,

10  propensities, and record).  Petitioner first argued his prison work record as a stand-alone

11  factor in a motion of reconsideration on appeal.  Because Petitioner did not allege his prison

12  work record as a mitigating circumstance before the sentencing judge or on direct appeal, the

13  court cannot have erred in failing to consider and weigh such a factor as part of the

14  sentencing determination.

15       Claim 4 is dismissed.

16       Claims 6 and 20

17       In Claim 6, Petitioner alleges that the (F)(6) aggravating factor – that the crime was

18  especially cruel, heinous, or depraved – is unconstitutionally vague and provides insufficient

19  guidance allowing for arbitrary imposition of the death penalty.  Similarly, Claim 20 alleges

20  that the (F)(6) factor is vague and overbroad, and was unconstitutionally applied in his case.

21  The Court previously found Claim 6 exhausted (Dkt. 83 at 22), and Respondents concede

22  that Claim 20 is exhausted (Dkt. 103 at 45).[8]  To the extent Petitioner is contesting how the

23  sentencing judge applied the (F)(6) factor in this case, that is the focus of Claim 19, which

24  is addressed below.

25

26

27       [8] It appears that Petitioner intends Claims 6 and 20 to be essentially the same claim.
    Claim 6 was included in Petitioner's original amended petition, while Claim 20 was drafted

28  by later-appointed counsel as a supplement to that petition.

1    The United States Supreme Court has upheld the (F)(6) aggravating factor against

2  allegations that it is vague and overbroad, rejecting a claim that Arizona has not construed

3  it in a "constitutionally narrow manner."  *See Lewis v. Jeffers*, 497 U.S. 764, 774-77 (1990);

4  *Walton v. Arizona*, 497 U.S. 639, 649-56 (1990), *overruled on other grounds by Ring v.*

5  *Arizona,* 536 U.S. 584 (2002).  Petitioner cites to the *Walton* dissent, which embraced

6  Petitioner's arguments regarding the (F)(6) factor; thus, it is clear Petitioner's assertions were

7  considered and rejected by the writers of the majority opinion.  Petitioner also contends that

8  *Walton* relied on the fact that death sentences were imposed by judges, who are presumed

9  to know the law, and that this rationale is not applicable today because sentences now are

10  imposed by juries.  This argument is irrelevant because Petitioner's sentence was decided by

11  a judge pursuant to the law analyzed in *Walton* and *Jeffers*.

12    Claims 6 and 20 are dismissed.

13    Claim 9

14    Petitioner alleges that it is cruel and unusual punishment to impose the death penalty

15  on someone who was not convicted of intentional murder.[9]  The Court previously found this

16  claim exhausted.  (Dkt. 83 at 22.)

17    Petitioner relies on the cases of *Enmund* and *Tison*; however, those cases are contrary

18  to Petitioner's proposition.  The Supreme Court holds that death is not a disproportionate

19  sentence for a defendant who actually killed, *Tison v. Arizona*, 481 U.S. 137, 157-58 (1987);

20  *Enmund v. Florida*, 458 U.S. 782, 797 (1982), regardless of the specific mens rea involved.

21  Petitioner does not contest that he was found guilty of premeditated murder, albeit based on

22  the mental state of "knowing" rather than "intending" his conduct would cause death.

23  Further, the trial judge made explicit findings as required by *Enmund*/*Tison* that Petitioner

24

25    [9]  This claim was included in Petitioner's amended petition, which was filed by
26  Petitioner's original federal counsel.  In the merits reply brief, filed by subsequently-
   appointed counsel, Petitioner untimely attempts to morph this claim into one premised on the
27  constitutionality of the premeditation jury instruction (Dkt. 110 at 68-70); that attempt comes
28  too late.  *See supra* note  5.

1   "deliberately and with premeditation" killed the two victims.  (RT 12/18/90 at 14.)

2        Claim 9 is dismissed.

3        Claim 12

4        Petitioner alleges that the trial court violated his right to due process when it denied

5   his request for experts that were necessary in the preparation of his defense at trial and

6   sentencing, in violation of *Ake v. Oklahoma*, 470 U.S. 68 (1985).

7        *Background*

8        On September 28, 1989, Petitioner filed a motion for appointment of experts,

9   requesting an independent psychiatric evaluation, a child psychologist, a mitigation

10   specialist, a fingerprint examiner, a jury consultant, a serologist, and a pathologist.  (ROA

11   39.)   In the motion, Petitioner cited *Ake* and requested, without explanation, that an

12   independent psychiatrist be appointed to assess his sanity at the time of the crime.  (*Id.* at 2.)

13   He summarily requested the appointment of the other experts.  (*Id.* at 3.)  The court appointed

14   an investigator to assist Petitioner, who at that point was representing himself with advisory

15   counsel.  (RT 10/6/89 at 13; ROA 43.)  The following week, the court denied the remainder

16   of the expert requests without prejudice, allowing for reconsideration after Petitioner had an

17   opportunity to consult with the investigator.  (RT 10/11/89 at 5-6; ROA 45.)  In an ex parte

18   proceeding, Petitioner's investigator asserted that a child psychologist was important to help

19   determine Petitioner's social upbringing and to collaborate with a mitigation specialist.  (RT

20   12/12/89 at 10.)  The investigator indicated that a mitigation specialist would work with the

21   investigator, Petitioner, and mental health professionals to prepare a complete picture for a

22   mitigation presentation.  (*Id.* at 10-12.)  The court clarified that Petitioner's competence to

23   stand trial was not in question, rather, advisory counsel said the mental health experts were

24   requested for mitigation.  (*Id.* at 13.)  The court denied the request for a mitigation specialist

25   but indicated that it would be reconsidered if Petitioner was convicted.  (*Id.* at 17.)  It appears

26   the Court appointed a serologist.  (RT 12/12/89 at 16; ROA 140.)

27        Prior to trial, there was a change of judge on the case.  After jury selection, Petitioner

28

asked that his advisory counsel be appointed to represent him going forward, and the court granted the request. (RT 7/11/90 at 96-97.)  After the verdict, Petitioner's counsel informed the court that previously she had asked for a mitigation specialist; when the judge asked if she was referring to Arizona Rule of Criminal Procedure 26.5, which provides for presentence mental health examinations, counsel answered, "Well, so to speak." (RT 7/27/90 at 6-7.)  The court appointed a psychologist proposed by Petitioner, Dr. Michael McMahon, to evaluate Petitioner's mental health and to conduct appropriate diagnostic testing. (*Id.* at 7; ROA 125.)  Petitioner made no other requests for the appointment of experts prior to sentencing.  In his sentencing memorandum, Petitioner's counsel relied on Dr. McMahon's August 18, 1990 evaluation to support his assertion of a (G)(1) statutory mitigating circumstance – that his ability to appreciate the wrongfulness of his conduct or conform his conduct to the law was significantly diminished. (ROA 149 at 18-19.)

