**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| David Martinez Ramirez, | ) No. CV-97-1331-PHX-JAT |
| Petitioner, | ) <u>DEATH PENALTY CASE</u> |
| vs. | ) |
| Charles L. Ryan, et al., | ) **ORDER** |
| Respondents. | ) |

In a prior order, this Court addressed all of Petitioner's habeas claims except Claim 34, which alleges ineffective assistance of counsel based on trial counsel's failure to adequately investigate and present mental health mitigating evidence at sentencing. (Dkt. 190.)[1] As set forth below, the Court concludes that the state court dismissed Claim 34 on independent and adequate state procedural grounds and that it is therefore procedurally defaulted. Because the parties have not yet had an opportunity to fully brief this claim, the Court is not in a position to consider whether Petitioner has legitimate cause and prejudice to excuse the default or whether a fundamental miscarriage of justice will occur if the claim is not heard on the merits. Accordingly, additional briefing on these issues is necessary.

---

[1] "Dkt." refers to the documents in this Court's case file.

# I.   PROCEDURAL HISTORY

Following affirmance on direct appeal by the Arizona Supreme Court, *State v. Ramirez*, 178 Ariz. 116, 119-21, 871 P.2d 237, 240-42 (1994), Petitioner filed a petition for state post-conviction relief ("PCR") raising seven claims. (ROA-PCR 190.)[2]  In February 1996, Maricopa County Superior Court Judge Thomas W. O'Toole, who had also presided over Petitioner's trial and sentencing, denied relief.[3]  (ROA-PCR 192.)  Subsequently, the Arizona Supreme Court summarily denied a petition for review.

Petitioner initiated federal habeas proceedings in 1997, and the Court appointed CJA counsel, who timely filed an amended petition raising 12 claims. (Dkts. 1, 2, 18.) Following briefing, all claims except portions of Claims 1 and 2 were dismissed.  (Dkt. 26.)  Due to concerns regarding the quality of representation provided by Petitioner's CJA counsel, the Court substituted the Federal Public Defender ("FPD") as counsel and allowed Petitioner to file a motion to amend.  In November 2003, the FPD sought leave to file a supplemental petition alleging 19 additional claims and a supplemental traverse.  (Dkts. 40, 55, 76.)  The Court permitted the supplemental pleadings in their entirety, reconsidered its procedural rulings, and entered a new order regarding the procedural status of Claims 1 through 12. (Dkt. 83.)  The parties then briefed the procedural status and merits of newly added Claims 13-31.  (Dkts. 90, 103, 110.)

In March 2005, the Court stayed Petitioner's sentencing claims so that he could file

---

[2]      "ROA-PCR" refers to documents in the four-volume record on appeal from post-conviction proceedings prepared for Petitioner's first petition for review to the Arizona Supreme Court (Case No. CR-96-0464-PC).  This record was provided to the Court by the Arizona Supreme Court on July 30, 2001.  (Dkt. 53.)

[3]      At the time of Petitioner's trial, Arizona law required trial judges to determine the existence of aggravating factors rendering a defendant eligible for capital punishment. The Supreme Court invalidated this aspect of Arizona's capital sentencing scheme in *Ring v. Arizona*, 536 U.S. 584 (2002).  However, *Ring* does not apply retroactively to cases such as Petitioner's that were final at the time it was decided.  *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004).

a successive PCR petition in state court asserting that he is mentally retarded and ineligible for capital punishment pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002). (Dkt. 119.) The Court limited the scope of the FPD's representation in state court to only the *Atkins* litigation. (*Id.*) In April 2005, a private attorney "conducted an initial *pro bono* review" of Petitioner's case and initiated a separate successive state PCR proceeding to raise five non-*Atkins* claims, including an allegation of ineffective assistance by sentencing counsel (Claim 34). (Dkt. 145, Ex. A at 3.) The PCR court summarily dismissed this action without appointing counsel or getting a response from the State, concluding that "[n]one of these claims come within the exceptions to the timeliness requirement of Rule 32.4(a), Arizona Rules of Criminal Procedure. They either were or could have been raised on direct appeal or in the prior Rule 32 proceedings."[4] (Dkt. 145, Ex. B.) The Arizona Supreme Court summarily denied review.

Thereafter, Petitioner moved this Court for leave to file a second amended petition to add, as Claims 32-36, the five claims raised in the April 2005 successive PCR proceeding. (Dkt. 145.) The Court concluded that Claims 32, 33, 35, and 36 were barred by the statute of limitations (and thus amendment was futile) but that Claim 34 was timely because it related back to Claim 8.[5] (Dkt. 158 at 13-16.) The Court also cursorily reviewed the procedural status of the claim in determining whether to allow amendment and, citing *Valerio v. Crawford*, 306 F.3d 742, 774-75 (9th Cir. 2002) (en banc), determined that the state court's preclusion ruling was ambiguous because it failed to distinguish between claims that had

---

[4]     With regard to the separate *Atkins* claim, the PCR court held an evidentiary hearing and determined that Petitioner was not mentally retarded. (Dkt. 181, Ex. A, B.) Subsequently, Petitioner moved to amend his habeas petition to add four claims related to the *Atkins* litigation. (Dkt. 177.) This Court denied amendment, finding that Petitioner's claims were not timely raised and that he was not entitled to equitable tolling of § 2244's one-year limitations period. (Dkt. 190 at 4-12.)

[5]     The Court previously found Claim 8 to be procedurally barred because Petitioner had failed to present the operative facts of the claim in his first PCR petition and no longer had any available state remedies. (Dkt. 83 at 23-24.) The only sentencing-related ineffectiveness claim raised in the first PCR was a general allegation that counsel lacked a clear mitigation strategy. (ROA-PCR 190 at 7-8.)

been waived and those that had been raised in previous state proceedings.  (*Id.* at 3 n.2.)

Subsequently, while undertaking a detailed assessment of the merits of Petitioner's remaining claims, and Respondents' defenses thereto, the Court determined there was a legitimate question whether it could properly consider the merits of Claim 34 because, in addition to an ambiguous preclusion ruling, the PCR court had also dismissed Petitioner's successive notice on the ground of untimeliness, a defense the State had raised in its initial response to Petitioner's amendment request. (Dkt. 190 at 41-43.) Concluding that timeliness was a separate procedural bar, the Court directed additional briefing as to the adequacy of this rule to foreclose federal merits review.  (*Id.*)  This briefing has now been completed. (Dkts. 201-05.)