*Analysis*

The parties agree that the seminal case regarding this claim is *Ake v. Oklahoma*, 470 U.S. 68 (1985).[10]  The Court first examines Petitioner's assertion that he needed experts for trial.  According to *Ake*, due process requires the state to provide an indigent defendant access to one competent psychiatrist when the defendant demonstrates that "his sanity at the time of the offense is to be a significant factor at trial." 470 U.S. at 83.  *Ake* holds that psychiatric assistance is most necessary and the risk of error without such assistance is at its peak "when the defendant's mental condition is seriously in question." *Id.* at 82.

The amended habeas petition sets forth minimal allegations as to this claim, charging only that Petitioner requested the appointment of a psychiatrist, a child psychologist, a mitigation expert, a fingerprint examiner, a jury consultant, a serologist, and a pathologist, and the court refused to provide funds for a jury consultant, denied a mitigation expert, and

---

[10]  Because the state court did not rule on the merits and rejected this claim on procedural grounds, which were insufficient to bar federal review, the Court reviews the claim de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 n.4 (9th Cir. 2002).

1   "refused to appoint experts that [were] necessary in the preparation of his defense." (Dkt.

2   18 at 34-35.) These conclusory allegations are insufficient to sustain relief. *See* Rule 2,

3   Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring petition to state the facts

4   in support of each claim); *Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995). In light of

5   the history of this case and the Court's concern regarding Petitioner's representation at the

6   time of the amended petition, the Court also looks to the merits brief. With the exception of

7   occasional references to "other experts," the merits brief focuses exclusively on the trial

8   court's denial of a mitigation specialist for sentencing. (Dkt. 90 at 60-81.) Petitioner does

9   not contend before this Court that his sanity at the time of the crime was at issue and a

10  psychiatric evaluation was constitutionally required, therefore, the claim fails on its face.[11]

11          More importantly, Petitioner had the burden of making a threshold showing to the trial

12  court that his mental condition was a "significant factor." *Ake*, 470 U.S. at 82-83. There is

13  no due process violation because, as set forth in the above Background section, Petitioner did

14  not make a showing before the trial judge that his sanity at the time of the crime would be

15  a significant factor at trial. *See Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985)

16  ("Undeveloped assertions that the requested assistance would be beneficial," are insufficient

17  to demonstrate that a state trial court's denial of expert assistance violated due process.).

18  When given an opportunity to verbalize the need for a mental health professional,

19  Petitioner's trial investigator focused solely on mitigation. (RT 12/12/89 at 10-12.)

20  Therefore, pursuant to *Ake*, the trial court was not constitutionally obligated to appoint a

21

22  _____

23          [11] In his merits reply brief, Petitioner argues that evidence at sentencing demonstrated

24  that Petitioner had a diminished capacity; therefore, his "mental condition during the crime
    was clearly at issue" and was relevant to premeditation. (Dkt. 110 at 71.) It is too late to
    raise an argument in a reply brief, *see supra* note 5, and this assertion is too cursory for relief.

25  Additionally, *Ake* requires that a defendant make a pretrial demonstration that his sanity will

26  be a significant issue at trial; diminished capacity is distinct from insanity and evidence
    presented at sentencing cannot possibly satisfy the necessary pretrial showing. Finally,

27  Arizona does not recognize diminished capacity as a defense. *See State v. Mott*, 187 Ariz.

28  536, 541, 931 P.2d 1046, 1051 (1997).

1    psychiatrist for purposes of trial.[12]

2         The Court now assesses Petitioner's contention that he was entitled to the appointment

3    of experts for sentencing.  Regarding capital sentencing, *Ake* held only that due process

4    requires the provision of psychiatric access to a defendant "when the State presents

5    psychiatric evidence of the defendant's future dangerousness."  470 U.S. at 83.

6         The entirety of Petitioner's argument before this Court is focused on the necessity of

7    a mitigation specialist to investigate and compile a social history for purposes of sentencing.

8    Petitioner has not cited, and the Court has not located, a single federal court holding that *Ake*

9    mandates appointment of a mitigation specialist under any circumstances.  In recognizing the

10   right to a psychiatrist, the Court in *Ake* focused on psychiatrists' specialized knowledge and

11   ability to diagnose and offer reasoned conclusions that may assist the fact finder when a

12   defendant's mental condition is at issue, 470 U.S. at 80-81; the Court noted that such

13   assistance is of particular importance when the State presents expert testimony because

14   psychiatry is an inexact science and experts may disagree, *id.* at 81, 84.  In contrast, the work

15   of a mitigation specialist does not hold the same value or risk of error in its absence because

16   a lawyer and investigator are capable of much of the work, and the work of a mitigation

17   specialist is infrequently used to rebut State evidence.  No court has held that due process

18   requires the appointment of a specialized mitigation investigator in every, or any, capital

19   habeas case, and this Court finds that such a ruling is not warranted here.

20        To the extent Petitioner is contending that his right to a mental health professional was

21   violated, the Court disagrees.  Some circuit courts have found that the *Ake* holding is narrow

22   and clearly requires psychiatric assistance for sentencing only "when the state presents

23   psychiatric evidence of the defendant's future dangerousness."  *Mason v. Mitchell*, 320 F.3d

24

---

25        [12] Petitioner has presented no factual argument in this Court regarding the additional

26   trial experts he requested, including a fingerprint examiner, serologist, pathologist, and jury
     consultant.  More importantly, Petitioner has set forth no law to support his general assertion

27   that *Ake* applies to the appointment of experts outside the realm of mental health.  Therefore,

28   the Court summarily denies this aspect of Claim 12.

1   604, 615 (6th Cir. 2003); *Goodwin v. Johnson*, 132 F.3d 162, 188-89 (5th Cir. 1997) ("*Ake*

2   only creates an entitlement to the assistance of a psychiatrist during sentencing when the state

3   offers *psychiatric* evidence of the defendant's future dangerousness") (citing *Tuggle v.*

4   *Netherland*, 516 U.S. 10, 12 (1995) (per curiam), and *Simmons v. South Carolina*, 512 U.S.

5   154, 164 (1994)); *but see Liles v. Saffle*, 945 F.2d 333, 341 (10th Cir. 1991) (finding

6   psychiatric assistance necessary because petitioner established mental condition as a

7   significant factor and state presented non-psychiatric evidence of future dangerousness).