## II.    GENERAL PRINCIPLES OF LAW

Federal courts generally will not review a question of federal law decided by a state court if the decision rests on a state law ground that is independent of the federal question and adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A state procedural rule constitutes an adequate bar to federal habeas review if it was 'firmly established and regularly followed' at the time it was applied by the state court." *Poland v. Stewart,* 169 F.3d 573, 585 (9th Cir. 1999) (quoting *Ford v. Georgia,* 498 U.S. 411, 424 (1991)); *see King v. Lamarque*, 464 F.3d 963, 965 (9th Cir. 2006); *Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir. 2003).  To be firmly established or consistently applied, a rule must be clear and certain. *See Morales v. Calderon*, 85 F.3d 1387, 1390-92 (9th Cir.1996)); *Wells v. Maass*, 28 F.3d 1005, 1010 (1994).  Whether a state procedural bar is adequate to foreclose the assertion of a habeas claim is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

The consistent and regular application requirement is satisfied if the procedural rule is applied in the vast majority of cases. *See Dugger v. Adams*, 489 U.S. 401, 410 n.6 (1989) (stating that a few cases ignoring the procedural default will not undercut the state's consistent application of the procedural rule in the vast majority of cases); *Moran v.*

*McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996). The requirement is not met if a state procedural rule is sporadically or randomly enforced. *See Morales*, 85 F.3d at 1392. A state court's exercise of judicial discretion in applying a procedural rule does not render that rule inadequate, so long as the discretion is exercised according to standards that, at least over time, can become known and understood within reasonable operating limits. *Id.*; *see Beard v. Kindler*, 130 S. Ct. 612, 618 (2009) (concluding that "a discretionary rule can be 'firmly established' and 'regularly followed' – even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others").

Whether a state procedural bar is clear, consistently applied, and well-established is determined as of the time the purported default occurred and not when a state court actually applies the bar to a claim. *Fields v. Calderon*, 125 F.3d 757, 760-61 (1997); *see Ford v. Georgia*, 498 U.S. 411, 424 (1991). Therefore, cases published after the time of the purported default are generally irrelevant in determining the adequacy of the rule. *See Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001). Both published and unpublished decisions of the state courts are relevant because "it is the actual practice of the state courts, not merely the precedents contained in their published opinions, that determine the adequacy of procedural bars preventing the assertion of federal rights." *Powell v. Lambert*, 357 F.3d 871, 879 (9th Cir. 2004).

In *Bennett v. Moeller*, the Ninth Circuit set forth a burden shifting analysis to determine the adequacy of a state procedural bar. 322 F.3d at 585-86. Once the government has pled "the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner." *Id.* at 586. The petitioner "may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* The burden then shifts back to the government, which bears "the ultimate burden of proving the adequacy" of the relied-upon ground. *Id.*

## III. OVERVIEW OF ARIZONA POST-CONVICTION LAW

Rule 32 of the Arizona Rules of Criminal Procedure governs post-conviction relief proceedings in Arizona. Before 1992, a defendant could file a Rule 32 petition for post-conviction relief at any time after entry of judgment and sentence.[6] *See Krone v. Hotham*, 181 Ariz. 364, 365, 890 P.2d 1149, 1150 (1995). In 1992, the Arizona Supreme Court amended Rule 32.4 and the Arizona Legislature amended A.R.S. § 13-4234 to add a time limitations period and to provide for commencement of a PCR proceeding "by timely filing a notice of post-conviction relief with the court in which the conviction occurred." Ariz. R. Crim. P. 32.4(a) (West Supp. 1993); *see* 1992 Ariz. Sess. Laws ch. 358, § 4; *see also Isley v. Arizona Dept. of Corrections*, 383 F.3d 1054 (9th Cir. 2004) (holding that "in Arizona, post-conviction proceedings begin with the filing of the Notice"). In capital cases, a defendant's initial PCR notice is automatically filed by the clerk of the Arizona Supreme Court upon issuance of the mandate affirming the defendant's conviction and sentence on direct appeal. Ariz. R. Crim. P. 32.4(a); *see Krone*, 181 Ariz. at 365-66, 890 P.2d at 1150-51

---

[6] The Arizona Constitution vests the power to make procedural rules exclusively in the Arizona Supreme Court. *See* ARIZ. CONST., art. VI, § 5 ("The Supreme Court shall have: . . . Power to make rules relative to all procedural matters in any court."). "The Arizona Constitution divides the powers of government into three separate departments and directs that 'no one of such departments shall exercise the powers properly belonging to either of the others.'" *State ex rel. Napolitano v. Brown*, 194 Ariz. 340, 342, 982 P.2d 815, 817 (1999) (quoting ARIZ. CONST., art III.). Pursuant to this separation of powers, the Arizona legislature lacks authority to enact a statute if it conflicts with or tends to engulf the Arizona Supreme Court's constitutionally-vested rulemaking authority. *See id*; *see also Spears v. Stewart*, 283 F.3d 992, 1014 (9th Cir. 2002) (construing Arizona law and stating that "although the legislature may, by statute, regulate the practice of law, a court rule governing the practice of law trumps statutory law").

In 1984, the Arizona Legislature enacted A.R.S. §§ 13-4231-4240, as a statutory parallel to Rule 32 of the Arizona Rules of Criminal Procedure, but added a time limitation for the filing of PCR petitions. 1984 Ariz. Sess. Laws ch. 303, § 1. Arizona courts determined that the time limitation and other sections of the statute were inconsistent with Rule 32 and thus unconstitutional. *See State v. Bejarano*, 158 Ariz. 253, 762 P.2d 540 (1988); *State v. Fowler*, 156 Ariz. 408, 752 P.2d 497 (App. 1987). Consequently, the offending provisions of the statute were severed from the remaining constitutional portions of the statute. *Id.*

(noting that automatic filing in the context of capital cases was instituted to overcome delays by capital petitioners). If the defendant is indigent, counsel is appointed. Ariz. R. Crim. P. 32.4(c). In capital cases with appointed counsel, the first PCR petition must be filed within 120 days of counsel's appointment and may be extended for one 60-day period and unlimited 30-day periods upon a showing of good cause. Ariz. R. Crim. P. 32.4(a).

At the time Petitioner initiated his first PCR proceeding in 1994, Rule 32 provided for relief from judgment on any of the following grounds:

a.   The conviction or the sentence was in violation of the Constitution of the United States or of the State of Arizona;

b.   The court was without jurisdiction to render judgment or to impose sentence;

c.   The sentence imposed exceeded the maximum authorized by law, or is otherwise not in accordance with the sentence authorized by law;

d.   The person is being held in custody after the sentence imposed has expired;

e.   Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. . . .

f.   The defendant's failure to appeal from the judgment, sentence, or both within the prescribed time was without fault on the defendant's part; or

g.   There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence.

Ariz. R. Crim. P. 32.1 (West Supp. 1994). Rule 32 further provided that only claims based on Rule 32.1(d)-(g) could be raised in an untimely manner and that the PCR petition "shall include every ground known" to the defendant. Ariz. R. Crim. P. 32.4(a), 32.5. Finally, Rule 32.2 precluded relief on any claim that was:

(1)   Still raisable on direct appeal under Rule 31 or on post-trial motion under Rule 24;

(2)   Finally adjudicated on the merits on appeal or in any previous collateral proceeding;

(3)   That has been waived at trial, on appeal, or in any previous collateral proceeding.

Ariz. R. Crim. P. 32.2(a) (West Supp. 1994). As with timeliness, only claims based on Rule

32.1(d)-(g) are excepted from the preclusive effect of Rule 32.2(a). Ariz. R. Crim. P. 32.2(b) (West Supp. 1994).