8   Future dangerousness is not an aggravating factor in Arizona, *see* A.R.S. §13-703(F), and the

9   State did not rely on any expert mental health testimony regarding aggravation or mitigation;

10  therefore, under a strict reading of *Ake*, due process did not require the appointment of an

11  expert.

12          The Ninth Circuit has found that a defendant was entitled to a psychiatric expert to

13  prepare his mitigation claims, in light of his professed dissociative state at the time of the

14  crime and his use of hallucinogenic drugs, and to respond to the "neutral" court-appointed

15  psychiatrist's testimony that undercut his mitigation claims. *Smith v. McCormick*, 914 F.2d

16  1153, 1162-63 (9th Cir. 1990). Petitioner's circumstances are significantly distinguishable

17  from those present in *Smith*. Petitioner never made a showing to the trial court that his

18  mental state would be a significant issue for sentencing: in writing, he merely requested the

19  appointment with no explanation regarding mitigation; in his initial oral request he asserted

20  that he needed a psychologist to assess his social upbringing (RT 12/12/89 at 10); and at the

21  time of the verdict, he requested a sentencing expert to prepare a document for the court (RT

22  7/27/90 at 6-7). Further, Petitioner's counsel agreed to the appointment of a neutral

23  psychologist (RT 7/27/90 at 7), the court appointed the person suggested by Petitioner, and,

24  in the months prior to sentencing, Petitioner did not request an independent expert to rebut

25  the August 18, 1990 psychologist's report. Additionally, Petitioner made use of the

26  psychologist's report for mitigation, the report was not used against him, the trial court relied

27  on it in finding the (G)(1) statutory mitigating circumstance, and the State presented no

28

1   mental health expert evidence regarding aggravation or mitigation.  This is more similar to

2   an Eighth Circuit case in which the court found that appointment of a neutral psychiatrist,

3   who testified at sentencing for the defense, satisfied *Ake* when the State did not rely on

4   mental health evidence regarding the defendant's mental state for sentencing.  *Davis v.*

5   *Norris*, 423 F.3d 868, 875-77 (8th Cir. 2005).  The Court finds that Petitioner did not satisfy

6   the threshold showing that he was entitled to an additional mental health expert for purposes

7   of sentencing.  *See Williams v. Stewart*, 441 F.3d 1030, 1049-50 (9th Cir. 2006) (requiring

8   threshold showing that defendant's mental state will be at issue during sentencing).

9          As a final matter, an *Ake* claim is based on the evidence that was before the trial court.

10  *See* 470 U.S. at 83 (examining the showing made to the trial judge establishing the need for

11  psychiatric assistance); *Goodwin*, 132 F.3d at 189.  Therefore, neither factual development

12  nor an evidentiary hearing is necessary to this claim's resolution.  *See Hendricks v. Vasquez*,

13  974 F.2d 1099, 1103 (9th Cir.1992).

14         Claim 12 is dismissed.

15         <u>Claim 15</u>

16         Petitioner alleges that Arizona's statutory death penalty scheme is unconstitutional

17  because it allowed a judge, not a jury, to find the aggravating factors and impose the

18  sentence, and it failed to require notice of the aggravating factors by way of the indictment.

19         Respondents contend this claim is exhausted only in part.  Regardless of exhaustion,

20  the Court will dismiss the entirety of this claim because it is plainly meritless.  *See* 28 U.S.C.

21  § 2254(b)(2); *Rhines v. Weber*, 544 U.S. 269, 277 (2005).  Claim 15 is premised primarily

22  on *Ring v. Arizona*, 536 U.S. 584, 609 (2002), which found that Arizona's aggravating

23  factors are an element of the offense of capital murder and must be found by a jury.

24  However, in *Schriro v. Summerlin*, 524 U.S. 348 (2004), the Supreme Court held that *Ring*

25  does not apply retroactively to cases already final on direct review.  Because Petitioner's

26  direct review was final in 1994 prior to *Ring*, he is not entitled to relief premised on that

27  ruling.

28

With respect to the portion of the claim regarding his indictment, Petitioner also relies on *Jones v. United States*, 526 U.S. 227, 252 (1999), in which the Supreme Court held that facts constituting elements of a offense rather than just a sentencing enhancement must be charged in a *federal* indictment. However, the Supreme Court has long held that the Fifth Amendment provisions requiring indictment by a grand jury are not part of the due process of law incorporated as to *state* criminal prosecutions by virtue of the Fourteenth Amendment. *See Hurtado v. People of State of Cal.*, 110 U.S. 516, 538 (1884); *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972).

Claim 15 is dismissed.

Claim 16

Petitioner alleges that his Eighth Amendment right to a fair sentencing was violated by the trial court's consideration of victim impact evidence. Petitioner concedes that this claim was not fairly presented to the Arizona Supreme Court. He contends it was exhausted by the supreme court's fundamental error review or independent sentencing review; however, he acknowledges that this Court has already rejected those types of review as avenues to exhaust most claims.

First, as noted by Petitioner, this Court previously rejected his argument that any claims not fairly presented were exhausted by the Arizona Supreme Court's review for fundamental error. (Dkt. 83 at 9-10 (citing *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *Poland (Patrick) v. Stewart*, 169 F.3d 573, 583 (9th Cir. 1999); *Poland (Michael) v. Stewart*, 117 F.3d 1094 (9th Cir. 1997); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).) Second, the Arizona Supreme Court independently reviews each capital case to assess the presence or absence of aggravating and mitigating circumstances and the weight to give to each to determine whether the death sentence is appropriate. *See State v. Gretzler*, 135 Ariz. 42, 54, 659 P.2d 1, 13 (1983); *State v. Blazak*, 131 Ariz. 598, 604, 643 P.2d 694, 700 (1982). Claim 16 goes far beyond the stated scope of that review, and the Ninth Circuit holds that the Arizona Supreme Court's independent sentencing review does not exhaust a

1   claim alleging that prejudicial information was considered at sentencing.  *Moormann v.*

2   *Schriro*, 426 F.3d 1044, 1057-58 (9th Cir. 2005).   Thus, this claim was not properly

3   exhausted.

4          Petitioner is now precluded by Arizona Rule of Criminal Procedure 32.2(a)(3) and

5   32.4 from obtaining relief on this claim in state court.  *See* Ariz. R. Crim. P. 32.2(b); 32.1(d)-

6   (h).  Thus, this claim is technically exhausted but procedurally defaulted, absent a showing

7   of cause and prejudice or a fundamental miscarriage of justice.