At the time Petitioner sought to raise Claim 34 in his April 2005 successive PCR notice, Arizona's Rule 32 had been amended in a number of ways. In 2000, the Arizona Supreme Court added "actual innocence" as a PCR ground of relief that could be raised in an untimely, successive petition. *See* Ariz. R. Crim. P. 32.1(h), 32.2(b), & 32.4(a) (West Supp. 2001). It also amended Rule 32.4(c) to provide for appointment of previous PCR counsel for a capital petitioner upon the filing of a successive PCR notice. Ariz. R. Crim. P. 32.4(c) (West Supp. 2001). Lastly, the court amended the method by which justification for a successive petition is presented to a PCR court. At the time of Petitioner's first PCR petition, Arizona required a petitioner to set forth in the successive petition itself the reasons for not raising a claim in a previous petition or in a timely manner. Effective December 2000, the rule was amended to provide:

> When a claim under Rules 32.1(d), (e), (f), (g) and (h) is to be raised in a successive or untimely post-conviction relief proceeding, the notice of post-conviction relief must set forth the substance of the specific exception and the reasons for not raising the claim in the previous petition or in a timely manner. If the specific exception and meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the notice shall be summarily dismissed.

Ariz. R. Crim. P. 32.2(b) (West Supp. 2001). A comment to the amended rule explained that the change was adopted to conform to statutory changes. Ariz. R. Crim. P. 32.2(b) (West Supp. 2001) (cmt.).[7]

## IV.  ARGUMENTS AND ANALYSIS

In his April 2005 PCR notice, Petitioner, seeking to justify presentation of his

_____

[7]    The Arizona Legislature amended A.R.S. § 13-4232(B) in 1995 to require that a petitioner's factual and legal justification for filing a successive PCR proceeding be supported in the PCR notice, not the petition. *See* 1995 Ariz. Sess. Laws ch. 198, § 4. However, the pre-2000 version of Rule 32.2(b) controlled during the five years that the rule and statute were in conflict. *See Napolitano*, 194 Ariz. at 342, 982 P.2d at 817; *see also Spears*, 283 F.3d at 1014.

reformulated sentencing ineffectiveness claim in a successive petition, cited several of Rule 32.1's exceptions to preclusion and untimeliness. (Dkt. 145, Ex. A.) First, he argued that *Wiggins v. Smith*, 539 U.S. 510 (2003), constituted a significant change in the law under Rule 32.1(g) because it required that sentencing ineffectiveness claims "be taken seriously" and held that the ABA Guidelines set the standard for ineffectiveness claims. (*Id.* at 6.) Next, Petitioner asserted that the claim satisfied Rule 32.1(e)'s exception for newly-discovered material facts – namely, the mitigation evidence uncovered by federal habeas counsel. (*Id.* at 8.) Finally, Petitioner argued that no reasonable factfinder would have imposed the death penalty had his new mitigation information been presented and, therefore, he was entitled to relief under Rule 32.1(h)'s actual innocence exception. (*Id.*)

Subsequently, the PCR court issued the following minute entry:

> The Court has reviewed another successive Notice of Post-Conviction Relief, filed on April 28, 2005 by attorney Thomas Phalen, and Mr. Phalen's Ex Parte Motion for Appointment of Counsel and Order. As Mr. Phalen notes, defendant's Rule 32 concerning his *Atkins v. Virginia*, 536 U.S. 304 (2002), claim is pending before this Court. Defendant's federal habeas proceeding has been stayed by the district court to allow him to pursue this *Atkins* claim.
>
> Defendant, through Mr. Phalen, now seeks to raise additional claims in this successive proceeding. He claims that the sentencing procedure was unconstitutional, the premeditation instruction was flawed, his trial attorney provided ineffective assistance, no reasonable fact-finder would have sentenced him to death had all available mitigation been presented, and his brain damage and other impairments render him ineligible for the death penalty. *None of these claims come within the exceptions to the timeliness requirement of Rule 32.4(a), Arizona Rules of Criminal Procedure.* They either were or could have been raised on direct appeal or in the prior Rule 32 proceedings. No good cause appearing,
>
> IT IS THEREFORE ORDERED dismissing the Notice of Post-Conviction Relief filed on April 28, 2005 on defendant's behalf by Thomas Phalen.
>
> IT IS FURTHER ORDERED denying the Ex Parte Motion for Appointment of Counsel and Order.

(Dkt. 145, Ex. B (emphasis added).)

### A.    Vagueness of Time Bar

Petitioner argues that the PCR court's failure to explain why his claims failed as

exceptions to the timeliness bar supports his view that Arizona's procedural rules are vague and inconsistently applied. (Dkt. 201 at 4.) He contends that Arizona law fails to provide sufficient guidance on "what these rules mean, and how the exceptions can be met," and thus are inadequate because "there are no known standards by which to limit judicial discretion." (*Id.* at 6.) In Petitioner's view, "application of the time bar is quite discretionary, without reference to known standards, inconsistently invoked, and, in actual practice, often intertwined with the preclusion bar of Ariz. R. Crim. P. 32.2(a)." (*Id.*) The Court disagrees. As set forth below, at the time of his 2005 successive PCR notice, Arizona's time bar was sufficiently clear so that Petitioner "could be deemed to have been apprised of the procedural rule's existence." *Ford*, 498 U.S. at 423; *see also Bargas v. Burns*, 179 F.3d 1207, 1212 (9th Cir. 1999) (so long as a state procedural rule is sufficiently clear as to put petitioner on notice that he must follow the dictates of the particular rule or risk default, the rule is adequate and must be followed).

Significantly, the Ninth Circuit has held that Arizona's procedural rules, including its timeliness rule, are "clear" and "well-established." *Simmons v. Schriro*, 187 Fed. Appx. 753, 754 (9th Cir. 2006); *see also Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998) (addressing Arizona's waiver rule); *Poland v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997) (same); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996) (same); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (same). The cases Petitioner cites to the contrary are inapposite.

To illustrate that Arizona's rules on timely petitions are not clear or well established, Petitioner first directs the Court to *Binford v. Rhode*, 116 F.3d 396 (9th Cir. 1997), and *Moreno v. Gonzalez*, 116 F.3d 409 (9th Cir. 1997). In *Binford* and *Moreno*, the Ninth Circuit, addressing the 1992 amendments to Rule 32.2(b), certified questions to the Arizona Supreme Court concerning application of Rule 32.1(f), which provides an exception to preclusion and untimeliness where a defendant's "failure to appeal . . . within the prescribed time was without fault on the defendant's part." *See Moreno*, 116 F.3d at 400. The circuit

court noted that there was "no controlling precedent from the Arizona Supreme Court or the Arizona Court of Appeals" as to whether Rule 32.1(f) may be invoked by a Rule 32 petitioner who failed to file a timely petition or whether "any mandatory rule of state law" would now bar Binford or Moreno from raising claims. *Id.*

According to Petitioner, the Ninth Circuit's need for guidance on these issues demonstrates that Arizona's preclusion and timeliness rules were not clear or well established. This reading is unpersuasive. The circuit's uncertainty, and its reference to a lack of state court precedent, was confined to the application of Rule 32.1(f), *see Binford*, 116 F.3d at 399; specifically, the Ninth Circuit inquired whether an "appeal" could be defined under state law to include a petition for post-conviction relief, a question which the Arizona Supreme Court answered in the negative. *Moreno v. Gonzalez*, 192 Ariz. 131, 133-34, 962 P.2d 205, 207-08.[8] The fact that the federal appellate court in 1997 sought input from the state supreme court regarding Rule 32.1(f) and the existence of mandatory procedural rules that would bar the petitioner's claims from federal review does not cast doubt on the adequacy of Arizona's preclusion rules at the time Petitioner filed his successive PCR notice in 2005. This is particularly true given the fact, noted above, that the Ninth Circuit has repeatedly affirmed the adequacy of Arizona's procedural rules.