8          Petitioner alleges that the cause to excuse his default is ineffective assistance of

9   counsel on appeal and in PCR proceedings.  In a prior order, the Court rejected ineffective

10  assistance of appellate counsel as cause because Petitioner never presented and exhausted

11  such an allegation as an independent claim (Dkt. 83 at 10-11).  *See Edwards v. Carpenter*,

12  529 U.S. 446, 451-53 (2000) ("ineffective-assistance-of-counsel claim asserted as cause for

13  the procedural default of another claim can itself be procedurally defaulted"); *Murray*, 477

14  U.S. at 489-90 ("the exhaustion doctrine . . . generally requires that a claim of ineffective

15  assistance be presented to the state courts as an independent claim before it may be used to

16  establish cause for a procedural default."); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir.

17  1988) (exhaustion requires petitioner to first raise ineffective appellate counsel claim

18  separately in state court before alleging it as cause for default).  Similarly, the Court rejected

19  ineffective assistance of PCR counsel as cause because there is no constitutional right to

20  counsel for state PCR proceedings (Dkt. 83 at 24-26).  *Coleman*, 501 U.S. at 752, 755

21  (recognizing IAC as cause only when it rises to the level of an independent constitutional

22  violation); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Murray v. Giarratano*, 492

23  U.S. 1, 7-12 (1989) (the Constitution does not require states to provide counsel in PCR

24  proceedings even when the putative petitioners are facing the death penalty); *Bonin v.*

25  *Vasquez*, 999 F.2d 425, 429-30 (9th Cir. 1993) (refusing to extend the right of effective

26  assistance of counsel to state collateral proceedings); *Harris v. Vasquez*, 949 F.2d 1497,

27  1513-14 (9th Cir. 1991).  Thus, the Court rejects Petitioner's request to treat ineffective

28

- 29 -

1    assistance of appellate or PCR counsel as cause to excuse the procedural default of this

2    claim.

3         Petitioner also argues that there will be a fundamental miscarriage of justice if this

4    claim is not heard on the merits because Petitioner "is actually innocent of first-degree

5    premeditated murder and because he was sentenced to death due to constitutional errors."

6    (Dkt. 110 at 91.)  This cursory assertion falls far short of the requirements for innocence of

7    the crime or the death penalty.  First, to demonstrate that "a constitutional violation has

8    probably resulted in the conviction of one who is actually innocent," a petitioner must prove

9    with new reliable evidence that "it is more likely than not that no reasonable juror would

10   have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324,

11   327 (1995).  Petitioner has not alleged he has any new reliable evidence to support this

12   assertion.  Second, to establish a fundamental miscarriage of justice based on innocence of

13   the death penalty, Petitioner must show by clear and convincing evidence that, but for a

14   constitutional error, no reasonable factfinder would have found the existence of any

15   aggravating circumstance or some other condition of eligibility for the death sentence under

16   the applicable state law. *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992).  Petitioner does not

17   assert that all three aggravating factors were unconstitutional; in fact, no claim challenges the

18   (F)(2) or (F)(8) factors, which were based respectively on findings that Petitioner had two

19   prior violent felony convictions and that he committed multiple homicides during the same

20   episode.  In sum, Petitioner has not alleged sufficient facts to establish a fundamental

21   miscarriage of justice.

22        Claim 16 is dismissed as procedurally defaulted.

23        <u>Claim 18</u>

24        Petitioner alleges that Arizona's death penalty statute is unconstitutional because it

25   allows the trial court to withhold information contained in a presentence report.  The parties

26   contest whether this claim was fully exhausted; regardless, the Court will dismiss the entirety

27   of this claim because it is plainly meritless. *See* 28 U.S.C. § 2254(b)(2); *Rhines*, 544 U.S.

28

1    at 277.

2          At the time of Petitioner's sentencing, the governing death penalty statute provided:

3          In the sentencing hearing the court shall disclose to the defendant or
           defendant's counsel all material contained in any presentence report, if one has
4          been prepared, except such material as the court determines is required to be
           withheld for the protection of human life.  Any presentence information
5          withheld from the defendant shall not be considered in determining the
           existence or nonexistence of the circumstances included in subsection F or G
6          of this section.

7    A.R.S. § 13-703(C) (West 1990).  The sentencing judge stated on the record: "All material

8    in these presentence reports was disclosed to the Defendant and the Prosecutor."  (RT

9    12/18/90 at 3.)  The Arizona Supreme Court made a factual finding that "the judge disclosed

10   all the information that he received and used in sentencing defendant." *Ramirez*, 178 Ariz.

11   at 128, 871 P.2d at 249.

12         Petitioner's suggestion that the statutory language "[a]ny presentence information

13   withheld" could include information from sources other than official presentence reports

14   (including as he argues "other presentence reports that were not submitted" (Dkt. 110 at 96))

15   is contrary to a reasonable interpretation of this language.  The language in the second

16   sentence clearly refers back to the first sentence, which talks only about the possibility of

17   withholding information from presentence reports and clearly includes "any" such reports.

18         Similarly unreasonable is Petitioner's suggestion that the court may have withheld

19   mitigating evidence from him, thereby not considering what could be relevant mitigation.

20   Petitioner does not dispute that governing rules required the trial court to inform a defendant

21   if any material from a presentence report was withheld.  Ariz. R. Crim. P. 26.6(c).  In accord

22   with that rule, the judge notified Petitioner that nothing had been withheld and the Arizona

23   Supreme Court affirmed that finding.  Further, the sentencing judge explicitly stated that its

24   aggravation and mitigation findings were based solely on the evidence at trial, "comments

25   at allocution by the State and the Defendant, memoranda and evidence received at these

26   hearings, and the presentence reports."  (RT 12/18/90 at 4.)  Thus, nothing improper was

27   considered and there is no factual foundation for this claim.  Claim 18 is dismissed.

28

1    Claim 19

2        Petitioner alleges that there was insufficient evidence to support the (F)(6) aggravating

3    factor – that the crime was especially cruel, heinous, or depraved – and that the trial court's

4    fact findings were unreasonable.   Respondents concede that this claim was exhausted on

5    direct appeal.  (Dkt. 103 at 43.)

6        The trial court cited the following facts in support of its finding that the murders were

7    both especially cruel and heinous/depraved:

8        The testimony of Priscilla Arce, Larry Bernabe, Phoenix Police Department
         homicide detective Richard Fuqua, and Dr. George Bolduc, forensic
9        pathologist, as well as the physical evidence and the telling photographs of the
         victims and the crime scene, shows that both Candie and Mary Ann Gortarez
10       were conscious during the time that the Defendant inflicted at least 15 to 18
         stab wounds on each of them, as well as other slices, cuts, and defensive type
11       injuries.