Petitioner also argues that Arizona has created additional exceptions, not contained within the rule or statute's listed exceptions, allegedly allowing new claims to be raised in successive petitions. Here he cites *State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995), and *State v. Rosales*, 205 Ariz. 86, 66 P.3d 1263 (App. 2003). Neither case supports Petitioner's challenge to the adequacy of Arizona's time bar. In *Pruett*, the court considered

---

[8]     The Arizona Supreme Court explained that it did not have enough information to "categorically" answer the "unlimited" question as to any mandatory rule barring Binford's or Moreno's claims, but noted that the time limits set forth in Rule 32.4(a) would apply to Binford, who had already filed a PCR petition, but might not apply to Moreno, depending on his sentencing date and whether he had filed a PCR petition. *Moreno*, 192 Ariz. at 135, 962 P.2d at 209.

successive PCR notices alleging ineffective assistance of Rule 32 counsel filed by a defendant who had pled guilty. Noting that a pleading defendant's first Rule 32 petition is the equivalent of a direct appeal, the court found that Pruett's second PCR notice was timely and that the trial court erred in dismissing the third PCR notice, thereby preventing Pruett from alleging an exception to the Rule 32.4(a) time bar. 185 Ariz. at 131-32, 912 P.2d at 1360-61. *Rosales* likewise involved an interpretation of Arizona's procedural rules with no bearing on the issue here. The petitioner had filed an application for a delayed appeal under Rule 32.1(f), which the trial court granted, and subsequently filed a PCR notice, which the court dismissed. *Rosales*, 205 Ariz. at 87-88, 66 P.3d at 1264-65. The appellate court found that the trial court erred in summarily dismissing the notice, explaining that the application for a delayed appeal, which raised no substantive issues, did not constitute a waiver of any claims and therefore had no preclusive effect. *Id.* at 90-91, 66 P.3d at 1267-68. The court's interpretation of Rule 32.1(f) does nothing to cast doubt on the adequacy of Arizona's rules regarding its time bar.

Petitioner's reliance on *State v. Spreitz*, 202 Ariz. 1, 2-3, 39 P.3d 525, 526-27 (2002), is equally misplaced. Petitioner cites *Spreitz* for the proposition that Arizona's procedural rules, particularly with respect to the timing of ineffective assistance claims, lacked clarity. While the court in *Spreitz* noted that the "Rule 32 waters have become murky," the decision itself clarified the issue by explaining that ineffectiveness claims should be raised in PCR proceedings rather than on direct appeal. *Id.* at 3, 39 P.3d at 527. In contending that *Spreitz* suggests a lack of clarity and consistency in Arizona's procedural rules, Petitioner notes the court's advisory statement that henceforth ineffective assistance claims "improvidently" brought on direct appeal would have no preclusive effect but simply would be ignored. *Id.* The court's announcement of this policy for addressing ineffective assistance claims does not support much less demonstrate that Arizona's procedural rules were inadequate at the time of Petitioner's 2005 successive PCR notice.

The *Spreitz* court explained that the "basic rule is that where ineffective assistance of

counsel claims are raised, or could have been raised, *in a Rule 32 post-conviction relief proceeding*, subsequent claims of ineffective assistance will be deemed waived and precluded." *Id.* at 2, 39 P.3d at 526. In *Stewart v. Smith*, 202 Ariz. 446, 450, 46 P.3d 1067, 1071 (2002), the Arizona Supreme Court reiterated that petitioners are barred from filing ineffective assistance claims in successive PCR petitions. Rather than undermining the adequacy of the time bar, these decisions put Petitioner on notice that his new claims of ineffective assistance would be barred in successive PCR proceedings.

Contrary to Petitioner's arguments, Arizona's procedural rules are clear and well established. The Court notes that the state's time bar is readily distinguished from the California rule which the Ninth Circuit found inadequate in cases like *Morales v. Calderon*, 85 F.3d at 1390-91. California's timeliness rule was vague, requiring only that the state habeas petition be filed "without substantial delay." *Id.* at 1390. A petition filed within 90 days was presumed to be timely, while a petition filed after 90 days "may" establish the absence of substantial delay if it alleged "with specificity" facts showing that the petition was filed within a "reasonable time." *Id.* A petitioner must demonstrate "good cause" for a petition filed after a substantial delay by showing "particular circumstances sufficient to justify substantial delay." *Id.* Finally, the rule provided that a petition that failed to comply with the rule's requirements "may" be denied as untimely. *Id.* The Ninth Circuit explained that the uncertainties in the rule, as demonstrated by phrases like "substantial delay" and "good cause," led to "so much variation in application of California's timeliness requirements" that "no discernible clear rule then existed for petitions filed more than 90 days after the due date." *Id.* at 1391.

By contrast, Arizona's timeliness rule is not facially indeterminate and has never been so held. Instead, the rule sets forth clear standards for application and clearly defines in Rule 32.1(d)-(h) the applicable exceptions to timeliness. The rule and its exceptions are neither vague nor ambiguous and provide petitioners with "sufficient notice of how they may avoid violating the rules." *King v. Lamarque*, 464 F.3d at 966. Finally, as described below, these

standards have not led to inconsistent or random exercises of judicial discretion.

### B. Application of Time Bar in this Case

Petitioner argues that the PCR court's ruling intertwined timeliness and preclusion and did not hinge on two separate and distinct procedural bases for preclusion. Rather, according to Petitioner, the PCR court found "that all the claims were untimely because they 'were or could have been raised' in prior proceedings" and therefore the ruling was ambiguous. (Dkt. 201 at 10.)

Arizona's preclusion rule applies to claims previously adjudicated or waived for failure to raise them in a previous proceeding. Ariz. R. Crim. P. 32.2(a)(3). Nothing in the timeliness rule suggests that timeliness is dependent on whether a claim was or could have been raised previously; in other words, preclusion does not make a claim untimely or exempt a claim from the timeliness requirement. Indeed, the Arizona Supreme Court has expressly held that timeliness and preclusion are two separate procedural bars, *see Moreno v. Gonzalez*, 192 Ariz. at 133, 135, 962 P.2d at 207, 209, either or both of which may serve as a basis for summarily denying PCR claims. Thus, the Court concludes that the PCR court's first sentence invoking the Rule 32.4(a) time bar is not rendered ambiguous by virtue of the second sentence's reference to preclusion.

### C. Application of Time Bar in Other Cases

Petitioner contends that Arizona courts apply the state's timeliness bar in an inconsistent manner and, therefore, it is not adequate to preclude federal review. (Dkt. 201 at 12.) Because Respondents have met their initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense," the burden has shifted to Petitioner to assert "specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett v. Mueller*, 322 F.3d at 586. To this end, Petitioner has appended to his memorandum a plethora of state court materials from both capital and non-

capital post-conviction cases.[9]  (Dkts. 201-04, Ex. 1-285.)