12           The evidence further shows that the Defendant intended or reasonably
         foresaw that both victims would suffer pain and mental distress from his
13       repeated vicious assaults.  Witnesses Arce and Bernabe testified that at
         approximately 5:00 a.m. they were awakened by screaming, banging on walls,
14       and chasing sounds from the Gortarez apartment located directly below their
         apartment.  Between 5:00 a.m. and 5:30 a.m., Bernabe twice went downstairs
15       to the Gortarez apartment to determine what was occurring and to offer
         assistance, if requested.  On the first occasion, the noise stopped after he
16       knocked hard on the front door, but nobody responded.

17           After Bernabe returned upstairs, the screaming, pounding, shuffling and
         running resumed and one of the victims was heard to scream and yell for help.
18       Bernabe again went downstairs to the back of the apartment and pounded and
         knocked on the door.  The noise stopped but, again, nobody came to the door.
19       Bernabe then went to the manager's apartment and called the police.  This
         violent and deadly episode lasted from 5:00 a.m. to 5:30 a.m., when the police
20       arrived in response to Bernabe's call for help.

21           Evidence further showed that Candie and Mary Ann Gortarez, who was
         apparently a girlfriend of the Defendant, fought valiantly for their lives before
22       succumbing to the Defendant's vicious and senseless assaults.  Crime scene
         photos and evidence and the testimony of Dr. Bolduc established that Mary
23       Ann Gortarez had many defense type cuts as well as 18 stab wounds, that she
         had been hit and bruised about her eyes, and that the living room, kitchen,
24       bathroom, and bedroom in which Mary Ann and Candie were found were in
         bloody disarray, evidencing a prolonged and violent struggle between the
25       Defendant and both victims.

26           All of these factors indicate that both victims were conscious and fought
         for their lives throughout this 20 to 30-minute assault and suffered physically
27       and emotionally throughout this period, especially when their cries for help
         were heard but not answered because of the Defendant's unrelenting and

28

1    overpowering deadly assault.

2        The Court further finds beyond a reasonable doubt that the murders of
     Candie and Mary Ann Gortarez were committed in an "especially heinous and
3    depraved" manner because the Defendant acted in an especially hateful or
     reprehensible manner in committing these offenses.  The Defendant inflicted
4    gratuitous and unnecessary violence, pain and suffering, both physical and
     emotional, on both victims.  This is evidenced by the large number of stab
5    wounds, cuts and abrasions over all parts of Mary Ann Gortarez's body and
     the upper parts of Candie Gortarez's body, and by the fact that both murders
6    were unprovoked, senseless, and without apparent motive.  Furthermore, the
     fact that the Defendant used at least four weapons, including a box cutter,
7    manicure scissors, cake knife, and large kitchen knife, to commit these
     offenses and that he had sexual intercourse with Candie Gortarez either shortly
8    before or when he killed her, shows that he was acting in an especially
     perverted, hateful, cold-blooded, sadistic and reprehensible manner in killing
9    both victims.

10       Finally, that the Defendant acted in an especially heinous and depraved
     manner is evidenced by the fact that Candie Gortarez was only 15 years of age,
11   and that both victims were smaller, weaker and essentially helpless in the face
     of the Defendant's overpowering, armed, and prolonged assaults.

12   (RT 12/18/90 at 6-9.)

13   The Arizona Supreme Court affirmed only the cruelty finding:

14
15       Cruelty refers to the pain and suffering that the victim experiences
     before death.  Cruelty can be established by evidence of a prolonged, bloody
     struggle and the victim's defensive wounds.  Cruelty can also be established
16   by evidence of the victim's awareness of suffering inflicted on a loved one.
     The victim's suffering must have been foreseeable to the defendant.

17
18       The victims in this case endured great pain and suffering over a
     prolonged period of time.  The neighbors testified to the banging, screaming,
19   cries for help, and running noises that alerted them to the homicides and that
     continued for 20 to 30 minutes.  When the police arrived, they found evidence
20   of great violence; they discovered blood and murder weapons throughout the
     apartment.  Expert testimony as well as the physical evidence established that
21   both victims were conscious during the time that defendant repeatedly stabbed
     each of them 15-20 times.  Each was obviously aware of the other's suffering.
22   Both sustained numerous other cuts and bruises.  Mrs. G suffered defensive
     wounds while fighting unsuccessfully to save her life.  The victims' sufferings
23   were inescapably foreseeable to defendant.  We believe the record in this case
     amply demonstrates that these murders were especially cruel.

24   *Ramirez*, 178 Ariz. at 129, 871 P.2d at 250 (citations omitted).  Because the court upheld the

25   cruelty finding, it did not reach the trial court's finding regarding heinousness/depravity. *Id.*

26       Habeas review of a state court's application of an aggravating factor "is limited, at

27   most, to determining whether the state court's finding was so arbitrary and capricious as to

28
                                      - 33 -

1    constitute an independent due process or Eighth Amendment violation." *Jeffers,* 497 U.S.

2    at 780. In making that determination, the reviewing court must inquire "whether, after

3    viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

4    could have found that the factor had been satisfied." *Id.* at 781 (quoting *Jackson v. Virginia*,

5    443 U.S. 307, 319 (1979)).

6         Petitioner contends there was no factual support for the finding that the murders were

7    unprovoked or that the sexual intercourse with Candie Gortarez was not consensual. Further,

8    he contends that he was approximately the same size as the victims, therefore, the finding

9    that the victims were physically smaller was unfounded. Petitioner's factual challenges relate

10   only to the heinous/depraved finding and do not address the cruelty finding by the trial court

11   or Arizona Supreme Court.

12        The especially cruel prong of (F)(6) addresses the suffering of the victim. *See State*

13   *v. Murray*, 184 Ariz. 9, 37, 906 P.2d 542, 570 (1995). The factor is satisfied if the victim

14   experienced physical or mental pain and suffering prior to dying. *Id.* As reflected in the

15   state courts' findings and the record, a rational factfinder could have determined that the

16   murders were especially cruel in light of the prolonged struggle and numerous injuries, as

17   well as each victim's awareness of the other's suffering. It was not objectively unreasonable

18   for the Arizona Supreme Court to find that the crime was especially cruel.

19        As reflected in the appellate opinion regarding Petitioner's case, Arizona law indicates

20   that the finding of either especial cruelty or especial depravity alone will establish the (F)(6)

21   factor and that the validity, or lack thereof, of the other prong does not affect the weight

22   given to the circumstance. *See, e.g., State v. Djerf*, 191 Ariz. 583, 597, 959 P.2d 1274, 1288

23   (1998) ((F)(6) circumstance upheld based on cruelty alone without considering validity of

24   depravity finding); *State v. Towery*, 186 Ariz. 168, 188, 920 P.2d 290, 310 (1996) (same);

25   *State v. Bolton*, 182 Ariz. 290, 312, 896 P.2d 830, 852 (1995) (same); *State v. Roscoe*, 184

26   Ariz. 484, 500-01, 910 P.2d 635, 651-52 (1996) (upholding (F)(6) factor based on cruelty

27   after invalidating depravity finding). Therefore, the Court need not consider Petitioner's

28

arguments as to the heinous/depraved finding.