As an initial matter, the Court finds that a number of Petitioner's referenced cases are plainly irrelevant.  First, Petitioner relies on cases in which successive petitions were filed prior to enactment of Arizona's time bar on September 30, 1992.  (*See* Dkt. 201 at 31-35.) There being no time limitation, the state courts necessarily had no occasion to consider whether the petitions were time barred or raised claims that were excepted from a timeliness requirement.[10]  *See Shumway v. Payne*, 223 F.3d 982, 989 (9th Cir. 2000) (stating that petitioner's citation of cases filed before the pertinent procedural bar became applicable are irrelevant to the court's consideration of whether the rule at issue is regularly and consistently applied).  Second, Petitioner relies on successive petitions filed subsequent to the PCR court's ruling in this case.  (*See* Dkt. 201 at 15-18, 28-31 (discussing *Atwood*,

---

[9]     Petitioner asserts that the untimeliness rules between capital and non-capital petitioners are "somewhat different" but nonetheless proffers examples of non-capital cases to illustrate inadequacy of Arizona's timeliness bar.  While capital and non-capital petitioners have different initial deadlines for the filing of a first petition, there is no distinction with regard to the filing of untimely claims – both are limited to raising claims based on Rule 32.1(d)-(h).  *See* Ariz. R. Crim. P. 32.2(b), 32.4(a).  Therefore, this Court will consider the non-capital cases cited by the parties in their briefs.

The Court further notes that the vast majority of the materials proffered by Petitioner are pleadings filed by petitioners or respondents in state court.  However, in *Bennett*, the Ninth Circuit suggested that review of state court practice is limited to the text of court decisions, not "a *post hoc* examination of the pleadings and record" in such cases.  322 F.3d at 584.

[10]     Similarly, Petitioner's reliance on *State v. Prince*, No. 1 CA-CR 95-0413-PR, 1996 WL 91519 (Ariz. App. Mar. 5, 1996) (ordered depublished by the Arizona Supreme Court on Sept. 17, 1996), is also misplaced.  There, the majority reversed the lower court's summary denial of the petitioner's first Rule 32 petition, finding that he had presented a colorable claim of ineffective assistance of counsel that required an evidentiary hearing.  *Id.* at *3.  In dissent, one judge noted that the petition was untimely under A.R.S. § 14-4234(A). *Id.* at *7.  However, as also noted by the dissent, Rule 32.4's timeliness requirement was not applicable to the petitioner because he had been sentenced prior to the rule's September 30, 1992 effective date.  *Id.*  As already stated, Arizona's procedural rules trump the post-conviction statute when not in agreement.  *See supra* note 6.  Thus, *Prince* is not relevant to this Court's inquiry.

*Landrigan*, *Cook*, *Bennett*, *Carreon*, *Smithey*, *Bonwell*, and *Swoopes*).)  However, the adequacy inquiry is conducted as of the time the default occurred, not after.  *See Lambright v. Stewart*, 241 F.3d at 1203.  Last, Petitioner cites a number of cases involving timeliness of a *first* PCR notice or petition (Dkt. 201 at 25-28), which do not relate to application of Arizona's exceptions to timeliness; rather, they involve timeliness of the first PCR notice filed by the Clerk of the Arizona Supreme Court or application of Rule 32.4(c)'s time limitation for the filing of a first petition.[11]

Finally, the Court is unpersuaded by Petitioner's citation to *Williams v. Schriro*, 423 F.Supp.2d 994 (D. Ariz. 1996), in which another judge in this District determined that the state court's denial of a continuance request to file a successive petition raising a *Brady* claim was inadequate to bar federal review.  (Dkt. 201 at 25.)  The procedural ruling at issue in that case was application of the "good cause" provision of Rule 32.4(c) for continuing filing time, not the exceptions to timeliness set forth in Rule 32.4(a).

Turning to the remaining cases relied on by Petitioner, it appears they are cited to support various theories of inconsistency.  Petitioner argues that the Arizona courts' failure to invoke timeliness when it is otherwise available as a procedural bar illustrates the inadequacy of that bar.  The state courts in many of the cited cases dismissed the petitions as precluded on the basis of waiver, timeliness.  However, under Rule 32.6(c), a PCR court must identify which claims are precluded under Rule 32; it does not require the courts to identify for such claims *every* applicable procedural bar.  *See, e.g.*, *State v. Mata*, 185 Ariz. 319, 916 P.2d 1035 (1996) (finding ineffectiveness claim precluded as waived but also noting potential applicability of additional procedural bar).  Nor does any published opinion from an Arizona appellate court so require.  *Cf. State v. Dist. Ct. (Riker)*, 112 P.3d 1070 (Nev.

_____

[11]        Similarly, the Court finds the *Henry* case irrelevant.  While the petition referenced by Petitioner was technically Henry's third PCR proceeding, it was the first following resentencing and appeal therefrom to the Arizona Supreme Court.  (Dkt. 201, Ex. 18.)  Indeed, the Arizona Supreme Court automatically filed the notice for this petition pursuant to its obligation under Rule 32.4(a).

2005) (noting that it is "fundamental to legal analysis and judicial economy" that a court need not identify every applicable procedural bar as long as one exists). Thus, the failure to impose all applicable procedural bars does not undermine the adequacy of the one not imposed.

Petitioner also argues that he received inconsistent treatment in his successive PCR proceedings because his notice was summarily dismissed without "thoughtful analysis" concerning applicability of his pled exceptions.[12] (Dkt. 201 at 18.) Petitioner points to a number of successive petitions filed in capital cases subsequent to December 2000, after the Arizona Supreme Court amended Rule 32.2(b) to require that applicable exceptions to timeliness and preclusion be identified in the PCR notice, not the subsequent petition. In these cases, the Arizona courts did not summarily dismiss at the "notice stage" but permitted the filing of a petition and response from the State before determining whether the claims being raised constituted exceptions to preclusion and timeliness.

The bar at issue here is Rule 32.4's timeliness requirement. The state court found that Petitioner's successive PCR notice failed to state excepted claims as required by Rule 32.4 for consideration of an untimely petition. Nothing in Rule 32 requires a PCR judge to explain why an allegation does or does not state a claim under Rule 32.1(d), (e), (f), (g), or (h). Further, Rule 32.2(b) requires summary dismissal only if it "appears" from the notice that a specific exception and meritorious reasons for not presenting the claim previously or in a timely manner are not substantiated. As Respondents note, the notice itself may not

---

[12] To the extent Petitioner invites this Court to compare the claims raised in his PCR notice with those presented in cases that survived summary dismissal to determine if the PCR court erred in finding that none of his claims were excepted, the Court declines to do so. It is not within the province of this Court to look behind a PCR court's ruling to ensure that it properly interpreted Arizona law in determining whether an excepted claim was stated. *See Lopez v. Schriro*, 491 F.3d 1029, 1043 (9th Cir. 2007) (holding that federal court is bound by state court's interpretation and application of its own procedural rules); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (stating that federal habeas court cannot reexamine a state court's interpretation and application of state law).

provide sufficient information for a judge to determine applicability of an exception to preclusion or timeliness and therefore summary dismissal is not always feasible. Thus, the fact that a PCR court does not summarily dismiss a successive notice indicates only that the notice either set forth a colorable excepted claim (and thus was neither untimely nor precluded) or lacked the information necessary to justify summary dismissal.