Claim 19 is dismissed.

Claims 21-26 and 28

These claims all challenge Arizona's death penalty scheme and its application to Petitioner's sentence.  Respondents concede exhaustion as to Claim 21 (in part), Claim 22, and Claim 25.  They contest exhaustion as to the remainder of the claims.  Regardless of exhaustion, the Court will dismiss the entirety of these claims because they are plainly meritless.  *See* 28 U.S.C. § 2254(b)(2); *Rhines*, 544 U.S. at 277.

Claim 21 is captioned:  "The balance of aggravation versus mitigation . . . creates a burden on the defendant that is not contemplated by the statute," in violation of Petitioner's enumerated constitutional rights.  (Dkt. 84 at 29.)  The claim seems to contain several different allegations:  that the court did not cumulatively weigh the mitigation against the aggravation, that Petitioner's mitigation clearly outweighed the aggravation and he should have been sentenced to a life term,[13] and that it is unreliable to require a defendant to prove the existence of mitigating factors.  (*Id.* at 30-31.)  Although Respondents expressed confusion regarding the specific substance of Claim 21 (Dkt. 103 at 46), Petitioner provided no reply on the merits (Dkt. 110 at 99).  Claim 22 alleges that Arizona's death penalty is unconstitutional because the State is not required to prove that the aggravation outweighs the mitigation beyond a reasonable doubt.  Claim 23 alleges that the Arizona death penalty statute is unconstitutional because it mandates that a death sentence be imposed if there is one aggravator and no sufficient mitigating circumstances.

In *Walton*, the Supreme Court rejected Petitioner's statutory arguments in Claims 21 and 22 that "Arizona's allocation of the burdens of proof in a capital sentencing proceeding violates the Constitution."  497 U.S. at 651.  The Court held that as long as the State was

---

[13]  The challenges regarding how the sentencer actually weighed the aggravation and mitigation in Petitioner's case are fully addressed above in Claim 3 and will not be discussed again.

1    required to prove aggravation beyond a reasonable doubt, it is not unconstitutional to require

2    the defendant to prove mitigating circumstances sufficiently substantial for leniency. *Id.* at

3    650. The *Walton* Court also rejected Claim 23 that Arizona's death penalty statute is

4    impermissibly mandatory and creates a presumption in favor of the death penalty because it

5    provides that the death penalty "shall" be imposed if one or more aggravating factors are

6    found and mitigating circumstances are insufficient to call for leniency. *Id.* at 651-52 (citing

7    *Blystone v. Pennsylvania,* 494 U.S. 299 (1990), and *Boyde v. California,* 494 U.S. 370

8    (1990)); *see Kansas v. Marsh*, 548 U.S. 163, 173 (2006) (relying on *Walton* to uphold

9    Kansas's death penalty statute, which directs imposition of the death penalty when the state

10   has proved that mitigating factors do not outweigh aggravators); *Smith v. Stewart,* 140 F.3d

11   1263, 1272 (9th Cir. 1998) (summarily rejecting challenges to the "mandatory" quality of

12   Arizona's death penalty statute and its failure to apply the beyond-a-reasonable-doubt

13   standard).

14         Claim 24 alleges that at the time of Petitioner's sentencing the Arizona death penalty

15   statute was applied in a way that discriminates against poor, male defendants in violation of

16   the Equal Protection Clause. Clearly established federal law holds that "a defendant who

17   alleges an equal protection violation has the burden of proving 'the existence of purposeful

18   discrimination'" and must demonstrate that the purposeful discrimination "had a

19   discriminatory effect" on him. *McCleskey,* 481 U.S. at 292 (quoting *Whitus v. Georgia,* 385

20   U.S. 545, 550 (1967)). Therefore, to prevail under the Equal Protection Clause, Petitioner

21   "must prove that the decisionmakers in *his* case acted with discriminatory purpose." *Id.*

22   Petitioner does not attempt to meet this burden. This claim fails because he offers no

23   evidence specific to his case that would support an inference that his gender or economic

24   status impacted his sentence. *See Jeffers v. Lewis*, 38 F.3d 411, 419 (9th Cir. 1994) (finding

25   no evidence that race or gender creates a "constitutionally significant risk of impermissible

26   bias" in Arizona capital sentencing).

27         Claim 25 alleges that the automatic appeal to the Arizona Supreme Court of all

28

criminal cases in Arizona in which the defendant is sentenced to death violates his right to equal protection by providing less opportunity for appellate review than is provided to a defendant in a non-capital case (who appeals to the state court of appeals and then may seek discretionary review in the supreme court). The Arizona Supreme Court rejected this claim, finding that the direct appeal to that court was rationally based because it promoted consistency in death sentencing. *Ramirez*, 178 Ariz. at 122, 871 P.2d at 243. Petitioner fails to cite, and the Court is not aware of, any clearly established Supreme Court law in support of his position; therefore, he cannot obtain relief on this claim. *See Musladin*, 127 S. Ct. at 654. Further, the Supreme Court has approved a system of direct appeal to a state supreme court as one that maximizes rationality and consistency. *Proffitt v. Florida*, 428 U.S. 242, 258-59 (1976). The Arizona Supreme Court's rejection of this claim was not objectively unreasonable.

Claim 26 alleges that Petitioner's rights were violated because the Arizona appellate courts did not conduct a proportionality review of his sentence. There is no federal constitutional right to proportionality review of a death sentence, *McCleskey*, 481 U.S. at 306 (citing *Pulley v. Harris*, 465 U.S. 37, 43-44 (1984)), and Arizona discontinued the practice in 1992, *State v. Salazar*, 173 Ariz. 399, 417, 844 P.2d 566, 584 (1992). The Ninth Circuit has explained that the interest implicated by proportionality review – the "substantive right to be free from a disproportionate sentence" – is protected by the application of "adequately narrowed aggravating circumstance[s]." *Ceja*, 97 F.3d at 1252.