For example, in *State v. Hill*, the petitioner sought successive PCR relief in 2001 on claims of actual innocence, newly-discovered evidence, and deprivation of constitutional rights. He filed a petition and also sought DNA testing pursuant to A.R.S. § 13-4240, the results of which the State conceded supported Hill's innocence claim. (Dkt. 201, Ex. 10.) The PCR court subsequently granted relief and vacated his conviction. In *State v. Soto-Fong*, the petitioner filed a successive petition seeking relief under *Roper v. Simmons*, 543 U.S. 551 (2005) (prohibiting execution of juveniles) and raising a multitude of other claims on the grounds of newly-discovered evidence and actual innocence. The state court granted relief on the *Roper* claim and denied the remainder as either meritless or precluded. (Dkt. 202, Ex. 129, 130.)

In *State v. Greenway*, the petitioner in 2002 successfully sought a stay of his federal habeas proceedings to pursue successive post-conviction relief in state court based on *Ring v. Arizona* and *Atkins v. Virginia* as significant changes in the law. Following the Arizona Supreme Court's conclusion in *State v. Towery*, 204 Ariz. 386, 389, 64 P.3d 828, 831 (2003), that *Ring* does not apply retroactively, the PCR court dismissed that claim. With respect to *Atkins*, the court appointed mental health experts. After the expert evaluations were complete, Greenway sought to amend his petition to withdraw the *Atkins* claim and add new claims that he asserted met the requirements of Rule 32.1(e), (g), and (h). The PCR court exercised its discretion under Rule 32.6(d) to allow amendment but subsequently dismissed the claims as precluded after determining that none constituted excepted claims.[13] (Dkt. 201,

---

[13] Contrary to Petitioner's insinuation, the filing of a petition does not foreclose a determination that the claims raised therein are procedurally barred as either untimely,

Ex. 6.)

In *State v. Lopez*, *State v. Beaty*, and *State v. Schurz* (3rd PCR proceeding), the petitioners filed successive PCR notices identifying claims based on *Ring* and/or *Atkins* as significant changes in the law. The courts permitted the filing of petitions, which then also presented other alleged excepted claims, including allegations of sentencing counsel's ineffectiveness. In each, the PCR courts considered the *Ring*, *Atkins* and newly-discovered evidence allegations as excepted claims, but dismissed the ineffectiveness allegations as precluded because they either were or could have been raised in a prior PCR proceeding. (Dkt. 201, Ex. 15 at 1; Dkt. 201, Ex. 64 at 3; Dkt. 202, Ex. 83 at 3-4.) In *State v. Wood*, the petitioner filed a successive petition raising claims based on *Ring* and newly-discovered evidence of prosecutorial misconduct. The PCR court considered the *Ring* claim and ruled alternatively that the misconduct claim was meritless and precluded under Rule 32.2(a)(3) because the evidence was not newly discovered. (Dkt. 202, Ex. 96 at 2.) In *State v. Styers*, the petitioner filed a petition asserting two claims based on *Ring*, which were denied on the merits following the Supreme Court's retroactivity ruling in *Schriro v. Summerlin*, 542 U.S. 348 (2004), and the Arizona Supreme Court's decision in *McKaney v. Foreman*, 209 Ariz. 268, 100 P.3d 18 (2004). (Dkt. 202, Ex. 92.) In *State v. Reister*, the PCR court expressly found that the defendant had "sufficiently raised a claim of significant change in the law (Ariz.R.Crim.P. 32.1(g)) to allow the untimely filing of this petition." (Dkt. 203, Ex. 218.) Similarly, in *State v. Cotton*, the PCR court stated the defendant had sufficiently raised a claim of newly-discovered material facts under Rule 32.1(e) to allow the filing of an untimely petition. (Dkt. 203, Ex. 222.)

None of these cases demonstrate inconsistent application of Arizona's timeliness rules. Rather, each involved the exercise of discretion in determining whether a petitioner

waived, or both. If a notice is not summarily dismissed and a petition is filed, Rule 32.6 still requires the PCR court to "identify all claims that are procedurally precluded" under Rule 32. Ariz. R. Crim. P. 32.6(c).

had pled a "sufficiently meritorious" excepted claim, thereby avoiding application of Arizona's procedural bars. *See State v. Jensen*, 193 Ariz. 105, 970 P.2d 937 (App. 1998) (reversing summary dismissal of successive petition and finding claim alleging significant change in the law "sufficiently meritorious" to avoid preclusion bar and be addressed on merits).[14] Petitioner essentially equates discretion with inconsistency, but that argument has been squarely rejected. *See Wood v. Hall*, 130 F.3d 373, 377 (9th Cir. 1997) (noting that "judicial discretion may be applied consistently when it entails 'the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits.'") (citing *Morales*, 85 F.3d at 1392). As already discussed, the exceptions set forth in Rule 32.1(d)-(h) provide sufficiently defined standards and do not grant unfettered discretion to Arizona courts. To find otherwise "would have the unfortunate effect of discouraging a practice that provides states the opportunity to remedy unconstitutional convictions in cases involving later-arising claims." *Hutchison v. Bell*, 303 F.3d 720, 739 (6th Cir. 2002); *see also Kindler*, 130 S. Ct. at 621 (Kennedy, J., concurring) ("A too-rigorous or demanding insistence that procedural requirements be established in all of their detail before they can be given effect in federal court would deprive the States of the case law decisional dynamic that the Judiciary of the United States finds necessary and appropriate for the elaboration of its own procedural rules.").

Nor has Petitioner shown inconsistency by citing to cases filed prior to December 2000, in which the petitioners pled the existence of excepted claims in the successive petition, not notice, as required by the previous version of Rule 32.2(b). The courts in these cases exercised discretion to determine whether any of the claims presented in the successive petitions should be addressed on the merits. In all but two cases the courts applied waiver

---

[14] The Court observes that Arizona does not have a "mixed petition" rule requiring summary dismissal if a petition raises both excepted and non-excepted claims. *Cf. In re Stoudmire*, 5 P.3d 1240, 1244 (Wash. 2000) (holding that a petition containing both time-barred and excepted claims must be dismissed without prejudice). Thus, a notice which alleges at least one sufficiently meritorious excepted claim avoids summary dismissal.

as a procedural bar to claims that did not satisfy the criteria for an excepted claim. Furthermore, none invoked timeliness; thus, these cases do not demonstrate any inconsistency with respect to that bar.

In *James*, the petitioner filed his third successive PCR petition in 1993. (Dkt. 201, Ex. 28.) The PCR court considered the merits of colorable trial-error claims based on newly-discovered evidence and significant change in the law, but found allegations of ineffective assistance of counsel precluded as waived by Rule 32.2(a)(3).[15] The court considering a third PCR petition in *Runningeagle* decided the merits of a claim alleging increased punishment resulting from forced participation on a prison "chain gang" and denied 39 other claims as precluded by Rule 32.2(a)(2) or (3). (Dkt. 202, Ex. 69.) For Runningeagle's fourth PCR petition raising a claim based on a change in the law, the court determined that the new law did not apply retroactively and thus the Rule 32.1(g) exception was inapplicable to avoid preclusion. (*Id.*, Ex. 73.) In *Washington*, the court considered four claims and ruled alternatively that three were waived and meritless. With regard to an allegation that the first PCR judge was mentally incompetent, the court determined it was meritless after concluding that preclusion was inappropriate because the claim was based on newly-discovered facts. The court in *Chaney* addressed on the merits claims related to previously-unknown information revealing disclosure from a co-defendant's attorney and his secretary to the State's lead investigator. (Dkt. 202, Ex. 107.) The remaining claims were found precluded. (*Id.*) In *Libberton*, the court determined that the successive petition raised colorable claims

---

[15] Petitioner did not provide as an exhibit in these proceedings the PCR court's ruling on James's third PCR petition. However, a copy was filed in the *James* habeas proceedings in this District. *See James v. Schriro*, NO. CV 00-1118-PHX-NVW, Response to Petition, Ex. M at 24-27 (Mar. 15, 2001).