Claim 28 alleges that Arizona's capital punishment scheme is cruel and unusual punishment because it is not justified by societal interests. Clearly established federal law holds that the death penalty does not constitute cruel and unusual punishment. *Gregg*, 428 U.S. at 169; *see also Roper v. Simmons*, 543 U.S. 551, 568-69 (2005) (noting that the death penalty is constitutional when applied to a narrow category of crimes and offenders). Further, the Supreme Court has found that it is within the province of state legislatures to assess the value of capital punishment; thus, the Court concluded that "the infliction of death

1   as a punishment for murder is not without justification and thus is not unconstitutionally

2   severe." *Gregg*, 428 U.S. at 187.  Petitioner also contests numerous specific provisions of

3   Arizona's death penalty statute; these statutory challenges are the same ones raised in earlier

4   claims and addressed above by the Court.

5           Claims 21-26 and 28 are dismissed.

6           <u>Claim 27</u>

7           Petitioner alleges that his appellate counsel was ineffective for failing to raise on

8   direct appeal all of the claims asserted in this federal habeas proceeding.  Petitioner asserts

9   this claim was raised in his PCR reply brief.  In a prior order, the Court rejected Petitioner's

10  contention that raising this claim in a reply brief was sufficient for exhaustion, because

11  Petitioner did not include the claim in his PCR petition or Petition for Review to the Arizona

12  Supreme Court.  (Dkt. 83 at 11.)  Additionally, as discussed above in Claim 16 and in the

13  Court's prior order (*id.* at 9-10), the Arizona Supreme Court's fundamental error review was

14  not a vehicle for exhausting any claims.  Similarly, the Arizona Supreme Court's independent

15  review of each death sentence on direct appeal cannot exhaust a claim premised on appellate

16  counsel's error in that same proceeding.

17          Petitioner is now precluded by Arizona Rule of Criminal Procedure 32.2(a)(3) and

18  32.4 from obtaining relief on this claim in state court.  *See* Ariz. R. Crim. P. 32.2(b); 32.1(d)-

19  (h); *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) ("the ground of

20  ineffective assistance of counsel cannot be raised repeatedly"; therefore, if additional

21  ineffectiveness allegations are raised in a successive petition, the claims in the later petition

22  necessarily will be precluded).  Thus, this claim is technically exhausted but procedurally

23  defaulted, absent a showing of cause and prejudice or a fundamental miscarriage of justice.

24          Petitioner alleges that the ineffectiveness of his appellate and PCR counsel, in failing

25  to raise this claim, constitutes cause to excuse his default.  That assertion fails for the same

26  reasons set forth in the discussion of Claim 16 above and in the Court's prior order

27  addressing these issues (Dkt. 83 at 10-11, 24-26).  Additionally, it is nonsensical to argue that

28

1   Petitioner's appellate counsel is at fault for failing to raise on direct appeal a claim alleging

2   that he was ineffective for failing to raise additional claims during that proceeding.  Finally,

3   Petitioner makes the same cursory allegation regarding fundamental miscarriage of justice

4   as he did with respect to Claim 16, and the Court rejects it on the same grounds.

5          Claim 27 is dismissed as procedurally barred.

6          <u>Claim 29</u>

7          Petitioner alleges that execution by lethal injection or lethal gas will involve the

8   unnecessary and wanton infliction of pain and suffering in violation of the Eighth

9   Amendment.  Further, he contends that the change in law from lethal gas to lethal injection

10  as the method of execution violates the Ex Post Facto Clause, and that it is cruel and unusual

11  punishment to require Petitioner to choose his method of execution.

12         Petitioner acknowledges that he has never presented this claim, but he argues there

13  is no available state corrective process.  Petitioner provides no basis for this summary

14  argument, which he repeated in his reply brief even though Respondents disputed it.  The

15  Court finds that Petitioner has failed to establish there is an applicable exception to the

16  exhaustion requirement.

17         As discussed above in Claim 16 and in a prior order (Dkt. 83 at 9-10), the Arizona

18  Supreme Court's fundamental error review was not a vehicle for exhausting any claims.

19  Petitioner is correct that the Arizona Supreme Court independently reviewed his case to

20  assess the presence or absence of aggravating and mitigating circumstances and the weight

21  to give to each to determine whether the death sentence was appropriate.  *See State v.*

22  *Gretzler*, 135 Ariz. 42, 54, 659 P.2d 1, 13 (1983); *State v. Blazak*, 131 Ariz. 598, 604, 643

23  P.2d 694, 700 (1982).  However, Claim 29 falls far outside the stated scope of that review,

24  and the Ninth Circuit holds that the Arizona Supreme Court's independent sentencing review

25  does not exhaust a claim alleging that the death penalty is cruel and unusual.  *Moormann*,

26  426 F.3d at 1057-58.

27         Petitioner is now precluded by Arizona Rule of Criminal Procedure 32.2(a)(3) and

28

32.4 from obtaining relief on this claim in state court. *See* Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Thus, this claim is technically exhausted but procedurally defaulted, absent a showing of cause and prejudice or a fundamental miscarriage of justice.

Petitioner alleges that the ineffectiveness of his appellate and PCR counsel, in failing to raise this claim, constitutes cause to excuse his default of this claim. That assertion fails for the same reasons set forth in the discussion of Claim 16 and in the Court's prior order addressing these issues (Dkt. 83 at 10-11, 24-26). Finally, Petitioner makes the same cursory allegation regarding fundamental miscarriage of justice as he did with respect to Claim 16, and the Court rejects it on the same grounds.

Claim 29 is dismissed as procedurally barred.

Claim 30

Petitioner alleges that he is not competent to be executed. Both Petitioner and Respondents acknowledge that this allegation is not ripe and is premature for federal review. (Dkts. 84 at 74, 103 at 56.) Pursuant to *Martinez-Villareal v. Stewart*, 118 F.3d 628, 634 (9th Cir. 1997), *aff'd*, 523 U.S. 637 (1998), a claim of incompetency for execution "must be raised in a first habeas petition, whereupon it also must be dismissed as premature due to the automatic stay that issues when a first petition is filed." If again presented to the district court once the claim becomes ripe for review, it shall not be treated as a second or successive petition. *See id.* at 643-44. Therefore, the Court will dismiss Claim 30 without prejudice as premature.

Claim 31

Petitioner alleges that his right to due process will be violated because he will not receive a fair clemency proceeding. In particular, he alleges the proceeding will not be fair and impartial based on the Board's selection process, composition, training and procedures, and because the Attorney General will act as the Clemency Board's legal advisor and as an advocate against Petitioner.

Petitioner acknowledges that because he has not sought clemency this claim is

premature and not ripe for adjudication.  More significantly, however, this claim is not cognizable on federal habeas review.  Habeas relief can only be granted on claims that a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Petitioner's challenges to state clemency procedures and/or proceedings do not represent an attack on his detention, i.e., his conviction or sentence and, thus, do not constitute proper grounds for relief. *See Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam); *see also Woratzeck v. Stewart*, 118 F.3d 648, 653 (9th Cir. 1997) (per curiam) (clemency claims are not cognizable under federal habeas law). Therefore, the Court will dismiss Claim 31 as not cognizable in a federal habeas petition.