James also initiated a fourth successive PCR proceeding in 2001 by filing a petition seeking clarification that claims presented in prior PCR petitions were grounded in federal law. (Dkt. 201, Ex. 32.) It appears he did not first file a PCR notice nor attempt to argue the presence of an excepted claim, as required by Rule 32.2(b). The PCR court dismissed the petition for lack of jurisdiction, concluding that Rule 32.1 did not provide for the type of relief he sought. (Dkt. 201, Ex. 33.)

based on a change in the law and newly-discovered evidence and thus considered the claims on their merits. (Dkt. 202, Ex. 113.) The court in *Gonzales* summarily dismissed a successive PCR petition for the reasons "stated by the state in its Response."[16] (Dkt. 202, Ex. 119.) The State had asserted that Petitioner's claims failed to state a claim under Rule 32.1(e), (g), or (h). (*Id.*, Ex. 118 at 7-10.) In *Bracy*, the petitioner filed a successive petition alleging newly-discovered evidence concerning the validity of a prior Illinois conviction that was used an aggravating factor. The court stayed proceedings pending resolution of Bracy's post-conviction challenge to his Illinois conviction; he died before the issue was resolved. (Dkt. 203, Ex. 134, 139.)

In *Ceja*, *Gretzler*, *Ortiz*, *Poland*, and *Mata*, capital petitioners filed successive PCR petitions prior to impending execution. The court in *Ceja* rejected on the merits claims that execution by lethal injection and after 23 years of incarceration amounts to cruel and unusual punishment and found the other claims precluded. (Dkt. 201, Ex. 40.) In *Gretzler*, the court similarly denied on the merits an Eighth Amendment lengthy incarceration challenge and determined that evidence of "changed character" failed to constitute an excepted claim based on newly-discovered evidence. (Dkt. 201, Ex. 58.) The court in *Ortiz* ruled alternatively that the claims were precluded and without merit, and the *Poland* court summarily dismissed the petition without explanation. (Dkt. 202, Ex. 102-03, 123.) In *Mata*, the Arizona Supreme Court stayed execution to consider two claims: (1) whether state or federal law required

---

[16]     For *Gonzales*, *Libberton*, and *Runningeagle*, Petitioner asserts that the failure to summarily dismiss at the PCR notice stage demonstrates inconsistent application. However, each of the notices in these cases was filed prior to December 2000, when Rule 32.2(b) was amended to require summary dismissal of notices that fail to state a colorable claim under Rule 32.1(d)-(h) or provide meritorious reasons for the delay in raising it. For the same reason, Petitioner's reliance on *State v. (Richard) Washington*, a non-capital case in which a PCR court summarily dismissed a notice without considering the petition, is misplaced. In a 1999 ruling, the court of appeals found that summary dismissal based solely on the notice was inappropriate. (Dkt. 203, Ex. 208.) Citing *Napolitano*, 194 Ariz. 340, 982 P.2d 815, the court presumably concluded that A.R.S. § 13-4232(B) did not trump Rule 32.2(b)'s then-requirement that a defendant identify applicable exceptions to timeliness and preclusion in the petition, not the notice. (*Id.*)

resencing in the wake of the court's decision in *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1 (1983), which provided a narrowing definition of the unconstitutionally vague "especially heinous, cruel or depraved" aggravating factor,[17] and (2) whether counsel's representation at sentencing was ineffective. *Mata*, 185 Ariz. at 320-21, 916 P.2d at 1036-37. The court ruled on the merits of the first claim, presumably because it involved a change in the law. *Id.* However, with regard to the ineffectiveness claim, the court found it waived because Mata had not raised it in previous PCR proceedings and further stated: "Although we decide the issue of preclusion on other grounds, we also note that defendants who do not comply with the requirements of A.R.S. § 13-4234(F) may be barred from obtaining post-conviction relief." *Id.* at 332-33 & n.8, 916 P.2d at 1048-49 & n.8 ("Prior to the 1992 amendments, [A.R.S. § 13-4234(F)] required that the petition 'set forth the reasons for not raising the claim within one year of the date of the mandate affirming the conviction.'").

In only two unpublished rulings proffered by Petitioner did lower courts arbitrarily disregard a procedural rule to reach the merits of the petitioner's claims. In *State v. Schurz*, a capital petitioner filed a second PCR petition following the Arizona Supreme Court's automatic filing of a PCR notice in 1995 (his first PCR petition had been litigated during the pendency of the direct appeal). The PCR court dismissed some of the claims because they could have been raised on appeal, but addressed the remainder on the merits, including allegations of counsel ineffectiveness. (Dkt. 202, Ex. 77.) In *State v. Hillman*, the petitioner filed a successive petition in 2002 raising claims based on newly-discovered evidence and ineffective assistance of counsel. The court concluded there was no newly-discovered evidence sufficient to state a claim, but denied the ineffectiveness allegation on the merits, without addressing applicable procedural bars. (Dkt. 203, Ex. 194.) This Court concludes that these minor deviations in application of procedural rules does not impact the adequacy of Rule 32.4 for purposes of this case. *See Dugger v. Adams*, 489 U.S. at 410 n.6.

---

[17] The sentencing judge in Mata's case applied the "heinous, cruel or depraved" aggravating factor in 1977, six years before *Gretzler* was decided.

- 23 -

In sum, Petitioner has not demonstrated inconsistent application of Arizona's time bar. Rather, the evidence he proffers shows that the actual practice of Arizona courts is to preclude consideration of any claim that does not satisfy the requirements of Rule 32.1(d), (e), (f), (g), or (h). The fact that waiver is more frequently invoked than timeliness as the basis for preclusion does not undermine the adequacy of the time bar, nor does the fact that a procedural bar may be applied at either the notice stage or after the petition is filed. That a claim must fall within the ambit of Rule 32.1(d)-(h) to be raised in an untimely successive petition is clear, well-established, and consistently applied in Arizona. Moreover, the standards set forth in Rule 32.1(d)-(h) are "known and understood within reasonable operating limits," and review of the cases cited by Petitioner shows "consistent exercises of discretion rather than random applications of or exceptions to the timeliness rule." *Morales v. Calderon*, 85 F.3d at 1392. The fact that judicial exercise of discretion may permit consideration of a federal claim in some cases but not others does not undermine the adequacy of Rule 32's time bar. *Kindler*, 130 S. Ct. at 618.

## D. Independence of Time Bar

Petitioner did not assert that Arizona's timeliness exceptions are interwoven with federal law until this Court scheduled his requested briefing on adequacy. (Dkt. 201 at 36-37.) At that point, Petitioner raised the issue and asked the Court to permit additional briefing on independence if it rejected his arguments concerning adequacy. (*Id.*) Because Petitioner's independence contentions are without merit, the Court concludes that additional briefing is unnecessary.