**Conclusion**

Claims 3, 4, 6, 9, 12, 15, 18-26, and 28 are dismissed on the merits.  Claims 16, 27, and 29 are dismissed as procedurally barred.  Claim 30 is premature, and Claim 31 is not cognizable in a federal habeas proceeding.

## CLAIM 34

In its March 20, 2007 order granting Petitioner's motion to amend to add Claim 34, the Court determined that the claim related back to timely-filed Claim 8 and, therefore, was not barred by the statute of limitations. (Dkt. 158 at 13.)  The Court also conducted a cursory review of exhaustion and procedural default regarding Claim 34 and determined that the state court's order summarily dismissing Petitioner's successive PCR proceeding did not clearly rest on an adequate state procedural bar.  (*Id.* at 3 n.2.)  After fully assessing the PCR court's ruling, the Court now determines that the procedural status of this claim must be revisited.

In Arizona, a PCR proceeding is commenced by the timely filing of a "notice of post-conviction relief" with the court in which the conviction occurred.  Ariz. R. Crim. P. 32.4(a). For capital cases, a PCR notice is timely when automatically filed by the Arizona Supreme Court upon issuance of the mandate affirming the defendant's conviction and sentence on direct appeal.  *Id.*  Separate from timeliness, Arizona's rules also provide that a defendant is precluded from post-conviction relief for any claim still raisable on appeal or in a post-trial

motion; previously adjudicated on the merits; or waived at trial, on appeal, or in a previous PCR proceeding.  Ariz. R. Crim. P. 32.2(a).  However, neither the preclusion rule nor the timeliness requirement apply if a claim is based on certain enumerated exceptions, including newly-discovered material facts, significant change in the law, and actual innocence.  Ariz. R. Crim. P. 32.1(e), (g) & (h); 32.2(b); 32.4(a).  When such a claim is to be raised in a successive or untimely PCR petition,

> the notice of post-conviction relief must set forth the reasons for not raising the claim in the previous petition **or** in a timely manner.  If the specific exception and meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition **or** in a timely manner, the notice shall be summarily dismissed.

Ariz. R. Crim. P. 32.2(b) (emphasis added.)

Here, Petitioner included Claim 34 in a successive notice of PCR, urging that the claim met one or more of the exceptions to the preclusion and timeliness rules.  In a brief order, the PCR court disagreed and summarily dismissed the notice, stating: "None of these claims come within the exceptions to the timeliness requirement of Rule 32.4(a), Arizona Rules of Criminal Procedure.  They either were or could have been raised on direct appeal or in the prior Rule 32 proceedings." (Dkt. 145, Ex. B.)  Standing alone, the language in the second sentence – that claims were or could have been previously raised – is considered an ambiguous invocation of Arizona's preclusion rule and is inadequate to bar federal review. *See Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996); *Valerio v. Crawford*, 306 F.3d 742, 774-75 (9th Cir. 2002) (en banc); *Koerner v. Grigas*, 328 F.3d 1039, 1049-50 (9th Cir. 2003). However, as urged by Respondents in response to Petitioner's motion to amend to add Claim 34 (Dkt. 147 at 6-7), the first sentence of the PCR court's ruling clearly invokes the separate Rule 32.4(a) time bar.

Petitioner contends that the PCR court's ruling did not involve two separate procedural bars but one intertwined finding that the claims were untimely *because* they were or could have been raised in a prior proceeding.  While the preclusion rule applies to claims previously adjudicated or waived for failure to raise them in a previous proceeding, nothing

in Arizona's timeliness rule suggests that timeliness is dependent on whether a claim was or could have been raised previously; in other words, preclusion does not make a claim untimely or except a claim from the timeliness requirement. Indeed, the Arizona Supreme Court has expressly held that timeliness and preclusion are two separate procedural bars, *see Moreno v. Gonzalez*, 192 Ariz. 131, 133, 135, 962 P.2d 205, 207, 209 (1998), either or both of which may serve as a basis for summarily denying PCR claims. Thus, the Court concludes that the PCR court's first sentence invoking the Rule 32.4(a) time bar is not rendered ambiguous by virtue of the second sentence's reference to preclusion.

When a State pleads the existence of an adequate and independent bar as an affirmative defense, as Respondents did, the burden shifts to the petitioner to put the defense at issue. *See Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2002). "The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* The State bears the ultimate burden of demonstrating that the rule is adequate in that it has been regularly and consistently applied. *Id.*

In reply to the State's opposition to his motion to amend to add Claim 34, Petitioner alleged that Arizona's time bar is not adequate and requested an opportunity for additional briefing on the subject if the Court were considering ruling on that basis. Having revisited this issue and determined that the PCR court clearly applied a time bar, the Court will allow the requested briefing. Petitioner's brief shall be comprehensive in that it shall not rely on the initial briefing set forth in his reply regarding the motion to amend but shall encompass the entirety of his argument in support of meeting his burden as set forth in *Bennett*. Respondents' response shall include any rebuttal to Petitioner's arguments regarding inadequacy of Arizona's time bar, as well as all arguments in support of their ultimate burden regarding the adequacy of the rule.

Accordingly, **IT IS ORDERED** that Petitioner's Motion for Leave to File Third

Amended Petition (Dkt. 176) is **DENIED**.

**IT IS FURTHER ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**:  Claims 3, 4, 6, 9, 12, 15, 18-26, and 28 on the merits; Claims 16, 27, and 29 as procedurally barred; and Claim 31 as not cognizable.

**IT IS FURTHER ORDERED** that Claim 30 is **DISMISSED WITHOUT PREJUDICE** as premature and not yet ripe for review.

**IT IS FURTHER ORDERED** that within **thirty (30) days** of the file date of this Order, Petitioner shall file a brief regarding the adequacy of Arizona Rule of Criminal Procedure 32.4(a) as a bar to federal review.

**IT IS FURTHER ORDERED** that within **thirty (30) days** of the file date of Petitioner's brief, Respondents shall file a responsive brief.

**IT IS FURTHER ORDERED** that if, pursuant to LRCiv 7.2(g), either party files a Motion for Reconsideration of this Order, such motion shall be filed within **fifteen (15) days** of the filing of this Order.  The filing and disposition of such motion shall not toll the time for the briefing schedule set forth above.

**IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order to Rachelle M. Resnick, Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-3329.

DATED this 12th day of December, 2008.

_____
James A. Teilborg
United States District Judge