A federal court is generally barred from considering an issue of federal law arising from the judgment of a state court if the state judgment "rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the [state] court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989); *see Coleman*, 501 U.S. at 735. A state court decision is not independent if it fairly appears to rest primarily on federal law, or to be interwoven with federal law, and the state court does not clearly and expressly rely

upon a state-law ground for its decision. *Coleman*, 501 U.S. at 735, 740-44 (Virginia Supreme Court's decision dismissing petitioner's state appeal on grounds that notice was untimely did not rest primarily on federal law and was not interwoven with such law because there was no showing that the court considered the merits of the federal claims.)

Petitioner argues that the PCR court's determination that his claims did not constitute exceptions to timeliness necessarily required consideration of federal law. (Dkt. 201 at 36-37.) In support of this contention, he asserts that Arizona utilizes federal retroactivity law as part of its analysis of whether a petitioner will be entitled to post-conviction relief for a significant change in the law under Rule 32.1(g) and uses federal law as part of its analysis in determining whether a petitioner will be entitled to relief on the basis of actual innocence under Rule 32.1(h). (*Id.*) The Court disagrees.

1. *Significant Change in the Law*

As this Court has already noted, a claim under Rule 32.1(g) is colorable if "there has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence." Ariz. R. Crim. P. 32.1(g) (West Supp. 2005). A significant change in the law has been construed by Arizona courts as a "clear break from the past" or a "sharp break with the past." *State v. Slemmer*, 170 Ariz. 174, 182, 823 P.2d 41, 49 (1991). Such a change in the law usually occurs when an appellate court overrules previously binding case law. *See, e.g.*, *Ring*, 536 U.S. at 609. A statutory or constitutional amendment representing a definite break from prior law can also be a significant change in the law. *See State v. Shrum*, 220 Ariz. 115, 118, 203 P.3d 1175, 1178 (2009). To qualify for relief under Rule 32.1(g), a petitioner must also show that the changed law applies retroactively. *See Slemmer*, 170 Ariz. at 184, 823 P.2d at 51.

Petitioner is correct that if a claim identifies a valid a change in the law, Arizona courts have adopted "federal retroactivity analysis" as their own standard for determining whether the changed law applies retroactively. *See id.* at 181-82, 823 P.2d at 48-49. However, the fact that the Arizona Supreme Court has modeled its own retroactivity standard

after one articulated in a federal case does not make application of that standard dependent on federal law. In addition, the initial determination of whether there has been a change in the law is clearly a question of state law under *Slemmer*.

In Petitioner's case, the PCR court made no reference to federal law when applying the time bar. *See Coleman*, 501 U.S. at 741 ("There is no mention of federal law in the Virginia Supreme Court's three-sentence dismissal order.") Nor was the state court's application of the bar based on the merits of the claim. Although the PCR court implicitly determined that Petitioner failed to satisfy any exceptions to the time bar, including Rule 32.1(g), the application of the bar did not depend on "an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985); *accord King v. Thompson*, No. 98-36209, 2000 WL 300958, *2 (9th Cir. Mar. 22, 2000) (noting that "the Washington Supreme Court was not required to, and did not, resolve the merits of King's federal claim in order to determine that King's case did not fall within the exception for intervening changes in the law").

2. *Actual Innocence*

Petitioner also asserts that Arizona's exception for actual innocence is not independent of federal law. (Dkt. 201 at 37.) In support, he cites *House v. Bell*, 547 U.S. 518 (2006), contending that litigation of an actual innocence claim "obviously has federal constitutional implications." (*Id.*)

In *Herrera v. Collins*, 506 U.S. 390 (1993), the habeas petitioner raised a freestanding claim of innocence, a novel substantive constitutional claim contending that execution of an innocent person would violate the Eighth Amendment even if the proceedings that resulted in his conviction and sentence did not violate the Constitution. Under previous decisions, the Supreme Court had held that innocence claims based on newly-discovered evidence were not cognizable on habeas review because habeas focuses on whether there has been an independent constitutional violation, not on questions involving a petitioner's innocence or guilt. *Id.* at 400. However, in *Herrera*, the Court assumed for the sake of argument that a

truly persuasive demonstration of actual innocence made after an errorless trial would render the execution of the defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim. *Id.* at 417. The Court further stated that the "threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*

In response to *Herrera*, Arizona adopted a state avenue of relief for factual claims of actual innocence. *See* Ariz. R. Crim. P. 32.1(h) (West Supp. 2001) (cmt.). Rule 32.1(h) allows relief when the defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found the defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty. *Id.* Under Arizona law, clear and convincing evidence is evidence which may persuade that the truth of the contention is highly probable. *See In re Neville*, 147 Ariz. 106, 111, 708 P.2d 1297, 1302 (1985).

It is evident from a plain reading of Rule 32.1(h) that consideration of an actual innocence claim requires only assessing whether the petitioner's proffered evidence of innocence meets the clear and convincing standard; it does not require analysis of federal law. Moreover, the PCR court's ruling was devoid of any reference to federal law. Thus, it does not appear to rest on federal law or to be interwoven with such law. *Coleman*, 501 U.S. at 740.

## V.    CAUSE/PREJUDICE AND MISCARRIAGE OF JUSTICE

At the time the Court granted Petitioner's motion to amend to add Claim 34, Petitioner's sentencing claims were stayed pending completion of *Atkins* litigation in state court. After the stay of sentencing claims was lifted, Petitioner filed a second motion to amend to add his *Atkins*-related claims. In one order, the Court considered the motion, addressed the remainder of Petitioner's fully-briefed claims (Claims 1-31), and reconsidered its finding that Claim 34 was not procedurally defaulted (as had been asserted by Respondents in opposition to Petitioner's motion to amend to add Claim 34). (Dkt. 190.)

The Court then directed briefing on the adequacy of the PCR court's procedural bar ruling.

Because of the unique procedural history of this case and the addition of a sentencing ineffectiveness claim at a time when sentencing claims were stayed, Respondents were not directed to file a formal answer to Claim 34. Likewise, Petitioner has not had an opportunity to assert cause and prejudice or fundamental miscarriage of justice exceptions to excuse the procedural default of Claim 34. Accordingly, the Court will direct such briefing before determining whether Claim 34 is procedurally barred from federal habeas review.

Based on the foregoing,

**IT IS HEREBY ORDERED** that no later than 30 days after the filing of this order, Petitioner shall file a memorandum and any supporting documentation re: cause, prejudice, or fundamental miscarriage of justice to overcome the default of Claim 34. This memorandum shall *not* include any arguments concerning the Court's determination that Claim 34 is procedurally defaulted. Any motion for reconsideration of the instant order shall be separately filed no later than 15 days after the filing of this order.

**IT IS FURTHER ORDERED** that no later than 15 days after the filing of Petitioner's memorandum, Respondents shall file a response. This response shall also include Respondents' answer to the allegations set forth in Claim 34 of the second amended petition.

**IT IS FURTHER ORDERED** that no later than 10 days after the filing of Respondents' response, Petitioner may file a reply.

DATED this 30th day of March, 2010.


_____
James A. Teilborg
United States District Judge

- 28 -